# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Applicant, | Civil Action No. 15-4341 |
| v. | |
| | Hon. |
| JESSICA GILBERTSON, a/k/a JESSICA MEDLIN, a/k/a JESSICA BRANCALE, | |
| Respondent. | |

### U.S. SECURITIES AND EXCHANGE COMMISSION'S APPLICATION FOR AN ORDER COMPELLING COMPLIANCE WITH ADMINISTRATIVE SUBPOENAS

The United States Securities and Exchange Commission ("SEC"), pursuant to Section 22(b) of the Securities Act of 1933, 15 U.S.C. § 77v(b), and Section 21(c) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78u(c), respectfully requests that this Court enter an Order compelling Jessica Gilbertson to comply with administrative subpoenas issued by the SEC.

## I. INTRODUCTION

This Application seeks to enforce testimony and document subpoenas issued and served upon Jessica Gilbertson pursuant to an Order Directing Private Investigation and Designating Officers to Take Testimony in the investigation captioned In the Matter of Dakota Plains Holdings, Inc. (C-08075).

On April 15, 2015 the SEC issued an administrative subpoena seeking documents from Jessica Gilbertson in an ongoing investigation relating to Dakota Plains Holdings, Inc. ("Dakota Plains"). Ms. Gilbertson appears to have been involved in a number of transactions in Dakota Plains stock and promissory notes. The subpoena issued to Ms. Gilbertson sought, among other things, documents related to those transactions. To date, the SEC has yet to receive any documents from Ms. Gilbertson. Similarly, on September 24, 2015 the SEC issued a subpoena requiring Ms. Gilbertson to appear to give sworn testimony to the SEC on November 3, 2015. Without any explanation, Ms. Gilbertson failed to appear for testimony as required by the subpoena.

The SEC has made no prior application to any court for similar relief and now seeks the aid of this Court by means of a summary proceeding. All attempts to obtain voluntary compliance with the subpoena have failed. A summary proceeding is necessary so that the SEC may complete its investigation expeditiously. As set forth below, the SEC has met all of the requirements for judicial enforcement of its subpoena and, therefore, respectfully requests the Court to enter an order compelling Ms. Gilbertson to appear for testimony and produce documents.

## II. STATEMENT OF FACTS

### A. The SEC's Investigation

On November 18, 2014, the SEC issued an Order Directing Private Investigation and Designating Officers to Take Testimony in the investigation captioned <u>In the Matter of Dakota Plains Holdings, Inc.</u> (C-08075) (the "Formal Order"). The SEC, through the Formal Order, directed that a private investigation be conducted to determine whether,

among other things, any persons have engaged or are engaging in violations of Section 17(a) of the Securities Act of 1933 and Sections 9(a), 10(b) and 15(c)(1)(A) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder. Under the Formal Order, members of the SEC's staff are empowered to, among other things, administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require that parties produce documents. (Declaration of Craig McShane ("McShane Decl."), ¶ 4).

In the course of its investigation, the SEC staff determined that Dakota Plains became a publicly traded company as a result of a reverse merger on March 22, 2012. Prior to that reverse merger, Dakota Plains issued promissory notes to several individuals and entities who loaned the company a total of $9 million. These promissory notes provided that the noteholders would receive bonus payments based on the average price of the company's stock in its first 20 days of public trading. (McShane Decl., ¶ 5).

Upon being publicly listed, the stock price of Dakota Plains almost immediately rose to $12 per share on very light volume and stayed at or near $12 per share for almost exactly 20 days. The price then declined gradually until September 24, 2012. Since September 24, 2012, Dakota Plains has never traded above $4.24, and it is currently trading under $1. As a result of the stock price during the initial 20-day period, Dakota Plains disclosed that the noteholders were entitled to receive payments of approximately $32.9 million. (McShane Decl., ¶ 6).

3

### B. Jessica Gilbertson's Relevance to the Investigation

Based upon the SEC's investigation to date, it appears that Jessica Gilbertson was involved in a number of transactions in Dakota Plains stock or promissory notes that may have been made by or at the direction of her former husband, Ryan Gilbertson. Although Ryan Gilbertson had no publicly disclosed role with Dakota Plains, he had substantial involvement with the company. Among other things, Ryan Gilbertson, a foundation controlled by him, and Ryan and Jessica's minor child collectively held approximately $3.5 million of the promissory notes containing the additional payment provisions. (McShane Decl., ¶ 7).

The SEC obtained records showing that Ryan Gilbertson's father, Weldon Gilbertson, was issued 2.1 million shares at the time Dakota Plains was founded. Many of the shares purportedly originating from Weldon Gilbertson were transferred to Ryan Gilbertson. Weldon Gilbertson testified before the SEC that he did not know he owned those 2.1 million shares and knew nothing about the transfers to his son. Records also reflect that some of the shares Ryan Gilbertson received from Weldon Gilbertson were then transferred to Jessica Gilbertson. (McShane Decl., ¶ 8).

In addition to the transfer of shares purportedly originating from Weldon Gilbertson, records also reflect other transfers of shares from Ryan Gilbertson to Jessica Gilbertson. Some of the shares Jessica Gilbertson received from Ryan Gilbertson were later sold to an entity owned by Jack Norqual. Mr. Norqual has testified that he had no discussions with Jessica Gilbertson about acquiring those shares and believes he dealt only with Ryan Gilbertson. (McShane Decl., ¶ 9).

4

Besides being a significant Dakota Plains shareholder, Jessica Gilbertson was also one of the company's original promissory note holders. She subsequently transferred her note to Weldon Gilbertson, as custodian for Jessica and Ryan's minor child. Weldon Gilbertson testified that he had no knowledge of that transaction before it took place, and his signature was stamped on the purchase agreement without his knowledge. (McShane Decl., ¶ 10).

The SEC staff has reviewed a copy of one "pledge" agreement under which Jessica Gilbertson pledges certain assets, including Dakota Plains shares, to Ryan Gilbertson in exchange for $2.25 million in loans from Ryan. However, there appears to be at least one other pledge agreement that the staff has not been able to review since Ms. Gilbertson has not responded to the document subpoena. (McShane Decl., ¶ 11).

Moreover, records reflect that Jessica Gilbertson owned more than 1.5 million shares of Dakota Plains at the time of the merger. Pursuant to one of the pledge agreements, her shares carried a restrictive legend prohibiting her from selling those shares without Ryan Gilbertson's consent. Ryan Gilbertson subsequently directed the broker holding those shares to have Jessica Gilbertson transfer 340,000 of those shares to his account. (McShane Decl., ¶ 12).

### C. Jessica Gilbertson's Failure to Provide Documents and Appear for Testimony as Required by the SEC's Subpoenas

The SEC issued a document subpoena to Ms. Gilbertson, who resides in the District of Minnesota, on April 15, 2015 and has yet to receive any documents whatsoever. The SEC also issued a subpoena to Ms. Gilbertson requiring her to appear

5

for testimony on November 3, 2015. Ms. Gilbertson failed to appear as required by the subpoena. (McShane Decl., ¶¶ 13 and 14).

The document subpoena sought the following documents:

1. Documents sufficient to identify all phone numbers and email addresses you use or have used.

2. All Documents regarding any promissory note between You and Dakota Plains, including but not limited to all Documents regarding any transfer to any other Person of any promissory note between You and Dakota Plains.

3. All Documents regarding any agreement between You and Ryan Gilbertson regarding Dakota Plains or its securities, including but not limited to any Pledge and Assignment Agreement and any amendments thereto.

4. All Communications with any Person regarding Dakota Plains or its securities.

5. All Documents related to any acquisition by You of Dakota Plains stock.

6. All Documents related to any sale by You of Dakota Plains stock.

7. All Documents regarding any transfer to any other Person of any proceeds from Your sales of Dakota Plains stock.

8. All Documents discussing, referencing, or related to the price of Dakota Plains stock.

(McShane Decl. ¶ 14 & Exhibit 2). The document subpoena, which had a May 8, 2015 return date, was served by delivery to Ms. Gilbertson's home by UPS. *See* 17 C.F.R. §§ 203.8; 201.232(c); 201.150(c)(3) (authorizing service of investigative subpoenas by commercial courier or express delivery service). (McShane Decl., ¶ 14).

6

Receiving no response, on May 22, 2015 the SEC staff sent Ms. Gilbertson a follow-up letter, including another copy of the subpoena, by UPS to her home. (McShane Decl., ¶ 15). On May 27, 2015, the Staff received a voicemail from Ms. Gilbertson in which she stated that she was in the process of hiring an attorney regarding the SEC subpoena. (Id., ¶ 16). Hearing nothing further from Ms. Gilbertson or any counsel, on July 1, 2015 the SEC staff sent her another follow-up letter. (Id., ¶ 17). Still hearing nothing, on August 4, 2015 the SEC staff sent an email to Ms. Gilbertson asking her to have her attorney contact the staff. (Id., ¶ 18).

Finally, on August 13, 2015, almost four months after serving the document subpoena, the SEC staff received a voicemail from attorney Paul Edlund stating that he represented Ms. Gilbertson in connection with the investigation. (McShane Decl., ¶ 19). The SEC staff sent emails to Mr. Edlund on August 28th and September 9th asking about the status of Ms. Gilbertson's documents. (Id., ¶ 20). The staff also left several voicemails (none of which were returned) and eventually sent a letter to Mr. Edlund on September 21st both by email and UPS to his office. (Id., ¶ 21).

On September 24th, the SEC sent a subpoena requiring Ms. Gilbertson to appear for testimony on November 3, 2015. (McShane Decl., ¶ 22). The testimony subpoena was served by sending it to Mr. Edlund's office both by email and by overnight UPS delivery. (Id., ¶ 23). *See* 17 C.F.R. §§ 203.8; 201.232(c); 201.150(b) and 201.150(c)(3). UPS has confirmed delivery of the subpoena to Mr. Edlund's office. (McShane Decl., ¶ 23). On November 2, 2015 the SEC staff sent an email to Mr. Edlund reminding him

7

that Ms. Gilbertson's testimony was scheduled for the next day in the U.S. Attorney's office in Minneapolis. (Id., ¶ 24).

Ms. Gilbertson failed to appear for her testimony on November 3, 2015 without any explanation. (McShane Decl., ¶ 25). Ms. Gilbertson has also failed to produce any documents to the SEC. (Id.).

### III. ARGUMENT

#### A. This Court May Resolve This Matter through a Summary Proceeding

This Court has jurisdiction to require compliance with the subpoenas issued to Ms. Gilbertson as part of the SEC's investigation. Section 22(b) of the Securities Act of 1933 and Section 21(c) of the Securities Exchange Act of 1934 ("Exchange Act") authorize the SEC to seek, and the federal courts to issue, an order compelling compliance with SEC subpoenas upon application by the SEC. See 15 U.S.C. §§ 77v(b), 78u(c). Furthermore, Section 21(c) of the Exchange Act provides that "the Commission may invoke the aid of any court of the United States within the jurisdiction of which such investigation or proceeding is carried on [or where the subpoena recipient resides]. . . in requiring the attendance and testimony of witnesses . . . ." 15 U.S.C. § 78u(c).

Furthermore, the SEC may seek an order requiring compliance upon application because subpoena enforcement proceedings are generally summary in nature. See United States v. McDonnell Douglas Corp., 751 F.2d 220, 229 (8th Cir. 1984); see also SEC v. Sprecher, 594 F.2d 317, 320 (2d Cir. 1979); see also EEOC v. Tempel Steel Co., 814 F.2d 482, 485 (7th Cir. 1987) (subpoena enforcement proceedings "are designed to be

8

summary in nature"); SEC v. First Security Bank, 447 F.2d 166, 168 (10th Cir. 1971) (citing United States v. Davey, 426 F.2d 842, 845 (2d Cir. 1970).

The SEC has given Ms. Gilbertson every opportunity to comply with its subpoenas. It followed up with her when she first failed to respond to the document subpoena and repeatedly asked for her attorney's contact information after she said she was retaining counsel. Once she hired a lawyer, the SEC staff repeatedly tried to work with her attorney to obtain documents and testimony, only to have numerous communications ignored. The SEC thus has no alternative to judicial intervention.

### B. The SEC Meets the Requirements for Enforcement of the Subpoena

A district court is bound to enforce an administrative subpoena if the information sought "is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." United States v. Morton Salt Co., 338 U.S. 632, 652 (1950); see also CFTC v. Tokheim, 153 F.3d 474, 477 (7th Cir. 1998) (citing EEOC v. Quad/Graphics, Inc., 63 F.3d 642, 644-45 (7th Cir. 1995)). It is the burden of the opposing party to establish that the subpoena is unreasonable. See SEC v. Blackfoot Bituminous, Inc., 622 F.2d 512, 515 (10th Cir. 1980); SEC v. Brigadoon Scotch Distrib. Co., 480 F.2d 1047, 1056 (2d Cir. 1973). That burden, however, is "not easily met" when the SEC's inquiry is legally authorized and the information is relevant to the inquiry. Brigadoon Scotch, 480 F.2d at 1056. Here, because the SEC has met the criteria and Ms. Gilbertson cannot show unreasonableness, the Court should enforce the subpoenas.

9

### 1. The SEC Has Authority to Conduct the Investigation.

Congress has authorized the SEC to conduct investigations in its discretion to determine whether any person has violated, is violating, or is about to violate the provisions of the federal securities laws. See 15 U.S.C. §§ 77t(a), 78u(a)(1). Additionally, the SEC is authorized to subpoena testimony and require the production of documents that the SEC deems to be relevant to the investigation. See 15 U.S.C. §§ 77s(c), 78u(b). Thus, Congress has endowed the SEC with broad investigatory powers. See SEC v. Arthur Young & Co., 584 F.2d 1018, 1023 (D.C. Cir. 1978); see also Tokheim, 153 F.3d at 477 (quoting Morton Salt Co., 338 U.S. at 642-43) (stating that the SEC can "'investigate merely on suspicion that the law is being violated, or even just because it wants assurance that is not'").

Pursuant to the statutes cited above, the SEC issued a Formal Order to conduct the investigation captioned In the Matter of Dakota Plains Holdings, Inc. (C-08075). The Formal Order states that the investigation's purpose is to determine, among other things, whether certain persons violated the anti-fraud provisions of the federal securities laws. The subpoena served upon Ms. Gilbertson was issued pursuant to that Formal Order and, therefore, is consistent with the SEC's administrative procedures. See Blackfoot Bituminous, 622 F.2d at 514.

### 2. The Information Sought Is Relevant and Not Indefinite.

The information that the SEC seeks to obtain from Ms. Gilbertson through documents and testimony is not indefinite and is relevant to its investigation. Because the SEC is only required to make a minimal showing of relevance, as long as the

10

evidence sought is not plainly irrelevant to any lawful purpose, the subpoena should be enforced. Arthur Young, 584 F.2d at 1029 (citing Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 509 (1943)).

The document requests—which are set forth in Section II.C above—are directly related to Ms. Gilbertson's transactions of Dakota Plain securities, as well as her dealings and communications regarding the company and its securities. The SEC intends to seek testimony from Ms. Gilbertson on similar topics. Such documents and questions are directly relevant to the SEC's investigation.

### 3. The Subpoena Is Not Unreasonable.

"Before the courts will hold an order seeking information reports to be arbitrarily excessive, they may expect the supplicant to have made reasonable efforts before the Commission itself to obtain reasonable conditions." Blackfoot Bituminous, 622 F.2d at 515 (quoting United States v. Morton Salt Co., 338 U.S. 632, 653 (1950)).

The SECs subpoenas and its efforts to have Ms. Gilbertson comply with the subpoenas have been reasonable. The document subpoena contains only eight requests, which are plainly related to the subject matter of the investigation. The scheduled date of the testimony was more than five weeks after Ms. Gilbertson's counsel received the subpoena, giving her ample time to either comply with the testimony subpoena, contact the SEC staff or to make alternative arrangements. The staff has repeatedly attempted to contact Ms. Gilbertson and her counsel to discuss both the document and testimony subpoenas. The staff placed numerous calls and sent several emails and letters about the

11

subpoenas, only to have its repeated follow-up requests ignored by both Ms. Gilbertson and her counsel.

It is clear that Ms. Gilbertson has chosen not to comply with the Staff's subpoenas and, as a result, the Staff has no other remedy then the judicial enforcement of the subpoenas.

**WHEREFORE**, the SEC respectfully requests that this Court issue an Order:

A.  Directing Ms. Gilbertson to appear and testify at such time and place as the SEC may direct;

B.  Directing Ms. Gilbertson to produce all documents responsive to the SEC's document subpoena;

C.  Granting the SEC such other and further relief as may be necessary and appropriate to achieve compliance with the subpoenas and with any Order the Court issues in its enforcement thereof; and

D.  Permitting service of all Orders on Ms. Gilbertson or her counsel by overnight express mail.

December 10, 2015

**s/Benjamin J. Hanauer**
Benjamin J. Hanauer (IL No. 6280156)
Christopher H. White (IL No. 6280031)
Charles J. Kerstetter (PA No. 67088)
U.S. Securities and Exchange Commission
Chicago Regional Office
175 West Jackson Blvd, Suite 900
Chicago, Illinois 60604
Telephone: (312) 353-7390
Fax: (312) 353-7398

> James Alexander (MN No. 166145)
> Assistant United States Attorney
> District of Minnesota
> 600 U.S. Courthouse
> 300 South Fourth Street
> Minneapolis, MN 55415
> Telephone: (612) 664-5600
> Jim.Alexander@usdoj.gov
> *Local Counsel*