UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------
JON GRUBER, *on behalf of himself and
others similarly situated*,

        Plaintiffs,

        -against-

RYAN GILBERTSON, *et al.*,

        Defendants.
------------------------------------------

16cv9727

OPINION & ORDER

WILLIAM H. PAULEY III, United States District Judge:

        Plaintiffs move to lift the PSLRA stay on discovery for the limited purpose of subpoenaing non-parties Dakota Plains Holdings, Inc. ("Dakota Plains") and BioUrja Trading LLC ("BioUrja"). For the reasons that follow, Plaintiffs' motion is granted in part and denied in part.

## BACKGROUND

        This putative securities fraud class action arises from the alleged manipulation of Dakota Plains stock. Dakota Plains, originally a defendant in this action, was dropped as a party after it filed for Chapter 11 bankruptcy protection in the District of Minnesota. Nine months later, Dakota Plains is primed to exit bankruptcy by way of liquidation.

        In January 2017, Dakota Holdings agreed to transfer substantially all of its assets to BioUrja, an energy commodities trading company, pursuant to the terms of an asset purchase agreement. Since then, Dakota Plains has been operating these assets on behalf of BioUrja pursuant to a "Transition Services Agreement" pending completion of the bankruptcy. (Plaintiffs' Ltr. dated August 17, 2017 ("Pl. Ltr."), ECF No. 105, at 2.) Following confirmation

of Dakota Plains' Chapter 11 plan of liquidation—scheduled for September 6, 2017—Dakota Plains' assets will be transferred to BioUrja.

As the end of Dakota Plains' bankruptcy proceeding draws near, Plaintiffs seek permission from this Court to lift the PSLRA discovery stay for the limited purpose of issuing subpoenas for the production of documents to Dakota Plains and BioUrja. Plaintiffs' request is rooted in their concern that Dakota Plains' liquidation, and its transfer of assets to BioUrja, may result in the loss of relevant documents or electronically stored information. Further compounding Plaintiffs' concern is the failure of Dakota Plains' bankruptcy counsel to respond to Plaintiffs' letter requesting preservation. Against this backdrop, Plaintiffs contend that there is "no assurance as to what will happen to the [electronically stored information] and other documents once the Plan of Liquidation has been confirmed and finalized and the transfer of all of Dakota Plains' assets is completed to a third party entity with no preservation obligation." (Pl. Ltr., at 3.)

## DISCUSSION

In a securities fraud class action, "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss." 15 U.S.C. § 78u–4(b)(3)(B). The rationale underlying this stay is based primarily on two concerns that the Private Securities Litigation Reform Act ("PSLRA") seeks to obviate—that plaintiffs will use the discovery process to coerce settlements from defendants and to obtain evidence for claims not alleged in the complaint. In re Vivendi Universal S.A., Sec. Litig., 2003 WL 21035383, at *1 (S.D.N.Y. May 5, 2003) (citing H.R. Conf. Re. No., 104–369 (1995)). Therefore, to "protect defendants in actions such as this from the burden and expense of premature discovery, the [PSLRA] precludes

discovery . . . until the court sustains the sufficiency of the complaint." ATSI Commc'ns., Inc. v. Shaar Fund, Ltd., 2003 WL 1877227, at *2 (S.D.N.Y. Apr. 2, 2003).

The PSLRA discovery stay, however, is not absolute. It may be lifted on a showing that "particularized discovery is necessary to preserve evidence or to prevent undue prejudice to th[e] [requesting] party." 15 U.S.C. § 78–4(b)(3)(B). A discovery request is "particularized when it is directed at specific persons, and it identifies specific types of evidence that fall within its scope." Fisher v. Kanas, 2006 WL 2239038, at *2 (E.D.N.Y. Aug. 4, 2008) (internal quotation marks and citations omitted). And "undue prejudice" in this context means "improper or unfair treatment amounting to something less than irreparable harm." In re Vivendi, 2003 WL 2103583, at *1 (internal citations omitted). Such prejudice has been found under exceptional circumstances where plaintiffs are unable to "make informed decisions about [their] litigation strategy in a rapidly shifting landscape" and when they are "the only major interested party in the criminal and civil proceedings . . . without access to documents that currently form the core of those proceedings." In re WorldCom, Inc. Sec. Litig., 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002); In re Refco, Inc., 2006 WL 2337212, at *1 (S.D.N.Y. Aug. 8, 2006) ("[E]xceptional circumstances must be present to lift the stay.").

Plaintiffs' request here is sufficiently particularized. They seek four discrete categories of documents from Dakota Plains and BioUrja: (i) documents produced to the Securities and Exchange Commission ("SEC"); (ii) meeting minutes of its Board of Directors; (iii) communications with BDO USA, LLP, its auditor; (iv) and internal communications regarding defendants Ryan Gilbertson, Michael Reger, the creation and renegotiation of junior, senior and consolidated notes, the decision to go public by reverse merger, the alleged stock manipulation scheme, and the internal investigation conducted by Dakota Plains in connection

3

with the alleged stock manipulation scheme. (Pl. Ltr., at 2.) The requests for each category of documents is relevant to Plaintiffs' allegations in this action and directed at two specific parties.

Plaintiffs fail, however, to articulate the exceptional circumstances under which they would suffer undue prejudice. See In re AOL Time Warner, Inc. Sec., 2003 WL 21729842, at *1 (S.D.N.Y. July 25, 2003). They cite to the exigencies associated with Dakota Plains' "imminent" liquidation and the transfer of substantially all of its assets to BioUrja, contending that a stay is appropriate. But if the mere fact of bankruptcy or a sale of assets constituted the exceptional circumstances warranting a lift of stay, the PSLRA's strong presumption against discovery would be rendered meaningless since many securities class actions arise on the heels of financial distress. There must be something about those circumstances that would unduly prejudice the Plaintiffs if they were unable to obtain discovery in short order.

In WorldCom, for example, securities class plaintiffs were "prejudiced by [their] inability to make informed decisions about [their] litigation strategy in a rapidly shifting landscape," because plaintiffs in a separate, concurrent ERISA action—who were not subject to the PLSRA—already had access to relevant documents that informed their litigation and settlement strategy. 234 F. Supp. 2d at 305–06. The WorldCom court found the disparity of information between parties in concurrent civil actions "troubling given the likelihood that settlement discussions [would] . . . involve both the securities plaintiffs and the ERISA plaintiffs" and the "former would be severely disadvantaged in those discussions if they [were] denied access to the documents they now request." 234 F. Supp. 2d at 306; see also In re Royal Ahold N.V. Sec. & ERISA Litig., 220 F.R.D. 246, 251–52 (D. Md. 2004) (finding that ERISA plaintiffs were prepared to proceed with discovery while securities plaintiffs were deprived of that opportunity because of the PSLRA stay).

4

Here, however, Plaintiffs do not face any risk that would put them at a disadvantage to other civil litigants. Aside from the SEC's enforcement action against Defendant Gilbertson, Plaintiffs will not "be left to pursue [their] action against defendants who no longer have anything or at least as much to offer." WorldCom, 234 F. Supp. 2d at 306. Nor are there any other circumstances—other than the delay inherent to briefing a motion to dismiss and waiting for a decision on that motion—that would heighten the risk of undue prejudice. "Plaintiffs' inability to gather evidence for settlement negotiations or to plan a litigation strategy" at the present moment, without more, "is not evidence of undue prejudice." In re Refco, 2006 WL 2337212, at *2 (S.D.N.Y. Aug. 8, 2006). That is because "delay is an inherent part of every stay of discovery required by the PSLRA." In re Smith Barney Transfer Agent Litig., 2006 WL 1738078, at *2 (S.D.N.Y. June 26, 2006) (citations omitted).

Plaintiffs also contend that lifting the PSLRA discovery stay would be minimally burdensome because many of the documents they seek have already been produced to the SEC. But that argument merely sidesteps the undue prejudice standard. The proper inquiry for purposes of lifting the stay is not whether the expense of re-producing these documents is minimal, but whether Plaintiffs would be unduly prejudiced by continuing the stay. In re Smith Barney, 2006 WL 1738078, at *3; Elan Corp. Sec. Litig., 2004 WL 1303638, at *1 (S.D.N.Y. May 18, 2004).

Aside from their failure to show undue prejudice, Plaintiffs have not demonstrated that lifting the stay is necessary to preserve evidence. Of course, Dakota Plains bankruptcy counsel's failure to respond to Plaintiffs' request did nothing to alleviate concerns about preservation and perhaps compelled Plaintiffs to seek relief here. And Plaintiffs, for good

reason, are concerned about the evidence Dakota Plains and BioUrja possess, which is highly critical and relevant to the claims in this action.

But a "party alleging that discovery is necessary to preserve evidence must . . . make a specific showing that the loss of evidence is imminent as opposed to merely speculative." In re Vivendi, 381 F. Supp. 2d at 130. Beyond their blithe assertion that documents and ESI "might be" destroyed as a result of Dakota Plains' imminent liquidation and transfer of assets to BioUrja, Plaintiffs have not provided any specific facts that such an outcome is probable. In re Smith Barney Transfer Agent Litig., 2012 WL 1438241, at *3 (S.D.N.Y. Apr. 25, 2012) ("The mere fact that the documents and information at issue are in the possession of a non-party to this action does not create an imminent risk of destruction.").

Here, notwithstanding bankruptcy counsel's failure to respond, Dakota Plains' duty to preserve all documents relevant to the subject matter of this action arose as soon as it was served with the summons and complaint in December 2016. Although it is no longer a named defendant, it is not relieved from its preservation obligation. Dakota Plains' duty also springs from its position as a debtor-in-possession obliged to preserve documents that "could be relevant to future litigation" and to take "steps to ensure that an adequate preservation system [is] put in place in order to safeguard this discoverable information from any inadvert[e]nt or deliberate loss or destruction." Official Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman, 2015 WL 5027899, at *17 (E.D.N.Y. Aug. 25, 2015).

Moreover, Dakota Plains has represented that it will "retain [its] books and records through April 2020," and that any "electronically stored information currently resid[ing] on a server" will be preserved by an IT vendor until December 31, 2017. (Debtors' Response to Limited Objection to Jon D. Gruber to Confirmation of Chapter 11 Plan ("Debtors' Response"),

6

ECF No. 110, ¶ 2.) After December 31, 2017, "the liquidating trust may maintain that server [on which ESI resides] or [the IT vendor] may deliver the server to [records management] for storage." (Debtors' Response, at ¶ 2.) It therefore appears that Dakota Plains has undertaken steps to preserve relevant information. Notwithstanding those efforts, Plaintiffs may serve a preservation subpoena for the purpose of reiterating to Dakota Plains and its liquidating trustee their duties to preserve relevant information and make any arrangements to maintain the server after December 31, 2017.

BioUrja, on the other hand, is a third party whose only involvement in this action is that it agreed to purchase Dakota Plains' assets. Those assets include relevant documents to which Plaintiffs will be entitled if they prevail on the Defendants' motion to dismiss. While "parties to the action are specifically directed to preserve all relevant documents during the pendency of the stay, this statutory command does not apply to nonparties." In re Refco, 2006 WL 2337212, at *5 (internal citations omitted). And because of that, BioUrja's "status as a non-party significantly increases the risk that evidence may be lost" absent an express preservation notice. In re Smith Barney, 2012 WL 1438241, at *3. In such situations, "courts have generally permitted plaintiffs in PSLRA actions to issue subpoenas that have given specified third parties notice of the action and impose upon them only a duty to preserve certain relevant evidence in their possession." In re Smith Barney, 2012 WL 1438241, at *3. Accordingly, Plaintiffs are authorized to serve a preservation subpoena on BioUrja, directing it to preserve any relevant evidence during the pendency of this litigation.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to lift the PSLRA stay on discovery is granted in part and denied in part. The Clerk of Court is directed to terminate the motion pending at ECF No. 105.

Dated: September 5, 2017
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.