UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jon D. Gruber, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>Ryan R. Gilbertson; Michael L. Reger; Gabriel G. Claypool; Craig M. McKenzie; Timothy R. Brady; Terry H. Rust; Paul M. Cownie; David J. Fellon; Gary L. Alvord; James L. Thornton; James Randall Reger; Joseph Clark Reger, Individually and as Custodian for W. J. R. and J. M. R. (UTMA); Weldon W. Gilbertson, Individually and as Custodian for H.G. (UTMA), and as Trustee of the Ryan Gilbertson 2012 Family Irrevocable Trust; The Total Depth Foundation; Jessica C. Gilbertson (a/k/a Jessica Medlin); Kellie Tasto, as Custodian for H.G. (UTMA),<br><br>        Defendants. | Case No. 1:16-cv-09727-WHP |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT BY DEFENDANTS JAMES RANDALL REGER, JOSEPH CLARK REGER, WELDON W. GILBERTSON, AND KELLIE TASTO**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................... 2

    A.  Randy Reger ............................................................................................................. 3

    B.  Joseph Reger ............................................................................................................. 4

    C.  Weldon Gilbertson .................................................................................................... 5

    D.  Kellie Tasto .............................................................................................................. 5

ARGUMENT .................................................................................................................................... 6

I.  Gruber Has Failed to Adequately Plead a Predicate Insider Trading Violation as to All Nominee Defendants. ............................................................................................................. 7

    A.  Gruber has not asserted an insider trading claim against Nominee Defendants. .............. 8

    B.  Gruber has not alleged that Nominee Defendants were the corporate insiders selling their shares or had material, nonpublic information at that time. ............................................. 8

    C.  Gruber has not alleged that Nominee Defendants acted with scienter. ........................... 11

II.  Gruber Has Failed to Adequately Allege Contemporaneous Trading as to Nominee Defendants Joseph Individually and Weldon as Custodian for H.G. ..................................... 13

CONCLUSION ................................................................................................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................ 6

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) .................................................................................................... 11

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
    763 F. Supp. 2d 423 (S.D.N.Y. 2011) ..................................................................... 6, 7, 8, 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................ 6

*ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009) .................................................................................................. 11

*In re Livent, Inc. Sec. Litig.*,
    78 F. Supp. 2d 194 (S.D.N.Y. 1999) ................................................................................. 7, 10

*Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*,
    223 F. Supp. 2d 435 (S.D.N.Y. 2001) .................................................................................... 9

*In re Lululemon Sec. Litig.*,
    14 F. Supp. 3d 553 (S.D.N.Y. 2014) ....................................................................................... 6

*In re Openwave Sys. Sec. Litig.*,
    528 F. Supp. 2d 236 (S.D.N.Y. 2007) ..................................................................................... 8

*Sawant v. Ramsey*,
    570 F. Supp. 2d 336 (D. Conn. 2008) ................................................................................... 13

*Stevelman v. Alias Research, Inc.*,
    174 F.3d 79 (2d Cir. 1999) ...................................................................................................... 7

*In re Take-Two Interactive Sec. Litig.*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008) ............................................................................ *passim*

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .............................................................................................................. 12

*United States v. Hagan*,
    521 U.S. 642 (1997) ................................................................................................................ 8

**Statutes**

15 U.S.C. § 78u-4(b)(2) ..................................................................................................................11

**Rules**

Fed. R. Civ. P. 9(b) ...................................................................................................................6, 7

Fed. R. Civ. P. 12(b)(6)....................................................................................................................6

## INTRODUCTION

Over two years after he originally brought this securities-fraud suit, Plaintiff Jon Gruber added a Section 20A claim against six defendants—four current relatives, one ex-wife, and one foundation—who, according to Gruber, were holders of accounts with Dakota Plains shares in name only. As Gruber alleges, Defendants Ryan Gilbertson and Michael Reger distributed shares across these nominee accounts and were solely responsible for the relevant sales of those shares. Gruber also alleges that the "Nominee Defendants," as they are called in the Third Amended Complaint, were not involved in Dakota Plains, did not know of the material, nonpublic information in dispute, and did not make the trades of the shares during the Class Period. The reason Gruber added Nominee Defendants appears to boil down to the simple fact that the nominee accounts were in their name. That's far short of the heightened pleading requirement for a Section 20A claim.

Nominee Defendants James "Randy" Reger, Joseph Reger, Weldon Gilbertson, and Kellie Tasto, individually and as custodians or trustee as pleaded, move to dismiss the Section 20A claim for two reasons. First, Gruber has not alleged with particularity a predicate insider trading violation as to all Nominee Defendants. All that Gruber has alleged is that Gilbertson and Reger, not Nominee Defendants, were the corporate insiders who sold the shares based on material, nonpublic information. Gruber also has not asserted either a Section 10(b) claim against Nominee Defendants—the only basis for a predicate insider trading violation—or a factual basis that gives rise to a strong inference of scienter. Second, Gruber has not sufficiently alleged that sales from Joseph's individual account and Weldon's custodial account for H.G. were contemporaneous trades with Gruber's purchases—another reason to dismiss the Section 20A claim against them.

Because Gruber has failed to adequately plead the essential elements of his Section 20A claim against Nominee Defendants, the Court should dismiss that claim against them.

## BACKGROUND

Gruber filed this putative securities-fraud class action related to the share price of Dakota Plains Holdings, Inc. against six defendants in December 2016. Compl. (Docket No. 1). Gruber then filed his First Amended Complaint joining five additional defendants in May 2017, 1st Am. Compl. (Docket No. 42), and his Second Amended Complaint in July 2017, 2d Am. Compl. (Docket No. 96). After those defendants moved to dismiss the Second Amended Complaint, the Court granted in part and denied in part the motion. Order (Docket No. 119). The Court allowed the Section 10(b) and 20(a) claims (then asserted against all defendants) to proceed, but dismissed the Section 20A claim (then asserted against only Ryan Gilbertson) because Gruber had not "plead[ed], with particularity, that [his] trades were contemporaneous with Gilbertson's stock sales." *Id.* at 37.

On March 8, 2019, Gruber filed his Third Amended Complaint, adding, for the first time, six more defendants and asserting only a Section 20A claim against them. 3d Am. Compl. (Docket No. 175). Those defendants, known as "Nominee Defendants," include Defendants bringing this motion: James ("Randy") Reger (Michael Reger's father), Joseph Reger (Michael Reger's brother), Weldon Gilbertson (Ryan Gilbertson's father), and Kellie Tasto (Ryan Gilbertson's sister).[1]

Because the Court is familiar with the factual background of this case, this brief will describe only Gruber's allegations that are relevant to Nominee Defendants' motion. At their core, Gruber's current allegations can be categorized into three groups of defendants:

---

[1] Based on the allegations in the Third Amended Complaint, Nominee Defendants also include Defendants Jessica Gilbertson (Ryan Gilbertson's ex-wife) and Total Depth Foundation (controlled by Ryan Gilbertson). The undersigned counsel do not represent those two defendants and are not aware of any counsel representing them in this matter.

1. **Gilbertson and Reger:** Gruber alleges that Defendants Ryan Gilbertson and Michael Reger ("Gilbertson" and "Reger") "hid their controlling ownership" in Dakota Plains "by dividing it among a number of nominee accounts in the names of their family and charitable foundations" and "secretly . . . liquidat[ed] nearly $30 million worth of Dakota Plains stock between the two of them." *See, e.g.*, *id.* ¶¶ 2-3, 6, 11, 32. That liquidation, according to Gruber, caused the Dakota Plains share price "to fall to its nominal value." *Id.* ¶¶ 22, 24.

2. **Officer and Director Defendants:** Gruber alleges that Defendants Gabriel Claypool, Craig McKenzie, Timothy Brady, Terry Rust, Paul Cownie, David Fellon, Gary Alvord, and James Thornton ("Officer and Director Defendants") were Dakota Plains officers and directors who "knew of or recklessly disregarded" the scheme and failed to "disclose the fraud" to the investing public. *See, e.g.*, *id.* ¶¶ 2-3, 7, 11, 32.

3. **Nominee Defendants:** Finally, Gruber alleges that "Gilbertson and Reger hid their beneficial ownership and control of the Company from its inception by spreading their holdings across a number of nominee accounts they exclusively controlled," and that "Gilbertson and Reger sold millions of shares of Dakota Plains worth $30 million from nominee accounts" in Nominee Defendants' names. *See, e.g.*, *id.* ¶¶ 11, 19, 23.

Gruber further makes allegations, taken as true for purposes of this motion, related to each Nominee Defendant.

### A. Randy Reger

Randy Reger is Michael Reger's father. *Id.* ¶ 76. While Reger invited Randy to become the first CEO of Dakota Plains, Gruber alleges that Randy served in only a figurehead capacity. *Id.* For instance, Gruber alleges that Randy testified to the SEC that he "never met or formally discussed Dakota Plains" even after being named CEO; was not involved in the day-to-day activities of Dakota Plains; provided only a "signature stamp to use on his behalf"; and was unaware of the company's consulting contracts, approval of dividends or Senior Notes, additional pre-split shares granted in February 2011, or additional payment provision. *Id.* ¶¶ 76-77, 114. Nor was Randy involved with the hiring of his replacement as CEO. *Id.* ¶ 77. Gruber also alleges that Randy testified, "[a]ll these decisions were made by Gilbertson." *Id.* Gruber does not allege that Randy had personal involvement in or knowledge of the material, nonpublic information that underlies Gruber's claims.

3

Gruber also does not allege that Randy personally made transfers of Dakota Plains shares. The most Gruber alleges regarding Randy's actions is that Randy received "a $350,000 dividend from Dakota Plains in 2011," encouraged two friends to "purchase Dakota Plains shares as soon as it went public," and "purchased another 1,000 shares of Dakota Plains stock in the first 20 days after it went public even though he owned millions of shares already for which he paid next to nothing." *Id.* ¶ 77; *see also id.* ¶ 146. As for the shares in Randy's name at issue, Gruber alleges that "Michael Reger sold or short sold" those shares during the Class Period. *Id.* ¶ 79.

**B.     Joseph Reger**

Joseph Reger is Michael Reger's brother. *Id.* ¶ 80. Gruber alleges that Joseph received founders' shares of Dakota Plains in 2008, *id.*, and (after a stock split) sold many shares over six transactions from 2012 to 2015, *id.* ¶ 85. Gruber also alleges that Joseph "participated in the stock manipulation" by sending emails and making calls to a friend regarding Dakota Plains, including calls the night before and morning that public trading commenced. *Id.* ¶ 81; *see also id.* ¶ 147. As custodian of accounts for Michael's two minor children, W. J. R. and J. M. R., Gruber further alleges that Joseph received $3 million in consolidated notes in November 2011, and received "additional payment[s]" in the form of 12% promissory notes for each custodian account within 20 days of the commencement of public trading. *Id.* ¶¶ 80, 82; *see also id.* ¶ 133.

Gruber does not allege that Joseph himself made the sales of shares in his name or as custodian at issue. Gruber alleges that, according to Joseph's testimony to the SEC, Michael made "all the investment decisions with respect to Dakota Plains stock for which he was listed as the custodian, and that he was unaware of the transactions made in his name." *Id.* ¶ 82; *see also id.* ¶ 86. In addition, Gruber alleges that "Joseph Reger's individual account" sold certain shares "over six transactions extending from 2012 – 2015," but does not allege who controlled or made those sales. *Id.* ¶ 85.

4

### C. Weldon Gilbertson

Weldon Gilbertson is Ryan Gilbertson's father. *Id.* ¶ 53. Weldon was named as a director, the president, and the treasurer of Dakota Plains at its inception. *Id.* But Gruber alleges that Weldon testified at Gilbertson's criminal trial that he never had any substantive input into the company or the company documents that bore his signature, was never a decision maker with regard to Dakota Plains, had no office and could not recall ever discussing Dakota Plains with Randy Reger, and provided a stamp of his signature that he authorized others, but not Gilbertson and Reger directly, to use for Dakota Plains-related matters. *Id.* More particularly, Gruber also alleges that Weldon testified at the criminal trial and to the SEC that he had no personal involvement in or knowledge of the events that form the basis of Gruber's claims, including various transfers and votes of shares in his name and as a custodian and trustee, the consulting agreements, the Senior and Junior Notes, and other uses of his signature stamp. *Id.* ¶¶ 54-56. In short, Weldon had "nothing to do with" Dakota Plains, according to Gruber. *Id.*

Gruber does not allege that Weldon personally sold the shares in his name and as custodian for Ryan's minor child, H.G., or as trustee for the Ryan Gilbertson 2012 Family Irrevocable Trust. Instead, Gruber alleges that "Ryan Gilbertson sold" Weldon's shares at issue during the Class Period. *Id.* ¶¶ 58-60. And with respect to the shares in Weldon's custody and trust, Gruber alleges that it was Gilbertson, not Weldon, who "voted and directed all transactions" in the shares and "made the decisions about when to sell the shares." *Id.* ¶¶ 44, 55, 57.

### D. Kellie Tasto

Kellie Tasto is Ryan Gilbertson's sister. *Id.* ¶ 61. Gruber does not allege that Kellie had any personal involvement in or knowledge of the material, nonpublic information underlying Gruber's claims, including any role at Dakota Plains. As Weldon testified to the SEC, according to Gruber, Kellie has no business or financial background and Gilbertson had full control over her

5

account. *Id.* Gruber also does not allege that Kellie made the sales of shares in her name or as custodian for H.G., instead stating that "Gilbertson liquidated" those shares. *Id.* ¶ 62.

Despite pleading that Nominee Defendants' shares were "exclusively controlled" by Gilbertson and Reger, *id.* ¶ 11, Gruber asserts a Section 20A claim against Nominee Defendants. *Id.* ¶¶ 266-72. Gruber's claim amounts to the following two critical yet generic allegations: (1) Gilbertson and Reger had material, nonpublic information because they controlled Dakota Plains and that, purportedly "by extension," Nominee Defendants had possession of the same information, *id.* ¶ 269; and (2) Nominee Defendants "participat[ed]" in the sale of their shares while possessing that information, *id.* ¶ 270. Nominee Defendants move to dismiss the Section 20A claim because Gruber has failed to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

## ARGUMENT

To survive a motion to dismiss for the failure to state a claim, Gruber's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 570 (S.D.N.Y. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim has "facial plausibility" only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. As a result, "[t]hreadbare recitals of the elements of a cause of action" are not enough to plead a facially plausible claim. *In re Lululemon*, 14 F. Supp. 3d at 570. Where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," the Court must dismiss the claim as a matter of law. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

Beyond the plausibility standard, "claims under § 20A must comply with the heightened pleading standards of Fed. R. Civ. P. 9(b) and the PSLRA." *In re Bear Stearns Cos., Inc. Sec.,*

6

*Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 487 (S.D.N.Y. 2011) (citing *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 310 n.50 (S.D.N.Y. 2008)). The PSLRA and Rule 9(b) "require that fraud be pled with particularity." *Id.* at 485. Particularity requires Gruber to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Stevelman v. Alias Research, Inc.*, 174 F.3d 79, 84 (2d Cir. 1999) (quotation omitted). Particularity also demands that "a claim may not rely upon blanket references to acts or omissions by all of the defendants, for each defendant named in the complaint is entitled to be appraised of the circumstances surrounding the fraudulent conduct with which he individually stands charged." *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 213 (S.D.N.Y. 1999).

Gruber must therefore adequately plead each element of his Section 20A claim against each Nominee Defendant. An insider trading claim under Section 20A of the Exchange Act has two elements: (1) "plead a predicate insider trading violation of the Exchange Act," and (2) "allege sufficient facts showing that the defendant traded the security at issue 'contemporaneously' with the plaintiff." *In re Take-Two Interactive*, 551 F. Supp. 2d at 309 (quotation omitted). Because Gruber has failed to adequately allege a predicate violation as to all Nominee Defendants and contemporaneous trading as to certain Nominee Defendants, he has not stated a Section 20A claim against them.

**I.      Gruber Has Failed to Adequately Plead a Predicate Insider Trading Violation as to All Nominee Defendants.**

Gruber must, but has not, pleaded a predicate insider trading violation against Nominee Defendants to assert Section 20A claims against them. Most tellingly, Gruber has not asserted a separate Section 10(b) claim against Nominee Defendants for insider trading. Nor has Gruber alleged with particularity that Nominee Defendants were the corporate insiders who sold shares

7

based on material, nonpublic information. Instead, Gruber repeatedly alleges that Gilbertson and Reger had total control over those sales and information. And Gruber has not alleged any basis for a strong inference that Nominee Defendants acted with scienter. Because Gruber has not pleaded an essential element of his Section 20A claim, the Court should dismiss it entirely. *See In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 256 (S.D.N.Y. 2007) (Section 20A claims properly dismissed when a "[p]laintiff fail[s] entirely to allege any underlying Exchange Act violations as to" the moving defendants).

### A.   Gruber has not asserted an insider trading claim against Nominee Defendants.

Gruber's failure to assert a separate insider trading claim against Nominee Defendants is fatal. When a plaintiff asserts a Section 20A claim, the plaintiff must first "plead a predicate insider trading violation of the Exchange Act." *In re Bear Stearns*, 763 F. Supp. 2d at 487 (quotation omitted). Rule 10b-5(a) and (c) "constitute the only provisions that could give rise to an insider trading claim." *In re Take-Two Interactive*, 551 F. Supp. 2d at 310. Failing to plead separate claims under Section 10(b) and Rule 10b-5 "cast[s] substantial doubt upon the sufficiency of [a] predicate insider trading claim under Section 10(b) and Rule 10b-5." *Id.* So too here, where Gruber has failed to assert any Section 10(b) claim against any Nominee Defendant. Gruber's inability to plead a Section 10(b) claim against Nominee Defendants shows that he has failed to allege enough facts to support a predicate insider trading violation under Section 10(b).

### B.   Gruber has not alleged that Nominee Defendants were the corporate insiders selling their shares or had material, nonpublic information at that time.

Gruber bases his Section 20A claim on the traditional theory of insider trading liability, which arises "when a corporate insider trades in the securities of his corporation on the basis of material, nonpublic information." *United States v. Hagan*, 521 U.S. 642, 651-52 (1997). To satisfy that standard, Gruber cannot rely on conclusory allegations that Nominee Defendants conducted

8

the trades or possessed material, nonpublic information—he must make "particularized allegations tending to show that these defendants knew" of that information. *In re Take-Two Interactive*, 551 F. Supp. 2d at 310-11 (Section 20A claims dismissed where plaintiff did not allege that communications of material, nonpublic information specifically implicated defendants). Particularized allegations must "provide adequate specifics regarding the circumstances surrounding Defendants' possession of non-public information: *e.g.*, among other things, what non-public information Plaintiff gave Defendants, when the information was given, etc." *Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 447 (S.D.N.Y. 2001). Gruber has failed to allege insider trading for two reasons.

First, as Gruber frequently alleges, Nominee Defendants were not corporate insiders making the trades. Gruber alleges that "Gilbertson and Reger controlled the Company and made all material decisions on its behalf." 3d Am. Compl. ¶ 7. Gruber also alleges that "Gilbertson and Reger . . . exclusively controlled" the shares held by Nominee Defendants. *Id.* ¶ 11. And for each Nominee Defendant, Gruber alleges that either "Gilbertson," "Reger," or an unidentified person were the individuals who sold or liquidated Nominee Defendants' shares. *Id.* ¶¶ 58-60, 62, 79, 85. As the Court reasoned in its prior Order, Gilbertson (and by comparison Reger) was the "quintessential insider who made every material decision for the Company and was privy to a wide range of nonpublic information." Order at 36. As Gruber puts it, "Gilbertson and Reger," not Nominee Defendants, were the ones who "sold millions of shares . . . from nominee accounts." 3d Am. Compl. ¶ 19.

Second, Gruber's allegations also show that Nominee Defendants did not have material, nonpublic information at the time of the sales. Gruber has failed to make any particular allegations that Nominee Defendants had that information, including about what information they possessed,

9

when they possessed it, the source of the information, how they obtained it, and any other factual material to meet the plausibility requirement. Gruber affirmatively alleges, without contradiction, that Nominee Defendants did not have the information in question. As detailed in the Background section above, Gruber alleges that both Randy and Weldon previously testified that they were not involved in the activities and decisions of Dakota Plains as a publicly traded company and never met or formally discussed Dakota Plains as a publicly traded company. Gruber further alleges that Randy and Weldon were not aware of the consulting agreements, approval of dividends and notes, additional pre-split shares, additional payment provision, or other uses of their signatures or votes with their shares. Gruber generally alleges that Joseph participated in stock manipulation by communicating with a friend about Dakota Plains, but Gruber does not specifically allege how those communications reflect having the material, nonpublic information at issue. And Gruber does not allege that Kellie (or any other Nominee Defendants) had any personal involvement in or knowledge of the material, nonpublic information underlying his claims. Gruber's own allegations doom his claim.

Gruber's baseless allegation that Nominee Defendants had material, nonpublic information at the time of sale "by extension" because Gilbertson and Reger controlled their shares is factually and legally inadequate. *Id.* ¶ 269. A "by extension" allegation without any substance doesn't meet the plausibility standard, let alone the particularity standard. A Section 20A claim "may not rely upon blanket references to acts or omissions by all of the defendants." *In re Livent*, 78 F. Supp. 2d at 213. Rather, Gruber must make "particularized allegations tending to show that these defendants knew" of the information. *In re Take-Two Interactive*, 551 F. Supp. 2d at 310. Nominee Defendants cannot be imputed with Gilbertson's and Reger's possession of material, nonpublic information solely by allegations that they were nominees for the accounts that Gilbertson and Reger

10

controlled. Gruber has alleged no basis for extending Gilbertson's and Reger's knowledge to Nominee Defendants. *See id.* at 310-11 (plaintiff failed to show why knowledge of material, nonpublic information should be imputed).

Because Gruber has not alleged with any particularity that Nominee Defendants were the corporate insiders selling their shares or had material, nonpublic information, he has not pleaded a predicate insider trading violation.

### C. Gruber has not alleged that Nominee Defendants acted with scienter.

Another element for pleading a predicate insider trading violation requires Gruber to allege that Nominee Defendants "acted with the requisite intent to establish scienter in selling their [] stock." *In re Bear Stearns*, 763 F. Supp. 2d at 508. Under the PSLRA, Gruber must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The requisite state of mind in a Section 10(b) and Rule 10b-5 action is "an intent to deceive, manipulate, or defraud." *ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). Ultimately, Gruber cannot plead a strong inference of scienter unless he makes particular allegations of (1) "motive and opportunity to commit the fraud" or (2) "strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

Despite long having access to testimony given by Nominee Defendants, Gruber entirely fails to plead scienter as to any of them. Gruber does not allege that Randy, Weldon, or Kellie knew of, directed, or participated in any alleged scheme. 3d Am. Compl. ¶¶ 77-78, 114, 126. Nor does Gruber make any allegation that Randy, Weldon, or Kellie had the motive or opportunity to commit securities fraud, or that they engaged in conscious misbehavior or recklessness. All that Gruber alleges is that shares of Dakota Plains stock were sold from these Nominee Defendants' accounts. But as the Court held previously as to Officer and Director Defendants, stock sales alone

do not "support an inference of scienter," especially when they "occur prior to the disclosure of any negative information." Order at 24. Without more, Gruber does not meet the particularized pleading requirement for scienter.

Though Gruber boldly alleges that Joseph "participated in the stock manipulation," *id.* ¶ 81, such a conclusory allegation likewise fails to meet the pleading standard for scienter. Gruber does not support his allegation with any particular motive or opportunity for Joseph to have committed securities fraud. Indeed, Gruber provides no particularized allegation regarding Joseph's possession of any alleged material nonpublic information, and likewise provides no information about Joseph's alleged role in the alleged stock manipulation scheme. Gruber instead makes clear that Joseph was near silent in his role as an individual investor and custodian for Michael Reger's children. *Id.* ¶ 82. "[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the Court must take into account plausible opposing inferences," such that "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). Here, a much more obvious and compelling inference can be drawn from Gruber's allegations: Randy and Joseph wanted to share news about their son's or brother's newly public company and discuss investment opportunities with their friends. That inference is more plausible given that Gruber makes no other allegation supporting an inference of scienter, and Gruber affirmatively alleges that Joseph was not actively involved in Dakota Plains.

In sum, Gruber's allegations do not support a strong inference of scienter by any Nominee Defendant. Because Gruber has not adequately pleaded that and other elements for a predicate

insider trading violation, the Section 20A claim should be dismissed as against all Nominee Defendants.[2]

## II. Gruber Has Failed to Adequately Allege Contemporaneous Trading as to Nominee Defendants Joseph Individually and Weldon as Custodian for H.G.

Gruber has also failed to allege the second element of a Section 20A claim against certain Nominee Defendants: contemporaneous trading between sales of their Dakota Plains shares and Gruber's purchases of Dakota Plains shares. As Gruber neglected to do when the Court dismissed the Section 20A claim before, he again did not allege the particular dates on which his purchases were contemporaneous with sales from Joseph's individual account or Weldon's custodial account for H.G. Thus, the Section 20A claim against those Nominee Defendants should be dismissed.

The Court previously dismissed the Section 20A claim against Gilbertson because Gruber had not alleged "with particularity" that "Gruber's trades were contemporaneous with Gilbertson's stock sales." Order at 37. In doing so, the Court made clear that Gruber cannot overcome a motion to dismiss unless he alleges "the dates on which a defendant sold his stock to establish that the parties' trades occurred contemporaneously." *Id.* at 38. Gruber must also allege that sales of Nominee Defendants' shares and his purchases fell "within a reasonable period of time, usually limited to a few days, of each other." *In re Take-Two*, 551 F. Supp. 2d at 311 n.51 (five days, while not the maximum, is a reasonable period for contemporaneousness); *see also Sawant v. Ramsey*, 570 F. Supp. 2d 336, 347 (D. Conn. 2008) (ten-day period during which defendant's sales and plaintiff's purchases occurred was sufficiently contemporaneous). Following those same

---

[2] While undersigned counsel do not represent Jessica Gilbertson and Total Depth Foundation, they note that the same arguments for why Gruber has not pleaded a predicate insider trading violation against Randy, Joseph, Weldon, and Kellie apply equally to Jessica and Total Depth. Gruber has not alleged that Jessica and Total Depth violated Section 10(b), personally sold their shares or possessed material, nonpublic information, or acted with scienter. *See* 3d Am. Compl. ¶¶ 63-75. The Court could also dismiss the Section 20A claim against Jessica and Total Depth.

13

principles, the Court rejected Gruber's claim against Gilbertson because Gruber made "no attempt to allege that sales by these parties between February 2013 and December 2014 occurred contemporaneously with Gruber's purchases." Order at 39.

The Court should dismiss the Section 20A claim against Joseph individually and Weldon as custodian for H.G. for similar reasons. As for Joseph, Gruber does not allege the dates on which sales of shares were contemporaneous to Gruber's purchases—the undoing of the Section 20A claim last time. Gruber alleges only that the sales occurred over six transactions sometime "from 2012 – 2015." 3d Am. Compl. ¶ 85. Exhibit A to the Third Amended Complaint identifies one sale that occurred on February 12, 2013, which was within the time period that Gruber bought shares from February 2013 to December 2014, but Gruber does not allege the date of his purchase to which the sale of Joseph's shares was contemporaneous. Ex. A (Docket No. 175-1) at 24. An allegation that Joseph's shares were "traded within a four-year time period does not . . . support a reasonable inference" of contemporaneousness. Order at 39. As for Weldon, Gruber alleges specific dates on which sales of shares were sold, but none of those dates are contemporaneous with an identified date on which Gruber purchased shares. Exhibit A shows several sales in November and December 2012, which are well before the start of Gruber's purchases in February 2013. Ex. A at 14. Exhibit A also shows a sale on September 23, 2014, *id.*, and a wire transfer out of the account on October 23, 2013, 3d Am. Compl. ¶ 60. Yet again, Gruber does not allege the date of any of his purchases to which those dates are contemporaneous. *See* Order at 39.

Gruber's failure to adequately allege contemporaneous trading warrants dismissal of the Section 20A claim against Nominee Defendants Joseph individually and Weldon as custodian for H.G.

## CONCLUSION

For those reasons, Nominee Defendants respectfully request that the Court dismiss the Section 20A claim against them with prejudice.

Dated:  April 5, 2019                    **KELLY & JACOBSON**

  s/ Thomas M. Kelly
Thomas M. Kelly (admitted *pro hac vice*)
650 3rd Ave S., Suite 260
Minneapolis, MN 55402
tom_kelly@qwestoffice.net
(612) 339-5055

Attorney for Defendants James Randall Reger and Joseph Clark Reger, Individually and as Custodian for W. J. R. and J. M. R. (UTMA)

Dated:  April 5, 2019                    **GREENE ESPEL PLLP**

  s/ Matthew D. Forsgren
Matthew D. Forsgren (admitted *pro hac vice*)
222 S. Ninth Street, Suite 2200
Minneapolis, MN  55402
mforsgren@greeneespel.com
(612) 373-0830

Attorneys for Weldon W. Gilbertson, Individually and as Custodian for H.G. (UTMA), and as Trustee of the Ryan Gilbertson 2012 Family Irrevocable Trust; and Kellie Tasto, as Custodian for H.G. (UTMA)