# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jon D. Gruber, *individually and on behalf of all others similarly situated*, | |
| Plaintiff, | Case No. 16-cv-09727-WHP |
| v. | |
| Ryan R. Gilbertson, et al., | |
| Defendants. | |

# DEFENDANT RYAN GILBERTSON'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

PLAINTIFF'S RICO ALLEGATIONS ..................................................................................... 2

ARGUMENT................................................................................................................................ 4

I.    Even taking Plaintiff's allegations as true, his conclusory allegations fail to state a plausible RICO claim. ............................................................................................................. 4

II.    Gilbertson was not convicted of defrauding Plaintiff, and therefore, the "criminal conviction exception" to the PSLRA bar does not apply........................................................ 4

   A.    Plaintiff is not a specific victim to Gilbertson's criminal conviction. ........................7

   B.    The government's position on sentencing confirms Plaintiff is not an investor that was criminally defrauded, and thus is not a victim. ............................................................ 9

III.    Plaintiff's RICO claim cannot withstand the particular scrutiny imposed on fraud-based claims........................................................................................................................... 13

   A.    Plaintiff cannot establish a "pattern of racketeering activity" because the alleged predicate acts lack sufficient continuity. .............................................................................15

      1.    Plaintiff cannot establish "closed-ended continuity" because the alleged single-scheme had a narrow purpose, few participants and limited duration. ...........................15

      2.    Plaintiff cannot establish "open-ended continuity" because the alleged scheme was inherently terminable.......................................................................................................19

   B.    Plaintiff has not pled that the "Gilbertson Enterprise" was separate from the alleged pattern of racketeering activity. ....................................................................................... 20

IV.    Taking Plaintiffs' allegations as true, Gilbertson did not engage in insider trading... 23

CONCLUSION ........................................................................................................................ 24

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Albunio v. Int'l Safety Grp., Inc.*,
  2016 WL 1267795 (S.D.N.Y. Mar. 30, 2016) .................................................................. 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................................... 4

*Azrielli v. Cohen Law Offices*,
  21 F.3d 512 (2d Cir.1994) ............................................................................................... 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................................................... 4

*Boyle v. United States*,
  556 U.S. 938 (2009) ........................................................................................................ 21

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
  187 F.3d 229 (2d Cir. 1999) ........................................................................... 15, 17, 19, 20

*Crawford v. Franklin Credit Mgmt. Corp.*,
  758 F.3d 473 (2d Cir. 2014) ........................................................................................... 15

*Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*,
  758 F. Supp. 2d 153 (E.D.N.Y. 2010) .............................................................................. 4

*D. Penguin Bros., Ltd. v. City Nat'l Bank*,
  587 F. App'x 663 (2d Cir. 2014) ................................................................................ 21, 22

*DeFalco v. Bernas*,
  244 F.3d 286 (2d Cir. 2001) ...................................................................................... 14, 16

*DeMarco v. Robertson Stephens Inc.*,
  318 F. Supp. 2d 110 (S.D.N.Y. 2004) ............................................................................ 23

*Enron Corp. Sec. Deriv. & ERISA Litig.*,
  284 F. Supp. 2d 511 (S.D. Tex. 2003) .............................................................................. 5

*Estate of Gottdiener v. Sater*,
  2014 WL 1100133 (S.D.N.Y. March 19, 2014) ....................................................... 4, 6, 13

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004) ...................................................................................... 15, 21

*GICC Capital Corp. v. Tech. Fin. Grp., Inc.*,
   67 F.3d 463 (2d Cir. 1995) .........................................................................................16, 19

*Gross v. Waywell*,
   628 F.Supp.2d 475 (S.D.N.Y. 2009) ...........................................................14, 16, 18, 22

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989) ................................................................................................. 16

*Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*,
   2013 WL 3943267 (S.D.N.Y. July 31, 2013) ................................................... 17

*Hemispherx Biopharma, Inc. v. Asensio*,
   1999 WL 144109 (E.D. Pa. Mar. 15, 1999) ......................................................... 5

*Hill v. New York Post*,
   2010 WL 2985906 (S.D.N.Y. July 29, 210) ................................................... 10

*Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*,
   665 F.Supp.2d 239 (S.D.N.Y. 2009) ...................................................................20

*Holmes v. Parade Place, LLC*,
   2013 WL 5405541 (S.D.N.Y. Sept. 26, 2013) ................................................ 14

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014) ................................................................... 4

*In re Openwave Systems Securities Litigation*,
   528 F. Supp. 2d 236 (S.D.N.Y. 2007) ...............................................................23

*Int'l Bhd. of Teamsters v. Carey*,
   297 F.Supp.2d 706 (S.D.N.Y. 2004) .................................................................20

*Jackson v. Nat'l Life Ins. Co. v. Merrill Lynch & Co.*,
   32 F.3d 697 (2d Cir. 1994) ...................................................................................23

*Kaplan v. S.A.C. Capital Advisors, LP*,
   104 F. Supp. 3d 384 (S.D.N.Y. 2015) ......................................................... 6, 7

*Katzman v. Victoria's Secret Catalogue*,
   167 F.R.D. 649 (S.D.N.Y. 1996) .................................................................13, 14

*Krear v. Malek*,
   961 F. Supp. 1065 (E.D. Mich. 1997) ...................................................1, 5, 6, 7

*Madden v. Gluck*,
   815 F.2d 1163 (8th Cir. 1987) ............................................................................ 18

*Mayfield v. British Bankers' Ass'n,*
  2014 WL 10449597 (S.D.N.Y. July 22, 2014) .................................................... 10

*MLSMK Inv. Co. v. JP Morgan Chase & Co.,*
  651 F.3d 268 (2d Cir. 2011) ................................................................................... 5

*Ornest v. Delaware N. Cos.,*
  818 F.2d 651 (8th Cir. 1987) ............................................................................... 18

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Lundgren,*
  579 F. Supp. 2d 520 (S.D.N.Y. 2008) ................................................................. 23

*Rogers v. Nacchio,*
  2006 WL 7997562 (S.D. Fla. June 6, 2006) .................................................... 6, 7

*Rosenson v. Mordowitz,*
  2012 WL 3631308 (S.D.N.Y. Aug. 23, 2012) ................................................... 21

*S.E.C. v. Conradt,*
  947 F. Supp. 2d 406 (S.D.N.Y. 2013) ................................................................. 23

*Spool v. World Child Int'l Adoption Agency,*
  520 F.3d 178 (2d Cir. 2008) ......................................................................... 16, 19

*United States v. Archer,*
  671 F.3d 149 (2d Cir. 2011) ............................................................................... 10

*United States v. Aulincino,*
  44 F.3d 1102 (2d Cir. 1995) ............................................................................... 19

*United States v. Dial,*
  705 F. App'x 250 (5th Cir. 2017) ....................................................................... 11

*United States v. Ebbers,*
  458 F.3d 110 (2d Cir. 2006) .................................................................................. 9

*United States v. Georgiou,*
  777 F.3d 125 (3d Cir. 2015) ............................................................................... 11

*United States v. Jewett,*
  978 F.2d 248 (6th Cir. 1992) ............................................................................. 10

*United States v. Rutkoske,*
  506 F.3d 170 (2d Cir. 2007) ............................................................................... 13

*United States v. Turkette,*

452 U.S. 576 (1981) ........................................................................................... 21

*United States v. Ware*,
577 F.3d 442 (2d Cir. 2009) .............................................................................11

*W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*,
2004 WL 2187069 (S.D.N.Y. Sept. 29, 2004) ................................................22

**Statutes**

18 U.S.C. § 1962 ................................................................................................ 14

18 U.S.C. § 1964(c) ............................................................................... 1, 4, 14, 18

18 U.S.C. § 3661 .................................................................................................. 8

18 U.S.C. § 3771 ................................................................................................ 13

18 U.S.C. § 3771(a)(8) ........................................................................................ 10

18 U.S.C. § 3771(e) ............................................................................................ 10

18 U.S.C.A. § 3663A ..................................................................................... 10, 13

**Rules**

Fed. R. Civ. Proc. 12(b)(6) .................................................................................. 4

U.S.S.G. § 1B1.4 .................................................................................................. 8

U.S.S.G. §§ 2B1.1 ................................................................................................ 9

U.S.S.G § 2B1.1(b)(2)(C) ................................................................................... 11

## INTRODUCTION

The new claim against Ryan Gilbertson in Plaintiff's Third Amended Complaint ("TAC") is nothing more than an attempt to profit off of his criminal conviction. Except in very limited circumstances that do not exist here, Plaintiff may not recast claims under Section 10(b) of the Securities Exchange Act of 1934 or Rule 10b-5 of the Securities and Exchange Commission as a claim under the Racketeering Influenced and Corrupt Organizations Act ("RICO"). Because Plaintiff cannot satisfy the formidable hurdles Congress imposed for pleading a treble damages RICO claim, his new claim fails as a matter of law.

First, the Private Securities Litigation Reform Act ("PSLRA") bars the use of securities fraud as a civil RICO predicate act unless the defendant has been "criminally convicted in connection with the fraud." 18 U.S.C. § 1964(c). This exception must be interpreted "as narrowly as possible," and is available only to plaintiffs "against whom a defendant has *specifically* been convicted of criminal fraud." *Krear v. Malek*, 961 F. Supp. 1065, 1076 (E.D. Mich. 1997) (emphasis added). Here, Gilbertson was not found guilty of criminally defrauding Plaintiff, who bought stock 10 months after the alleged 20-day scheme to manipulate the stock ended. Moreover, no shareholder or investor (including Plaintiff) was specifically identified as a victim in the criminal case. The criminal court did not award restitution for any investors, and did not accord a single Dakota Plains shareholder victim status under the Crime Victims' Rights Act. As a result, Plaintiff's securities transactions cannot serve as civil RICO predicate acts.

Second, even if he falls within the exception to bring a RICO claim, Plaintiff cannot establish "closed-ended continuity" because the alleged single-scheme had a narrow purpose, few participants, and limited duration of 20 days. Third, Plaintiff's

1

allegations regarding the Defendant's common purpose fall short of supporting a plausible inference that an association-in-fact enterprise existed.

Finally, this Court has already dismissed Plaintiff's Section 20A claim and Plaintiff still fails to sufficiently plead contemporaneous trading.  For these reasons, the Court should dismiss Plaintiff's TAC because he cannot satisfy the requisite pleading standard to sustain a civil RICO or Section 20A claim against Gilbertson.

## PLAINTIFF'S RICO ALLEGATIONS

Plaintiff brings a RICO claim against Gilbertson, who was convicted of 14 counts of wire fraud, six counts of securities fraud, and one count of conspiracy to commit securities fraud during a limited 20-day period following the reverse merger used to take Dakota Plains public. (TAC ¶ 31.) The government prosecuted Gilbertson for wire and securities fraud under a theory of market manipulation: it argued he manipulated the price of Dakota Plains stock by urging a stockbroker to purchase the stock at $12 and advising a friend to sell the stock at that same price. But $12 was the then-prevailing market price of Dakota Plains stock, not an artificially-inflated price. Notwithstanding the absence of evidence showing that the trades at issue were capable of artificially affecting the stock price, the jury convicted Gilbertson on all but one of the charged counts. But the verdict does not substantiate or validate Plaintiff's RICO claim.

The TAC alleges Gilbertson embarked on a scheme with a narrow purpose to profit off of Dakota Plains and "enrich the members" of the alleged enterprise "using Dakota Plains cash and/or its common stock." (TAC ¶ 276.) According to the TAC, the single scheme to take Dakota Plains public in March 2012 had two parts: 1) to manipulate the price of Dakota Plains during the first 20 days of public trading to increase the payout of the Additional Payment Provision ("APP"), and 2) then to trade

founders' shares and shares obtained from the APP payment with inside information. (TAC ¶¶ 12-23.) The average closing price of Dakota Plains stock in the first 20 days of public trading (March 23 to April 20, 2012) was $11.6255, entitling the twelve noteholders (including Gilbertson) to a total bonus payment of $32,851,800. The price of the stock gradually decreased over the spring and summer of 2012 as oil prices declined across the country, trading at about $9 to $10 in May and June, $8 to $8.75 in July, and $6 to $8 in August. After Dakota Plains struggled to obtain financing to pay the bonus payment, the noteholders, including Gilbertson, agreed to restructure the debt. They received shares rather than cash.

The TAC contends Gilbertson participated in the conduct of this enterprise's affairs through "a pattern of racketeering activity" through "violations of federal wire fraud" and an "elaborate securities fraud scheme relating to his sale of Dakota Plains securities." (TAC ¶ 277.) The TAC alleges the scheme started when Gilbertson initially formed Dakota Plains and lasted over eight years through the end of his insider stock sales—the same shares he received from the additional payment. (TAC ¶¶ 2, 278.) The TAC claims Gilbertson ran the association-in-fact "enterprise" that was comprised of Dakota Plains, Michael Reger, James Sankovitz, Douglas Hoskins, Thomas Howells, Nick Shermeta and various other individuals. (TAC ¶ 276.) Nowhere in the 154-page TAC does Plaintiff allege he was a victim of the conduct for which Gilbertson was convicted.

Based upon these allegations, Plaintiff demands treble the damages he seeks through his § 10-b and § 20A, claim, as well as costs, attorneys' fees and prejudgment interest.

**ARGUMENT**

### I.   Even taking Plaintiff's allegations as true, his conclusory allegations fail to state a plausible RICO claim.

To survive a motion to dismiss, Plaintiff's civil RICO claim must "allege every essential element of each predicate act," *Estate of Gottdiener v. Sater*, No. 13 Civ. 01824, 2014 WL 1100133, at *4 (S.D.N.Y. March 19, 2014), and the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 570 (S.D.N.Y. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); Fed. R. Civ. Proc. 12(b)(6). Courts are particularly mindful of these standards in the context of a civil RICO claim given the "potential for abuse of RICO's potent provisions." *Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 167 (E.D.N.Y. 2010), *aff'd* 443 F. App'x 582 (2d Cir. 2011). Where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," the complaint must be dismissed as a matter of law. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

### II.   Gilbertson was not convicted of defrauding Plaintiff, and therefore, the "criminal conviction exception" to the PSLRA bar does not apply.

While Section 107 of the Private Securities Litigation Reform Act of 1995 explicitly prohibits Plaintiff from using securities fraud claims as a basis for his civil RICO claim, Plaintiff hopes to fall within the narrow exception where securities fraud can be used as a predicate act for "an action against any person that is criminally convicted in connection with the fraud."18 U.S.C. § 1964(c). Plaintiff's RICO claim is premised on the fact that a jury convicted Gilbertson of securities fraud during a limited 20-day period.

By forbidding the use of securities fraud as a predicate act for a civil RICO claim, Congress intended "to correct the misapplication of RICO in securities fraud context." *Krear v. Malek,* 961 F.Supp. 1065, 1076 (E.D. Mich. 1997). This bar was designed to "prevent litigants from using artful pleading to boot-strap securities fraud cases into RICO cases, with their threat of treble damages." *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 274 (2d Cir. 2011) (internal quotation marks omitted). As then SEC Chairman Arthur Levitt explained in testimony before the Senate in connection with the passage of the PSLRA: "[b]ecause the securities laws generally provide adequate remedies for those injured by securities fraud, it is both unnecessary and unfair to expose defendants in securities cases to the threat of treble damages and other extraordinary remedies provided by RICO." S. Rep. No. 104—98, at 19 (1995); *see also Hemispherx Biopharma, Inc. v. Asensio,* No. CIV. A. 98–5204, 1999 WL 144109, *4 (E.D. Pa. Mar. 15, 1999) ("The legislative history indicates that Congress intended that RICO, which provides treble damages and attorney's fees, not be used for securities fraud claims at all because there were, generally speaking, other statutes that more appropriately provided for recovery in such cases.").

Following this clear Congressional mandate to distinguish between securities fraud claims and RICO claims, and the courts' generally limited view of RICO, courts narrowly circumscribe the application of the criminal exception to both the fraudulent conduct that can serve as a civil RICO predicate act *and* plaintiffs who are specifically named as victims of the same fraudulent conduct. *See Krear*, 961 F. Supp. at 1076; *see also In re Enron Corp. Sec. Deriv. & ERISA Litig.*, 284 F. Supp. 2d 511, 623 (S.D. Tex. 2003).

In *Krear*, the case with the most in-depth analysis on the conviction exception, the court interpreted the exception "as narrowly as possible so that the exception is only available to those *plaintiffs against whom a defendant has specifically been convicted of criminal fraud*." 961 F.Supp. at 1076 (emphasis added). The court explained that the exception applied only to conduct that was "specifically" part of a conviction (either a jury finding or guilty plea), and that the only persons who could invoke the exception were "named victims" of that specific conduct. *Krear*, 961 F. Supp. at 1076-77. Even though the plaintiffs in that case—alleged victims of a securities fraud Ponzi scheme—were purported victims of the scheme and argued all of their claims were "in connection with" that scheme, the court held that they could not proceed with civil RICO claims because they had not been "named" by the government as specific victims of the defendant's offense of conviction. *Id.* at 1077. The court acknowledged that not even all "named victims" in an indictment could avail themselves of the exception because a defendant "could plead guilty to defrauding only certain plaintiffs as part of a plea agreement." *Id.*

Since *Krear,* several other courts have similarly restricted the exception to *plaintiffs against whom a defendant has specifically been convicted of criminal fraud. See Kaplan v. S.A.C. Capital Advisors, LP*, 104 F. Supp. 3d 384 (S.D.N.Y. 2015); *Gottdiener,* 2014 WL 1100133, at *7 (holding plaintiffs were precluded from bringing RICO claims even though they had bought the same securities that the defendants had been convicted of fraudulently selling); *Rogers v. Nacchio*, No. 05-60667-CIV., 2006 WL 7997562 (S.D. Fla. June 6, 2006).

In *Kaplan*, plaintiffs tried to rely on the indictment, the guilty plea, and the sentencing memorandum as evidence that plaintiffs were specifically defrauded. 104 F.

Supp. 3d at 389-90. But this court disagreed. First, the court stated the Plea Allocution, not the Indictment, determined the scope of conduct to which the defendants pleaded guilty. *Id.* While the Plea Allocution included the phrase "as alleged in the indictment" and the Indictment referenced the Wyeth and Elan trading frauds, the Plea Allocution did not specifically mention Wyeth, Elan or Martoma as victims. *Id.* With regard to sentencing, the fact that the trades in Elan and Wyeth accounted for the vast majority of defendants' financial penalty had no bearing on whether they were convicted with regard to those trades. *Id.*

Similarly, in *Rogers*, shareholders in Qwest communications sued various defendants who had been convicted of crimes in connection with the underlying securities fraud alleged by the plaintiffs. 2006 WL 7997562, at *4. Plaintiffs alleged a massive conspiracy that affected the value of Quest's securities and sued various individuals under RICO, including the former CFO of Qwest, who had been convicted of insider trading in Qwest shares. *Id.* The court applied *Krear* to the insider trading context, and held that shareholders in a public company could not maintain a RICO claim against the defendants because each defendant was "charged with crimes that have nothing to do with defrauding Plaintiff specifically." *Id.* There were "no allegations that Defendant Szeliga defrauded Plaintiffs," and because the criminal conviction exception must be construed "as narrowly as possible," the Court dismissed the civil RICO claim against Szeliga. *Id.*

### A.  Plaintiff is not a specific victim to Gilbertson's criminal conviction.

Like the plaintiffs in *Krear*, *Kaplan* and *Rogers*, Plaintiff does not fall within the narrow exception since the jury did not *specifically* and *directly* convict Gilbertson of

criminally defrauding Plaintiff, nor is Plaintiff a "specific" victim of Gilbertson's guilty conduct. In fact, Plaintiff does not even allege that he is a specific victim. Nor can he. In the verdict form, the jury was never asked to decide whether the scheme defrauded specific individual investors who bought stock during the five-year trading period.

In Gilbertson's criminal case, the Jury Instructions—not the Indictment or Sentencing Memorandum—determined the scope of the conduct and harm to which the jury found Gilbertson guilty. The instructions thus also determined which individuals were specific victims of the conduct. *See* Conners Aff. Ex. 2; Final Instructions, *USA v. Gilbertson*, No. 17-CR-0066 (D. Minn. June 22, 2018), ECF No. 214 (Instruction 14 states the "indictment is simply a formal method of accusing a defendant of an offense. It is not evidence of any kind against a defendant."); 18 U.S.C. § 3661; U.S.S.G. § 1B1.4 (a sentencing court may consider any information concerning the background, character and conduct of the defendant, including *uncharged or acquitted conduct*). The Jury Instructions narrowly tailored the alleged crime to the purportedly fraudulent activity during the 20-day period. The Jury Instructions do not mention or refer to shareholders or the "investing public,"[1] let alone Plaintiff specifically or any time period beyond the first 20-days of public trading. The Court instructed the jury:

> The central allegation of the government in this case—the allegation to which all of the charges relate—is that Mr. Gilbertson, aided and abetted by Mr. Hoskins, schemed to

---

[1] Plaintiff cherry picks three passing references to the "investing public" in the criminal complaint and the sentencing memorandum to claim Plaintiff was a victim of the fraud. The "investing public" or "investors" are mentioned once in the Superseding Indictment, *USA v. Gilbertson*, No. 17-CR-0066, ECF No. 133, and only mentioned twice in the government's initial sentencing brief and not mentioned in its Reply. *USA v. Gilbertson*, No. 17-CR-0066, ECF No. 284 at 4, 6. But none of these documents mention Plaintiff specifically, and neither passing reference constitutes evidence to support the inference that Gilbertson criminally defrauded Plaintiff.

> manipulate the price of Dakota Plains stock during the first
> 20 days of public trading following the reverse merger.

*Id.* at Instruction 33.

Because the jury did not even consider whether Gilbertson defrauded Plaintiff, it could not find Gilbertson guilty of any conduct involving or harming Plaintiff specifically. The trial record is void of any connection between Gilbertson and Plaintiff. The mere fact that Plaintiff purchased stock during the class period (10 months after the alleged scheme ended) is wholly insufficient to allege he was criminally defrauded to gain victim status. Gilbertson did not target Plaintiff; he did not speak with Plaintiff; he did not sell shares to Plaintiff during the 20-day period; and he Gilbertson did not receive any money from Plaintiff. Accordingly, even taking the allegations in the TAC as true, Plaintiff's RICO claim fails as a matter of law and should be dismissed.

### B.  The government's position on sentencing confirms Plaintiff is not an investor that was criminally defrauded, and thus is not a victim.

Even using the broadest possible definition of "victim," Plaintiff cannot satisfy the exception to the PSLRA bar. The Sentencing Guidelines define a victim as "any person who sustained any part of the actual loss," and actual loss turns on whether the person has suffered "reasonably foreseeable pecuniary harm" from the criminal act. U.S.S.G. §§ 2B1.1 Application Note 1, 3(A)(i). Victim status under the Sentencing Guidelines is thus not conscribed by the statutory basis for the conviction. *See United States v. Ebbers*, 458 F.3d 110, 126–27 (2d Cir. 2006) (including losses to investors in calculating the loss under U.S.S.G. § 2B1.1 for securities fraud). Similarly, under the Mandatory Victim Restitution Act, which provides that defendants shall pay restitution

to the victims of their crimes,[2] the term "victim" means "a person *directly and proximately harmed* as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C.A. § 3663A.

Plaintiff is thus not a victim even under the Sentencing Guidelines and MVRA's broad definitions. The government and Court never considered any specific Dakota Plains' shareholder's (including Plaintiff's) alleged losses in determining loss under the Sentencing Guidelines or for Gilbertson's restitution payments.[3] The Presentence Report ("PSR") calculated actual and intended loss based solely on the alleged loss to Dakota Plains as a result of the additional payment provision. In fact, the PSR did not recommend any victim-related adjustments in Gilbertson's offense level: "There are no

---

[2] The Crime Victims' Rights Act also affords crime victims numerous rights in federal criminal cases, such as the right to be treated "with respect for the victim's dignity," 18 U.S.C. § 3771(a)(8), and must be brought in the district where the defendant is being prosecuted for the crime or ... in the district where the crime occurred." *Hill v. New York Post,* No. 08–CV–5777 (PAC), 2010 WL 2985906, at *1 (S.D.N.Y. July 29, 210). Moreover, the CVRA defines a crime victim as "a person directly and proximately harmed as a result" of the offense 18 U.S.C. § 3771(e). *Mayfield v. British Bankers' Ass'n,* No. 14-CV-4735 LAP, 2014 WL 10449597, at *3 (S.D.N.Y. July 22, 2014).

[3] Restitution is designed to compensate *victims* for their actual losses, yet not one investor was included in this calculus. The government did not request, and the Court did not order, any restitution payments for investors because they weren't "criminally defrauded." *United States v. Jewett*, 978 F.2d 248 (6th Cir. 1992) (holding that restitution cannot be based on all losses caused by scheme to defraud, but was limited to losses caused by the two mailings for which defendant was convicted.) If the government thought investors were victims it would have included them in the restitution payment. *United States v. Archer,* 671 F.3d 149, 170 (2d Cir. 2011) (stating a district court's "statutory authority to award restitution under the MVRA is limited to awards to victims of the offense of conviction.").

official or vulnerable victims in this matter." Revised Presentence Investigation Report, *USA v. Gilbertson*, No. 17-CR-0066 (D. Minn. June 22, 2018), ECF No. 299 at 19. The government calculated the total restitution amount to be $15,310,361 ($1,992,674 in interest payments on the bonus notes + $13,142,687 in shares from the bonus payment + $175,000 in legal fees and expenses) to be paid to Dakota Plains. *USA v. Gilbertson*, No. 17-CR-0066, ECF No. 294 at 26. The government did not include any investor losses in the calculation and presented Dakota Plains as the sole victim.

If the government had concluded that shareholders were victims, it would have included them in the loss calculus for sentencing and restitution. For example, in *United States v. Dial*, 705 F. App'x 250 (5th Cir. 2017), the government established that the defendant harmed 317 specific victims and caused stock losses of $7,388,093.00, which the court ordered defendant to pay back in restitution. In *United States v. Ware*, 577 F.3d 442, 454 (2d Cir. 2009), the court applied a four-step adjustment due to the number of victims involved in the manipulation. The government offered evidence of 383 investors who bought shares of Service Systems or Investment Technology during the period of Ware's manipulation of the market for those shares. In *United States v. Georgiou*, 777 F.3d 125, 147 (3d Cir. 2015), the court upheld a six-level upward adjustment for 250 or more victims under U.S.S.G § 2B1.1(b)(2)(C). The jury found that the defendant participated in a "pump and dump" scheme with HYHY, and had paid for a mailer on the stock to be sent to seven million people, and the SEC witness identified 1,918 investor accounts that purchased the stock during the period of the scheme, each of which lost over $1,000. *Id.* In contrast, no specific investors were identified as victims here.

In fact, the government did not even attempt to prove (at trial or sentencing) that *Plaintiff* or *any* of the investors who purchased Dakota Plains' stock lost money *because of* Gilbertson's securities fraud conspiracy.[4] (Conners Aff. Ex. 1; Tr., Vol. 11, p. 2239-2240.)[5] During the government's closing argument, it retreated from its contention that $12 reflected an "inflated" price, emphasizing: "It is not necessary that the government prove that the alleged scheme actually succeeded and defrauded anyone" and "it doesn't matter" whether Mr. Gilbertson manipulated the stock price, as "[s]uccess is not an element." *Id.* For that reason, the government never proved actual price impact at trial. Likewise, the government offered no basis (at trial or sentencing) for the factfinder to infer that the decline in Dakota Plains' share price—and the alleged resulting loss suffered by Plaintiff and shareholders—was caused by Gilbertson's criminal fraud. Neither the guilty verdict nor Gilbertson's sentence established a causal link between the fraud and the decline of Dakota Plains' share price—and therefore failed to establish that investors were victims. *See, e.g., United States v. Rutkoske*, 506 F.3d 170, 179 (2d Cir. 2007) (stating there is "no reason why considerations relevant to loss causation in a civil fraud case should not apply, at least as strongly, to a sentencing

---

[4] During the charge conference prior to the verdict, Judge Schiltz said the evidence that Dakota Plains stock was artificially inflated "seems pretty thin to me." (Conners Aff. Ex. 1; Tr., Vol. 10, p. 2178.) And he acknowledged that Doug Hoskins' sales did not impact the price: "If you take your pen and you cross out Hoskins from that list of trades, it's hard to know what would have happened. And there was no expert that said what would have happened. . . . I think your attempt case is a lot better than your succeeded case." (Conners Aff. Ex. 1; Tr., Vol. 10, p. 2179.) Indeed, the government abandoned their claim that the stock was *actually* artificially inflated and focused solely on attempt during its closing argument.

[5] All citations to the Trial Transcript of the criminal trial held in the District of Minnesota in Case No. 17-CR-66 (PJS/HB) are cited to as "Tr." For ease of reference, we have only included excerpts of these voluminous transcripts as Exhibit 1.

regime in which the amount of loss caused by a fraud is a critical determinant of the length of a defendant's sentence."). Because Gilbertson was not convicted of criminally defrauding shareholder victims, and instead was found guilty of attempting market manipulation during a narrowly-tailored 20-day period, Plaintiff cannot use this conviction as the basis for a RICO action. *See Gottdiener*, 2014 WL 1100133, at *7 ("To hold otherwise could mean that anyone who purchased the five stocks named in Defendants' Informations during the relevant period for each security, together totaling more than five years, could bring a substantive RICO claim.").

In short, the government never took the position that Plaintiff or any shareholders were victims who were "directly or proximately harmed" by the fraud. No shareholder ever sought recognition as a "victim" under the Crime Victims' Rights Act, 18 U.S.C. § 3771, or the Mandatory Victim Restitution Act, 18 U.S.C.A. § 3663A. The court did not accord any shareholder victim status. The exception would swallow the rule if Plaintiff, who cannot show that he was *personally* criminally defrauded for which Gilbertson was convicted, could "nevertheless bootstrap a civil RICO claim" to this action. His claim should be dismissed as a matter of law.

### III.   Plaintiff's RICO claim cannot withstand the particular scrutiny imposed on fraud-based claims.

Even if Plaintiff was a victim who could pursue a RICO claim, his RICO allegations cannot withstand the exacting standards applied to fraud-based RICO claims on a motion to dismiss. This district has consistently treated civil RICO claims as "the litigation equivalent of a thermonuclear device," recognizing that "the mere assertion of a RICO claim" has "an almost inevitable stigmatizing effect on those named as defendants." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y.

13

1996); *see Gross v. Waywell*, 628 F.Supp.2d 475, 479–83 (S.D.N.Y. 2009) (conducting survey of civil RICO cases filed in the Southern District of New York from 2004 through 2007, and finding that all 36 cases resolved on the merits as of the date of the opinion resulted in judgments against the plaintiffs, 30 at the motion to dismiss stage).

Based on these principles, this Court recommends that judges act early in the litigation to "separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud." *Holmes v. Parade Place, LLC*, 2013 WL 5405541, at *14 (S.D.N.Y. Sept. 26, 2013); *see also Katzman*, 167 F.R.D. at 655 ("[C]ourts should strive to flush out frivolous RICO allegations at an early stage of the litigation."). As one court noted, the "allure of treble damages, attorney's fees, and federal jurisdiction present a powerful incentive for plaintiffs to attempt to fit garden variety fraud claims within the standard of civil RICO." *Holmes*, 2013 WL 5405541, at *14.

To establish a civil RICO claim, a plaintiff must show that: 1) a person violated the RICO statute (18 U.S.C. § 1962); 2) plaintiff suffered an injury to business or property; and 3) the injury was caused by the violation. *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001); *see* 18 U.S.C. § 1964(c). In turn, a violation of the RICO statute occurs when a person engages in: 1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity. *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 520 (2d Cir.1994). As discussed below, the Court should dismiss Plaintiff's RICO claim at this early stage because even taking the allegations in the TAC as true, Plaintiff does not satisfy these elements.

### A. Plaintiff cannot establish a "pattern of racketeering activity" because the alleged predicate acts lack sufficient continuity.

Plaintiff's RICO claim fails because the facts alleged in the TAC do not demonstrate that the purported enterprise engaged in predicate acts with sufficient continuity to establish a "pattern" of racketeering activity. The "pattern" element of a RICO claim requires a plaintiff to show that the alleged predicate acts both are "related, *and* that they amount to or pose a threat of *continued criminal activity.*" *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999). This required continuity can be either "closed-ended" or "open-ended." *Id.* Closed-ended continuity requires "past criminal conduct extending over a substantial period of time," while open-ended continuity requires "past criminal conduct coupled with the threat of future criminal conduct." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 487-88 (2d Cir. 2014). Plaintiff cannot establish either.

### 1. Plaintiff cannot establish "closed-ended continuity" because the alleged single-scheme had a narrow purpose, few participants and limited duration.

Plaintiff cannot establish that the purported Gilbertson enterprise engaged in a "pattern of racketeering activity" with closed-ended continuity. Closed-ended continuity requires predicate acts "extending over a substantial period of time" – generally over two years. *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004). In *Cofacrédit*, the Second Circuit commented that it "has never held a period of less than two years to constitute a 'substantial period of time'" sufficient to establish closed-ended continuity. 187 F.3d at 242. While the Second Circuit later clarified that two years is not a bright-line requirement, it acknowledged "it will be rare that conduct

persisting for a shorter period of time establishes closed-ended continuity." *Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 184 (2d Cir. 2008).

Even where the conduct does persist for two years, two years is not in of itself sufficient. Although continuity is "primarily a temporal concept, other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists." *DeFalco*, 244 F.3d at 321. Courts in this Circuit have "held repeatedly that allegations of RICO violations involving solely mail and wire fraud or little other variety in the predicate acts, a limited number of participants or victims[,]" and a "discrete scheme with a narrow purpose—as opposed to complex, multifaceted schemes" are "generally insufficient to demonstrate closed-ended continuity." *Gross*, 628 F. Supp. 2d at 494.

Actions that do not constitute predicate racketeering activity are not included in continuity calculation. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989) (continuity test looks to period during which predicate acts were committed); *GICC Capital Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 467 (2d Cir. 1995). The TAC is devoid of any criminal securities fraud or wire fraud allegations outside of the limited 20-day period beginning on March 22, 2012. The TAC alleges Gilbertson embarked on a discrete scheme with a narrow purpose to profit off of Dakota Plains and "enrich the members . . . using Dakota Plains cash and/or its common stock." (TAC ¶ 276.) The TAC alleges the scheme started when Gilbertson initially formed Dakota Plains and lasted over eight years. (TAC ¶ 2.) But Plaintiff's embellished allegations include common business decisions such as the allocation of founder's shares, the alleged non-disclosure of the founders' involvement in a private company, the issuance of notes and a dividend,

16

and the later consolidation of notes. (TAC ¶¶ 2-10.) These business decisions are not RICO predicate acts under the statute. *See Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, No. 12 CIV. 8205, 2013 WL 3943267, at *9 (S.D.N.Y. July 31, 2013) (breach of contract claims and common business torts "cannot be transmogrified into a RICO claim by the facile device of charging that the breach was fraudulent, indeed criminal.").

One need look no further than the government's own words at Gilbertson's criminal trial to confirm the non-criminal nature of Gilbertson's actions before the 20-day period. In both its opening and closing arguments, the government explained that Gilbertson's actions before the 20-day period *did not amount to criminal conduct*, but rather were relevant only to motive. In its opening argument, after describing the negotiations, the government stated: "I want to stop for a minute and make one thing clear. None of the financial transactions that I've been describing up to this point is by itself against the law. It's not a crime to be sharp elbowed in business or to negotiate financial transactions for your own benefit. What is illegal is stock manipulation." (Conners Aff. Ex. 1; Tr., Vol. 2, p. 25). Likewise, in its closing argument, the government told the jury: "Now, to be clear, none of this was illegal. That's not the point. The reason we're here today, the reason we're talking about it, *is not because the* [*bonus provision*] *was illegal.* . . . What matters is that the note consolidation, this [bonus provision], it provided the motive to manipulate the price of the stock." (Conners Aff. Ex. 1; Tr., Vol. 11, p. 2228) (emphasis added).

March 22, 2012 is the start of relevant time period—the day Dakota Plains consummated the reverse merger. (TAC ¶ 10.) *See Cofacredit*, 187 F.3d at 242. (stating the relevant period is the time during which RICO predicate activity occurred, not the time during which the underlying scheme operated or the underlying dispute took

17

place). And the TAC alleges that Gilbertson set out to manipulate the stock in the first 20-days of its public trading because, under the terms of the APP, only the first 20-days of publicly trading influenced the bonus provision. (TAC ¶ 12.) The TAC alleges the second predicate act—mail fraud—only occurred during the 20-day period as well. (TAC ¶¶ 140-144.) Twenty days is simply far too short to be sufficient to show continuity.

Plaintiff's attempt to include Gilbertson's passive insider sales and alleged short-sales in calculating the length of the pattern of activity is without merit because the government did not charge, and the jury did not convict Gilbertson of insider trading. These predicate acts are thus barred under 18 U.S.C. § 1964(c)'s prohibition against security fraud claims.

The TAC alleges no more than a "discrete scheme with a narrow purpose." *Gross*, 628 F. Supp. 2d at 494. Plaintiff claims Gilbertson orchestrated a single scheme to profit off of Dakota Plains' stock, comprised of a series of fraudulent acts for the single purpose to impact the stock price. The limited temporal period of the acts plus the limited scope of the discrete scheme—just two predicate acts, and the limited number of both participants and victims (just Dakota Plains), all cut against the existence of closed-ended continuity. *See Ornest v. Delaware N. Cos.,* 818 F.2d 651, 652 (8th Cir. 1987) (holding single scheme over eight years to defraud plaintiffs of sales commissions was not sufficient to allege the necessary "pattern" of racketeering activity); *Madden v. Gluck,* 815 F.2d 1163, 1164 (8th Cir. 1987) (holding defendant engaged in a vast array of fraudulent activities in pursuit of a single goal to keep a company afloat in order to loot it lacked sufficient continuity to form a pattern of racketeering activity). Plaintiff places a real strain on language to speak of a single fraudulent effort, implemented by a few acts, as a "pattern."

### 2. Plaintiff cannot establish "open-ended continuity" because the alleged scheme was inherently terminable.

To demonstrate open-ended continuity, a plaintiff "must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit,* 187 F.3d at 242-243. "The nature of the RICO enterprise and of the predicate acts are relevant" in determining whether open-ended continuity exits. *Id.* A threat of continued criminal activity is presumed when the alleged acts are "inherently unlawful," such as murder, and were done in pursuit of "inherently unlawful goals," such as narcotics trafficking. *United States v. Aulincino*, 44 F.3d 1102, 1111 (2d Cir. 1995); *Albunio v. Int'l Safety Grp., Inc.*, No. 15-CV-152 (VEC), 2016 WL 1267795, at *7 (S.D.N.Y. Mar. 30, 2016).

When the "nature of conduct or the enterprise does not by itself suggest that the racketeering acts will continue," the courts look at "other external factors[,]" such as whether the scheme is "inherently terminable." *GICC Capital,* 67 F.3d 467. The Second Circuit long has held that an "inherently terminable" fraudulent scheme does not provide a threat of continued criminal activity, and thus cannot satisfy the test for open-ended continuity. *See Spool*, 520 F.3d at 185-86 (holding scheme to process files stolen from former employer was "inherently terminable" since defendants would have no more files to work with once all were processed); *Cofacredit*, 187 F.3d at 244 (holding insurance fraud scheme necessarily would conclude when defendants reached the policy's limits); *GICC Capital*, 67 F.3d at 466 (holding scheme to loot corporate assets was "inherently terminable" since it "defies logic to suggest that a threat of continued looting activity exists when there is nothing left to loot").

This is not a case of "open-ended" continuity. First, the conduct alleged in the TAC does not fall within the "inherently unlawful" category because "fraud (the object of which is by definition to obtain money or property from others) has been held not to be 'inherently unlawful' in the RICO continuity context." *Int'l Bhd. of Teamsters v. Carey,* 297 F.Supp.2d 706, 715 (S.D.N.Y. 2004); *see also Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.,* 665 F.Supp.2d 239, 261 (S.D.N.Y. 2009) ("[F]raud is not inherently unlawful in the RICO context." (internal quotation marks omitted)).

Second, the TAC alleges only "a serious, but discrete and relatively short-lived scheme to defraud a handful of victims," which is insufficient to establish open-ended continuity. *Cofacredit,* 187 F.3d at 244. All of Plaintiff's allegations revolve around Gilbertson's purported scheme to inflate and profit off of Dakota Plains stock. The enterprise's only alleged scheme was "inherently terminable" because the stock manipulation scheme lasted only 20-days and Gilbertson did not pose any threat of continued insider trading after he sold all of his Dakota Plains stock on December 31, 2014. Plaintiff's failure to plead a true "pattern" of related but distinct schemes of fraud is fatal to his RICO claim.

### B. Plaintiff has not pled that the "Gilbertson Enterprise" was separate from the alleged pattern of racketeering activity.

Plaintiff's allegation that an "association-in-fact" enterprise existed among the RICO members is a threadbare legal conclusion that fails for lack of particularity. Plaintiff does not plead that the purported Gilbertson enterprise was separate from the alleged pattern of racketeering activity, warranting dismissal. This type of RICO enterprise must have at least three structural features: 1) a purpose, 2) relationships among those associated with the enterprise, and 3) longevity sufficient to permit these

associates to pursue the enterprise's purpose. *Boyle v. United States*, 556 U.S. 938, 946, 948 (2009). As the Supreme Court stated in *United States v. Turkette*, 452 U.S. 576 (1981), "[t]he enterprise is not the "'pattern of racketeering'; it is an entity separate and apart from the pattern of activity in which it engages." 452 U.S. at 583.

Even when the plaintiff is alleging an "association-in-fact" enterprise, the enterprise must have a distinct identity from the RICO person and consist of more than one member. *See Rosenson v. Mordowitz*, No. 11 CIV. 6145 JPO, 2012 WL 3631308, at *9–10 (S.D.N.Y. Aug. 23, 2012). "[F]or an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." *First Capital Asset Mgmt.,* 385 F.3d at 174; *see also Boyle v. United States*, 556 U.S. 938, 946, 948 (2009). RICO "is not violated every time two or more individuals commit one of the predicate crimes listed in the statute," and without some sort of structural requirement, "any two thieves in cahoots would constitute an association-in-fact." *D. Penguin Bros., Ltd. v. City Nat'l Bank*, 587 F. App'x 663, 669 (2d Cir. 2014).

Here, Plaintiff wholly fails to allege that the Defendants operated symbiotically and played necessary roles in the achievement of a common purpose, falling well short of supporting a plausible inference that an association-in-fact enterprise existed. In the TAC, Plaintiff merely strings together a list of roughly 15 individuals and entities that included Dakota Plains, Reger, Howells, Hoskins, Claypool, and Shermeta, and labels them an enterprise. But this is insufficient to state a RICO claim since there is no allegation the members operated as a continuing unit.

Indeed, the TAC pleads the opposite of an enterprise: for many of the alleged "members" of the putative enterprise, Plaintiff repeatedly alleges a lack of knowledge or

involvement. *See, e.g.*, TAC ¶ 53 (Weldon Gilbertson was named director but "he never had any substantive input into the company"); TAC ¶ 64 ("Jessica Gilbertson testified to the SEC that she was unaware of these transactions and that Ryan handled 'most of that.'"); TAC ¶ 77 ("Randy did not recall any of the consulting contracts he purportedly signed . . . nor did he remember approving the 2011 dividend."). In fact, the allegations repeatedly state that the officers and directors took no action in the stock manipulation scheme. TAC ¶¶ 92, 93, 96, 99, 102, 104, 105, 107 (alleging Officer and Directors at best most were "aware of and/or recklessly disregarded the stock manipulation scheme."). The TAC's factual allegations demonstrate that these alleged members did not knowingly participate in or conduct an illegal enterprise. S*ee Gross*, 628 F. Supp. 2d at 499; *D. Penguin Bros*, 587 F. App'x at 668 (denying RICO claim where allegations "create no plausible inference that [defendants acted] to advance the political agenda of their purported 'enterprise' or for any shared purpose").

An enterprise must be more than a list of alleged participants. Other than a few vague and conclusory allegations and references to the defendants as the group, Plaintiff does not plead any facts demonstrating how Gilbertson and these individuals were, in fact, associated with an "enterprise" and how the defendants functioned as a continuing unit. Plaintiff's failure to allege that Gilbertson's enterprise worked together to achieve such purposes is fatal to his assertion that these defendants formed an association-in-fact RICO enterprise. Plaintiff's putative civil RICO claim is "nothing more than sheep masquerading in wolves' clothing." *W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*, No. 03 CIV. 8606RWS, 2004 WL 2187069, at *5 (S.D.N.Y. Sept. 29, 2004). It should be dismissed.

**IV.     Taking Plaintiffs' allegations as true, Gilbertson did not engage
in insider trading.**

Plaintiff's allegations do not give rise to a plausible inference that Gilbertson
engaged in insider trading. Section 20A of the Exchange Act "creates a private right of
action to enforce the existing prohibition on insider trading under § 10(b) caselaw, and
does not create a new definition of insider trading." *DeMarco v. Robertson Stephens
Inc.*, 318 F. Supp. 2d 110, 126 (S.D.N.Y. 2004). Because insider trading is a "species of
fraud, the facts comprising the fraud must be pleaded with particularity." *S.E.C. v.
Conradt*, 947 F. Supp. 2d 406, 407 (S.D.N.Y. 2013). In order to state a Section 20A
claim, a plaintiff must allege 1) that the defendant committed an insider trading
violation of the Exchange Act; 2) that the defendant and the plaintiff traded the security
at issue contemporaneously; and 3) that the defendant was "in possession of material,
nonpublic information' at the time of the trade." *In re Openwave Systems Securities
Litigation*, 528 F. Supp. 2d 236, 255 (S.D.N.Y. 2007) (citing *Jackson v. Nat'l Life Ins.
Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 703 (2d Cir. 1994)).

This Court has already dismissed Plaintiff's Section 20A claim against Gilbertson
because Plaintiff did not sufficiently plead contemporaneous trading. Plaintiff's second
attempt still misses the mark. Plaintiff alleges he traded the same day as Gilbertson on
just three days (April 1, 2013; April 11, 2013; and December 11, 2013) during the class
period of over four years. This is not sufficient to plead contemporaneous trading.
Plaintiff also makes no allegation indicating that either the timing or the size of
Gilbertson's stock sales was unusual relative to his historical trading practices. As a
result, Plaintiff fails to adequately plead that he contemporaneously traded with
Gilbertson during a period in which he possessed inside information. *Pirelli Armstrong*

*Tire Corp. Retiree Med. Benefits Tr. v. Lundgren*, 579 F. Supp. 2d 520, 535 (S.D.N.Y. 2008). For that reason, Count III fails to state a claim and must be dismissed.

## CONCLUSION

Congress and the courts have made it clear that victims must be *specifically* identified in a plea agreement or jury instructions to overcome the formidable bar imposed for pleading treble damages. Yet Plaintiff attempts to profit from Gilbertson's conviction, even though it was narrowly tailored to the first 20 days of trading. This is wholly insufficient. Gilbertson was not found guilty of criminally defrauding Plaintiff. Indeed, no shareholder or investor (including Plaintiff) was specifically identified as a victim in the criminal case.

Even if he could rely on the narrow conviction exception to bring a RICO claim, Plaintiff cannot establish a pattern of racketeering because the alleged single scheme had a narrow purpose, few participants, and limited duration of 20 days. Nor has Plaintiff adequately pled an association-in-fact enterprise distinct from the identified RICO persons.  Finally, Plaintiff has not sufficiently pled facts sufficient to bring an insider trading claim under Section 20A.

For these reasons, the Court should dismiss Plaintiff's Third Amended Complaint civil RICO and Section 20A claims against Ryan Gilbertson.

Dated: April 5, 2019                    **BEST & FLANAGAN LLP**


By: *s/ Amy S. Conners*      .
   Amy S. Conners (SBN 4226148)
   John A. Sullivan
   (admitted *pro hac vice*)
   60 South Sixth Street, Suite 2700
   Minneapolis, Minnesota 55402
   Phone:  (612) 339-7121

*Attorneys for Defendant Ryan Gilbertson*