UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JON D. GRUBER, Individually And On Behalf Of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>RYAN R. GILBERTSON; MICHAEL L. REGER; GABRIEL G. CLAYPOOL; CRAIG M. MCKENZIE; TIMOTHY R. BRADY; TERRY H. RUST; PAUL M. COWNIE; DAVID J. FELLON; GARY L. ALVORD; JAMES L. THORNTON; JAMES RANDALL REGER; JOSEPH CLARK REGER, Individually And As A Custodian for W.J.R. And J.M.R. (UTMA); WELDON W. GILBERTSON, Individually And As Custodian for H.G. (UTMA), and as Trustee of the RYAN GILBERTSON 2012 FAMILY IRREVOCABLE TRUST; THE TOTAL DEPTH FOUNDATION; JESSICA C. GILBERTSON (a/k/a Jessica Medlin); and KELLIE TASTO, As Custodian for H.G. (UTMA),<br><br>    Defendants. | Case No. 16-cv-09727-WHP |

**DEFENDANT MICHAEL L. REGER'S MEMORANDUM
IN SUPPORT OF HIS MOTION TO DISMISS AND MOTION TO STRIKE**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................2

ARGUMENT ...........................................................................................................................4

    I.      Plaintiff Cannot State a Section 20A Claim Against Reger. ...................................4

    II.     The Court Should Strike from the TAC Immaterial, Impertinent, and Scandalous Allegations Regarding Purported Conduct at Other Companies.................................................................................................................6

CONCLUSION........................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aimis Art Corp. v. N. Tr. Secs.*,
   641 F. Supp. 2d 314 (S.D.N.Y. 2009)..........................................................................................4

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)....................................................................................................................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................................................4

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   40 F. Supp. 3d 332 (S.D.N.Y. 2014)..........................................................................................5

*Ledford v. Rapid-Am. Corp.*,
   No. 86 Civ. 9116 (JFK), 1988 U.S. Dist. LEXIS 79 (S.D.N.Y. Jan. 8, 1988) ..........................7

*Lewis v. Town of Waterford*,
   239 F.R.D. 57 (D. Conn. 2006)...............................................................................................7, 9

*Lipsky v. Commonwealth United Corp.*,
   551 F.2d 887 (2d Cir. 1976)...............................................................................................6, 7, 8

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014)..........................................................................................4

*In re Merrill Lynch & Co., Research Reports Sec. Litig.*,
   218 F.R.D. 76 (S.D.N.Y. 2003) ..........................................................................................6, 7, 8

*In re Platinum & Palladium Commodities Litig.*,
   828 F. Supp. 2d 588 (S.D.N.Y. 2011)................................................................................6, 7, 8

*Prezzi v. Berzak*,
   57 F.R.D. 149 (S.D.N.Y. 1972) .................................................................................................6

*Rodriguez v. Modern Handling Equip. of NJ, Inc.*,
   604 F. Supp. 2d 612 (S.D.N.Y. 2009).........................................................................................9

*Shahzad v. H.J. Meyers & Co.*,
   95 Civ. 6196 (DAB), 1997 U.S. Dist. LEXIS 1128 (S.D.N.Y. Feb. 4, 1997)...........................7

*Simpson v. Wayne Cty.*,
   No. 13-cv-359-SMY-SCW, 2014 U.S. Dist. LEXIS 164036 (S.D. Ill. Nov. 24,
   2014) .........................................................................................................................................7

*In re Take-Two Interactive Sec. Litig.*,
 551 F. Supp. 2d 247 (S.D.N.Y. 2008)..................................................................................4

**Statutes**

15 U.S.C. § 78t-1(b)(1)..................................................................................................................4

15 U.S.C. § 78t-1(b)(2)..................................................................................................................4

15 U.S.C. § 78t-1(b)(4)..................................................................................................................5

15 U.S.C. § 78u(d).........................................................................................................................4

**Other Authorities**

*In re Matter of Michael L. Reger,*
 Securities Act Release No. 10241 (Oct. 31, 2016) ..............................................................5

Fed R. Civ. P. 8.............................................................................................................................6

17 C.F.R. 240.10b-5..................................................................................................................1, 4

Fed. R. Civ. P. 12(b)(6)..............................................................................................................2, 4

Fed. R. Civ. P. 12(f)................................................................................................................2, 6, 9

**INTRODUCTION**

This case began as a typical securities fraud class action: the claim initially was based on alleged material misrepresentations and omissions that, once publicly revealed, led to a drop in share price, and the damages sought were measured by that price drop. With the filing of the Third Amended Class Action Complaint ("TAC"), however, Plaintiff has made a fundamental pivot. Amidst the rambling, speculative, accusatory, and circuitous invective that gives the document most of its bulk, Plaintiff now contends: the claims arise solely from omissions; the company was from its outset a sham, unmarketable at any price had the omitted truth been known; and the damages should be measured not by the drop in price when the omitted truth was revealed to the market but by the entire amount the class paid for shares.

Plaintiff's pivot reflects a dramatic shift in theory, a shift that founders on the facts and the law with respect to liability and damages both. At the appropriate time, Reger will demonstrate that the claims under Section 10(b) and Rule 10b-5 against him fail as a matter of law. Given the Court's ruling on his initial motion to dismiss, Dkt. No. 119, Reger reserves that challenge for a later summary judgment motion. Suffice it for now to say that, among other things, loss causation is lacking because the truth Plaintiff now contends was hidden—that Dakota Plains was a sham, created solely as a piggybank for its founders—has never been revealed to the market and, in any event, is demonstrably untrue, and the damages theory Plaintiff now espouses has never been applied in such a case.[1]

---

[1] At the appropriate time, Reger will prove Dakota Plains was a real company with real operations and revenues, which failed not because of any securities fraud but because it overbuilt just as oil prices collapsed. Reger will also prove that his early involvement with Dakota Plains as a founder (which was well known to investors) diminished over time until by 2012 his involvement was minimal, that Reger did not manipulate the company's share price, that Reger and his family continued to hold most of their shares in the company until they became worthless in the bankruptcy, that Reger fully cooperated in the ensuing government investigations and

Dismissal under Rule 12(b)(6) is appropriate now, however, with respect to the newly added Section 20A claim against Reger for alleged insider trading. On its face, the TAC does not state a claim against Reger because, even if the other elements of the claim are assumed to have been met, he has already fully disgorged his gains from the challenged sales. Under the statute, then, neither Plaintiff nor the purported class has any right to damages. The Court accordingly should dismiss Count III.

Reger also moves under Rule 12(f) for an order striking several paragraphs from the TAC that accuse him, in the most cursory, drive-by fashion, of "securities fraud" at other companies. Those allegations are unrelated to Dakota Plains, unnecessary to state any of the claims alleged against him, and unfounded. They do not even pretend to meet the pleading requirements of the PSLRA and are based solely on unsupported speculation and inadmissible hearsay. Motions pursuant to Rule 12(f) are, as a general rule, disfavored, but courts in this Circuit have not hesitated to strike such obviously inappropriate allegations. The Court should do so here.

## BACKGROUND

On January 2, 2019, Plaintiff requested leave to file the TAC, in which he proposed adding a Section 20A claim against Reger and joining new defendants (including Reger's father and brother). Dkt. 150. The Court granted Plaintiff's request, Dkt. 158; Plaintiff filed the TAC on March 8, 2019, Dkt. 175; and a Rule 12 briefing schedule was set, Dkt. 179. The 158-page TAC contains four causes of action and myriad allegations, some of which were the subject of Defendants' previous motion to dismiss for failure to state a claim. *See* Dkts. 101-102, 114, 115, 119.

---

settled with the SEC without any finding he engaged in fraud, and that Reger remains a well-respected businessman in the oil industry and presently serves as an officer of a public company.

Relying on trading histories obtained from the SEC, the newly added Count III alleges Reger was in possession of material, non-public information about Dakota Plains when he sold 549,144 shares of Dakota Plains between February 5, 2013 and December 8, 2014 for total proceeds of $2,057,816. TAC ¶¶ 74-75; 268-69. Plaintiff seeks to have Reger "disgorge [his] profits and/or ill-gotten gains as a result of [his] contemporaneous trading with Lead Plaintiff and the members of the Subclass." *Id.* ¶¶ 272. Plaintiff also alleges, however, that Reger has already disgorged $6.5 million to the SEC "with respect to his role in the scheme underlying this action." *Id.* ¶¶ 74-75.

The TAC also adds allegations, apparently derived from documents Plaintiff obtained from the SEC, that Reger "conducted a brazen, massive and complicated securities fraud scheme," TAC ¶ 2, at companies other than Dakota Plains, including Northern Oil & Gas, Inc. ("Northern Oil"), at which he is currently an officer, and Voyager Oil & Gas, Inc. ("Voyager"), a company for which his brother was an officer. *Id.* ¶10 ("[T]wo other Gilbertson and Reger businesses that exhibit the same pattern of hidden ownership and stock sales, [Northern Oil] and Voyager"); ¶ 32 ("Both these companies exhibited similar patterns of fraud by Gilbertson and Reger . . . including Gilbertson and Reger hiding their control through nominees and hidden stock manipulation"); ¶ 49 ("[P]revious pattern of securities fraud . . . insufficiency of disclosures . . . highlighted how Gilbertson and Reger used Shermeta also to manipulate the price of NOG stock"); ¶ 178 ("[M]anipulating stock prices on behalf of Michael Reger in order to ensure windfalls to Mr. Reger from the companies Mr. Reger owns or controls . . . Gilbertson's and Reger's massive securities fraud at Dakota Plains was part of a pattern of securities fraud they had been conducting at their other companies"). These allegations are not grounded in

admissible evidence. Instead, Plaintiff bases them on inadmissible investigative documents and speculative hearsay correspondence from biased sources.

## ARGUMENT

### I. PLAINTIFF CANNOT STATE A SECTION 20A CLAIM AGAINST REGER.

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 570 (S.D.N.Y. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); Fed. R. Civ. Proc. 12(b)(6). Where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," the complaint must be dismissed as a matter of law. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Among the elements a claim must assert is damages; when a complaint shows from its face that there are no recoverable damages, the claim is properly dismissed. *See, e.g.*, *Aimis Art Corp. v. N. Tr. Secs.*, 641 F. Supp. 2d 314, 319 (S.D.N.Y. 2009).

To "state a claim under Section 20A, plaintiffs must: "(1) plead a predicate insider trading violation of the Exchange Act, and (2) allege sufficient facts showing that the defendant traded the security at issue contemporaneously with the plaintiff." *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 309 (S.D.N.Y. 2008) (citations and quotation marks omitted). Of course, Plaintiff must also adequately allege he was damaged by virtue of Reger's alleged insider trading. S*ee* 15 U.S.C. § 78t-1(b)(1). The statute, however, directs that any damages Plaintiff incurred "shall be diminished by the amounts, if any, that such person may be required to disgorge, pursuant to a court order obtained at the instance of the Commission, in a proceeding brought under section 21(d) of this title [15 U.S.C. § 78u(d)] relating to the same transaction or transactions." *Id.* § 78t-1(b)(2).

Here, the TAC alleges the elements of Section 20A (albeit with losses that appear to be entirely duplicative of those alleged in connection with the Section 10(b) and Rule 10b-5

4

claims), but also concedes Reger was required to disgorge $6.5 million "with respect to his role in the scheme underlying this action." TAC ¶ 74 (citing *In re Matter of Michael L. Reger*, Securities Act Release No. 10241 (Oct. 31, 2016)). The disgorgement is more than three times the proceeds the TAC contends Reger received from his sale of 549,144 shares of Dakota Plains stock. *Id.* ¶ 75; *see also id.*, Exhibit A at 20.[2] As a result, no class member could conceivably recover under Section 20A because Reger already disgorged to the SEC far more than the approximately $2 million in proceeds he received for the sales made during the putative class period. *See* 15 U.S.C. § 78t-1(b)(4).

Although another court in this District declined to dismiss a Section 20A claim because the defendant had paid disgorgement to the SEC, *Kaplan v. S.A.C. Capital Advisors, L.P.*, 40 F. Supp. 3d 332 (S.D.N.Y. 2014), the circumstances in this case are materially different and do require dismissal. In *Kaplan*, the court noted the alleged damages amount was merely an estimate that might well change with further information obtained in discovery. *Id.* at 339. Here, Plaintiff has already obtained the SEC's blue sheets that detail the precise number of shares sold and the precise proceeds from those sales. The allegations accordingly are not mere estimates, subject to change—they are exact and immutable: Reger sold 549,144 shares for proceeds of $2,057,816. *See* Dkt. 150 at 2 ("recently" obtained documents produced by the SEC provide "the specific details needed to establish contemporaneous insider sales by defendants Gilbertson and Reger"). In other words, though Reger's actual proceeds may conceivably shrink

---

[2] Plaintiff plainly alleges that Reger received $2 million in proceeds from sales of Dakota Plains shares. TAC ¶ 75. But, should Plaintiff further revise his allegation to contend Reger is responsible for sales in the Joseph Reger custodial accounts or his father's account, then neither Randy nor Joseph Reger could be held liable and claims against them should be dismissed. If Plaintiff contends Joseph and Randy are responsible for those sales, as Count III currently alleges, then the disgorgement completely moots the Section 20A claim against Reger, and it should be dismissed. Plaintiff cannot have it both ways.

5

if discovery reveals Reger paid for the shares he sold or putative class members had gains that offset their loss from any alleged insider trading, $2,057,816 is the ceiling on Plaintiff's Section 20A damages theory against Reger.

In sum, based on full and complete information, Plaintiff has already identified his maximum damages recoverable, and the uncontested disgorgement amount dramatically exceeds that amount. As a result, neither he nor any member of the purported class can recover any damages from Reger for the alleged insider trading. The Court accordingly should dismiss the Section 20A claim as against Reger.

## II. THE COURT SHOULD STRIKE FROM THE TAC IMMATERIAL, IMPERTINENT, AND SCANDALOUS ALLEGATIONS REGARDING PURPORTED CONDUCT AT OTHER COMPANIES.

Rule 12(f) empowers the Court to strike discrete allegations from the TAC that are "immaterial, impertinent, or scandalous."[3] Although such motions are not favored, they nevertheless are appropriate when allegations are obviously based on inadmissible evidence. *See, e.g.*, *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 593-94 (S.D.N.Y. 2011); *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (motion should be granted where "it can be shown that no evidence in support of the allegation would be admissible"). This is particularly so when the allegations reference "preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact," which are, as a matter of law, immaterial under Rule 12(f) and appropriately stricken at the motion to dismiss stage. *In re Merrill Lynch & Co.,*

---

[3] Striking baseless allegations also comports with the pleading requirements of Rule 8, under which dismissal is appropriate because "[c]omplaints which ramble, which needlessly speculate, accuse, and condemn, and which contain circuitous diatribes far removed from the heart of the claim, do not comport with these goals and this system." *See Prezzi v. Berzak*, 57 F.R.D. 149, 151 (S.D.N.Y. 1972).

*Research Reports Sec. Litig.*, 218 F.R.D. 76, 78-79 (S.D.N.Y. 2003); *see also Lipsky*, 551 F.2d at 893.

Courts have stricken allegations based on investigative documents from the SEC and other agencies. *Lipsky*, 551 F.2d at 893 (striking allegations from an SEC complaint); *In re Platinum*, 828 F. Supp. 2d at 593-94 (striking references to Commodity Futures Trading Commission ("CFTC") findings); *In re Merrill Lynch*, 218 F.R.D. at 78-79 (striking references to allegations from SEC and NASD complaints); *Shahzad v. H.J. Meyers & Co.*, 95 Civ. 6196 (DAB), 1997 U.S. Dist. LEXIS 1128, at *40-42 (S.D.N.Y. Feb. 4, 1997) (striking references to consent judgments with various federal and state entities); *Ledford v. Rapid-Am. Corp.*, No. 86 Civ. 9116 (JFK), 1988 U.S. Dist. LEXIS 79, at *2-3 (S.D.N.Y. Jan. 8, 1988) (striking references to state agency report).[4]

Here, Plaintiff makes immaterial, impertinent, and scandalous allegations—none of which is necessary for his claims against Reger related to Dakota Plains—speculating about activity at other companies Reger had a hand in founding, including Northern Oil and Voyager. *See* TAC ¶¶ 10, 32, 49, 178. The TAC expressly bases these allegations solely on two letters obtained in discovery: one sent by Dakota Plains to the SEC, in the midst of a proxy contest in which the company inaccurately considered itself to be fighting against Reger, and another from counsel for two shareholders accusing Reger of wrongfully profiting from his ownership interest in Dakota Plains. TAC ¶¶ 49, 178. Each letter accuses Reger (and Gilbertson), in the broadest of terms, of wrongdoing at Northern Oil and Voyager allegedly similar to what occurred at

---

[4] Courts likewise have stricken allegations on summary judgment based solely on, or referencing, inadmissible hearsay evidence. *See Lewis v. Town of Waterford*, 239 F.R.D. 57, 60 (D. Conn. 2006) (striking paragraphs relying on out-of-court statements not subject to any hearsay exception); *Simpson v. Wayne Cty.*, No. 13-cv-359-SMY-SCW, 2014 U.S. Dist. LEXIS 164036, at *9 (S.D. Ill. Nov. 24, 2014) (striking paragraphs as "speculative and/or hearsay").

Dakota Plains.  As a matter of law, both letters constitute "preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits," and they are otherwise speculative hearsay that have little hope of ever being admitted into evidence.  The Court should strike the allegations based on them.

*First*, both letters cite to—and mischaracterize—SEC and FINRA investigative documents, which this Circuit has long held are inadmissible evidence on which well-pleaded allegations cannot be based.  *See, e.g.*, *Lipsky*, 551 F.2d at 893; *In re Merrill Lynch*, 218 F.R.D. at 78-79; *In re Platinum*, 828 F. Supp. 2d at 591-93.  For instance, the letter from complaining shareholders' counsel cites extensively to Mr. Shermeta's settlement with FINRA, and the Dakota Plains letter bases contentions on an SEC subpoena and SEC comment letters.  Moreover, the Dakota Plains letter was sent to assist the SEC with its investigation.  Like the court in *In re Platinum*, this Court should reject Plaintiff's efforts to base its allegations upon "references to preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits."  828 F. Supp. 2d at 593 (citation and internal quotation marks omitted).  Plaintiff cannot "simply recast" the SEC's findings and investigation, and must instead base his allegations upon admissible evidence.  *Id.* at 514.

*Second*, the letters amount to nothing more than clear speculation and hearsay within hearsay from biased parties.  For instance, the letter from the shareholders includes such speculative statements as:

- "My client was told by Mr. Shermeta's coworker . . . ."
- "Michael Reger, Ryan Gilbertson, and James Sankovitz may have also entered into similar promissory notes . . ."
- "Mr. Maurer has heard from multiple sources that Gilbertson and Reger created entities that they used to divert shares of the various companies they own and control, including NOG."

8

- "Mr. Maurer has repeatedly asked a number of people associated with [Dakota Plaints] why Whitaker Sr. resigned, but everyone has refused to comment."

- "Mr. Maurer has been told that Mike Reger had difficulties with some people after he put stock into their names."

Similarly, the Dakota Plains letter includes language like "it is almost certain," "[i]t appears that," "which was likely due to the fact," "appear to be," "may have been," "we suspect," "have likely sold," and "almost certainly." The Dakota Plains letter also relies upon hearsay (and hearsay within hearsay) to allege that many conversations occurred, including allegations of such attenuated conversations like one where "Mr. Eberwein told Chairman McKenzie that Mr. Reger and Mr. Gilbertson approached Mr. Eberwein and encouraged him to invest in the Company."

Both letters clearly contain hearsay with hearsay, and Plaintiff obviously relies upon the letters for the truth of their statements. Neither is an admission against interest by Reger. For instance, the letter is replete with references to conversations by Mr. McKenzie, Mr. Eberwein, and others. These statements are not made by parties, not business records, and not otherwise admissible. *See Rodriguez v. Modern Handling Equip. of NJ, Inc.*, 604 F. Supp. 2d 612, 623 (S.D.N.Y. 2009) (finding an incident report that qualified as a business record inadmissible because it was "based entirely on the statements of non-parties [] interviewed in [the] investigation," and that while the report may have been prepared "in the regular course of business, [the preparer] d[id] not have personal knowledge of the information contained in the report, which is now being offered for its truth"). Likewise, the letter by prospective plaintiffs' counsel contains many unsupported and speculative hearsay statements by Mr. Maurer and other, unidentified, speakers. Simply put, such speculation and reliance upon multiple levels of hearsay cannot provide the basis for a well-pleaded complaint. The affected allegations should therefore be stricken under Rule 12(f). *See Lewis*, 239 F.R.D. at 60-62.

If the Court does not act now to strike these allegations, the TAC's casual, and scattershot, accusations have the potential to do lasting damage not merely to Reger's reputation but also to Northern Oil, a widely held public company that has no connection to Dakota Plains. It also seems more than a bit inappropriate to cast such serious aspersions when neither the SEC nor the DOJ, which each had all the evidence Plaintiff now has, saw fit to allege that Reger engaged in securities fraud (at Dakota Plains or either of Northern or Voyager).[5]

## CONCLUSION

For the foregoing reasons, Reger respectfully requests that the Court dismiss Count III of the TAC as it relates to him and strike paragraphs 10, 32, 49, and 178 from the TAC.

Dated:  April 5, 2019                       DORSEY & WHITNEY LLP

By: /s/ James K. Langdon
James K. Langdon
(admitted *pro hac vice*)
Michael E. Rowe III
(admitted *pro hac vice*)
50 South 6th St #1500
Minneapolis, Minnesota 55402
Telephone: (612) 340-2600
langdon.jim@dorsey.com
rowe.michael@dorsey.com

---

[5] The SEC and the DOJ investigated and ultimately charged Gilbertson with securities fraud and federal criminal violations; a jury convicted Gilbertson of wire and other fraud and he is now in prison.  Reger fully cooperated with the investigations but in the process lost his job as the CEO of Northern Oil.  Reger was not charged criminally, however, and settled with the SEC based on negligence—not fraud—for his failure publicly to report his share holdings and his acquiescence in Gilbertson's financial transactions, which he neither admitted nor denied.  The SEC settlement allowed Reger to serve as an officer or director of any other public company, and Northern Oil has now made him its Chairman Emeritus and President.

David A. Scheffel
Dorsey & Whitney LLP
51 West 52nd Street
New York, New York 10019-6119
Telephone: (212) 415-9200
scheffel.david@dorsey.com

*Attorneys for Defendant*
*Michael L. Reger*

## CERTIFICATE OF SERVICE

I, James K. Langdon, hereby affirm that on this 5th day of April, 2019, I caused the foregoing Defendant Michael L. Reger's Memorandum in Support of His Motion to Dismiss and Motion to Strike to be served via this Court's Electronic Case Filing system.

    /s/ James K. Langdon
James K. Langdon