# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Jon D. Gruber, individually and on behalf of all
others similarly situated,

         Plaintiffs,                   Case No. 16-v-09727-WHP

     v.

Ryan R. Gilbertson, Michael L. Reger, Gabriel
G. Claypool, Craig M. McKenzie, Timothy R.
Brady, Terry H. Rust, Paul M. Cownie, David
J. Fellon, Gary L. Alvord, & James L. Thornton,

         Defendants.

# MEMORANDUM OF DEFENDANTS
# IN SUPPORT OF THEIR MOTION TO DECERTIFY THE CLASS

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 4

    A.    The Full Record Reveals Overwhelmingly Individual Issues of Investor Knowledge of Gilbertson and Reger's Ownership and Role in the Company ........................................................................................... 5

    B.    The Full Record Confirms That as to the D&Os Plaintiff Asserts Primarily a Misrepresentation Case and Therefore *Affiliated Ute* Does Not Apply.............. 9

    C.    The Court Should Revisit its Holding That Plaintiff's Claims Are Typical........ 13

CONCLUSION................................................................................................ 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affiliated Ute Citizens of the State of Utah v. United States*,
406 U.S. 128 (1972) ............................................................................... *passim*

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ....................................................................................5

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000) ........................................................................14

*Blank v. Jacobs*,
No. 03-CV-2111, 2009 WL 3233037 (E.D.N.Y. Sept. 30, 2009) ...........15

*Boucher v. Syracuse Univ.*,
164 F.3d 113 (2d Cir. 1999) ........................................................................4

*Catholic Healthcare W. v. U.S. Foodservice Inc.*,
729 F.3d 108 (2d Cir. 2013) ........................................................................6

*Coopers v. Lybrand & Livesay*,
437 U.S. 463 (1978) ....................................................................................4

*Doe I v. Karadzic*,
192 F.R.D. 133 (S.D.N.Y 2000) ..................................................................4

*Gen. Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982) ...............................................................................4, 16

*In re Harcourt Brace Jovanovich, Inc., Sec. Litig.*,
838 F. Supp. 109 (S.D.N.Y. 1993) ............................................................15

*Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*,
211 F.R.D. 228 (S.D.N.Y. 2002) ................................................................9

*Mazzei v. Money Store*,
829 F.3d 260 (2d Cir. 2016) ........................................................................4

*Moore v. PaineWebber, Inc.*,
306 F.3d 1247 (2d Cir. 2002) ......................................................................8

*In re Petrobras Secs. Litig.*,
862 F.3d 250 (2d Cir. 2017) .....................................................................5, 8

*Richardson v. Byrd*,
    709 F.2d 1016 (5th Cir. 1983) .................................................................................4

*Robinson v. Metro-North Commuter R.R.*,
    267 F.3d 147 (2d Cir. 2001) .................................................................................13

*Rocco v. Nam Tai Elecs., Inc.*,
    245 F.R.D. 131 (S.D.N.Y. 2007) .....................................................................15, 16

*Sheinberg v. Sorensen*,
    No. 00-6041, 2007 WL 496872 (S.D.N.Y. Feb. 8, 2007) .......................................4

*Sirota v. Solitron Devices, Inc.*,
    673 F.2d 566 (2d Cir. 1982) ...................................................................................4

*In re Smith Barney Transfer Agent Litig.*,
    290 F.R.D. 42 (S.D.N.Y. 2013) ..............................................................................9

*Starr ex rel. Estate of Sampson v. Georgeson Shareholder, Inc.*,
    412 F.3d 103 (2d Cir. 2005) ...........................................................................10, 12

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*,
    No. 05 Civ. 1898, 2006 WL 2161887 (S.D.N.Y. Aug. 1, 2006) ...........................12

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ........................................................................................5, 8

*Waggoner v. Barclays PLC*,
    875 F.3d 79 (2d Cir. 2017) .............................................................................10, 12

*Wilson v. ComTech Telecomms. Corp.*,
    648 F.2d 88 (1981) .................................................................................10, 12, 13

**Other Authorities**

Federal Rule of Civil Procedure 23 ....................................................................... *passim*

## INTRODUCTION

On September 17, 2019, the Court certified "(1) a class of investors who purchased or otherwise acquired Dakota Plains Holdings, Inc.'s … common stock during the period March 23, 2012 through August 16, 2016 … and (2) a subclass of investors who purchased Company stock contemporaneously with defendants." Dkt. No. 253 at 20.  In so doing, the Court was persuaded by Plaintiff that this was primarily an omissions case based on what the Court described as Plaintiff's "primary contention . . . that [Defendants] Gilbertson and Reger—*and those two specifically*—hid substantial ownership stakes which allowed them to perpetrate a fraud." Dkt. No. 253 at 14-15 (emphasis added).  Over a year later, notice has never been provided to the class.

Throughout this case Plaintiff has deftly shifted legal and factual hypotheses to suit his argument *du jour*.  This tendency is illustrated by Plaintiff's approach to class certification.  By the time of the class certification phase Plaintiff was on his Third Amended Complaint ("TAC"), which characterized Plaintiff's case as primarily involving affirmative misrepresentations as concerns the Director & Officer Defendants.[1]  Specifically, Plaintiff asserted that the D&Os made affirmative misstatements in Dakota Plains' Super 8-K based on the *affirmative statement* in that document that "no person is a beneficial owner of more than 5% of our common stock." TAC ¶ 140.[2]  Never mind that not all of the D&Os named as Defendants were actually serving as a director or officer at the time the Super 8-K was filed.

---

[1] The Director & Officer Defendants (collectively, "D&Os") are Gabriel G. Claypool, Timothy R. Brady, Craig M. McKenzie, Terry H. Rust, Paul M. Cownie, David J. Fellon, Gary L. Alvord, and James L. Thornton.

[2] At the time of class certification briefing the TAC was the operative complaint.  Since then Plaintiff filed a Fourth Amended Complaint ("FAC") (Dkt. No. 271), but it does not differ substantively from the TAC for class certification purposes.

Cognizant that he could not obtain class certification if this lawsuit were primarily a misrepresentations case, Plaintiff did an about-face at the time of class certification briefing, and presented his claims as primarily involving omissions rather than misstatements so as to avail himself of the *Affiliated Ute* presumption of reliance.  Plaintiff's main thesis in arguing for class certification is that Gilbertson and Reger failed to disclose their ownership of Dakota Plains stock.  Dkt. No. 161 at 22.  As for the D&Os, Plaintiff transformed the alleged affirmative misrepresentation in the Super 8-K that "no person is a beneficial owner of more than 5% of our common stock" into an omission by stating the opposing details of the claimed misrepresentation.  TAC ¶ 140.  Plaintiff deployed this strategy as to the D&Os by claiming that Defendants *omitted* to disclose Gilbertson and Reger's ownership stake in the Company or the details of the fraudulent scheme, stating "it is hard to conceive of anything more material to an investor than the facts as to who was running the Company," which Plaintiff asserted the D&Os had an affirmative duty to disclose.  Dkt. No. 238 at 1.  Accepting this framing, the Court certified the class, finding that Plaintiff's "primary contention" was that Gilbertson and Reger (and only those two) omitted to disclose their ownership interest in Dakota Plains.  Dkt. No. 253 at 14-15.  The Court therefore held that individual issues of reliance did not preclude certification because, cast as an omissions case, *Affiliated Ute*'s presumption of reliance applied.  *Id*.

For present purposes, there are three reasons why the Court should revisit its interlocutory class certification order and decertify the class now, following exhaustive factual discovery and a full record.  *First*, as the case progressed, there is now ample evidence in the record that large and sophisticated investors were aware of Gilbertson and Reger's role in Dakota Plains and their share ownership, and Plaintiff has produced no evidence to the contrary other than Plaintiff himself.  And because Dakota Plains stock was thinly traded throughout the class

period, this issue of what each investor knew about Gilbertson and Reger's ownership and involvement in Dakota Plains cannot be overlooked in the face of this evidence. Consequently, there is a predominantly individual inquiry as to whether each of the investors in Dakota Plains stock knew about Gilbertson and Reger's involvement. That is because if any individual investor had that knowledge, it would topple the central thesis of Plaintiff's case. This alone warrants decertification.

*Second*, now that discovery is complete, the record establishes that Plaintiff has reverted to the primarily misrepresentation case as concerns the D&Os. This has become clear on the full record now available to the Court, including in particular the liability theory offered by Plaintiff's liability expert as to the D&Os, which is a misrepresentation theory. Regardless of whether that expert testimony is admitted at trial, it is the ultimate expression by Plaintiff concerning his theory of liability as to the D&Os.

Finally, the Court should revisit its finding that Plaintiff's claims are typical. The genesis of this lawsuit was the stock manipulation for which Gilbertson was convicted, which triggered the embedded derivative in the Company's notes. But the financial effect of the embedded derivative having been triggered based on the Company's rise in share price, including in particular the Company's public announcement of its going concern risk, occurred 10 months *before* Plaintiff first purchased the Company's stock. His claims are not typical of investors who purchased before those disclosures.

For these reasons, as more fully explained below, the Court should decertify the class.

## ARGUMENT

Class certification orders are inherently interlocutory until a final judgment is entered. Rule 23(c)(1)(C) provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment."  For this reason, a trial court "order denying or granting class status is inherently tentative" and is "subject to revision."  *Coopers v. Lybrand & Livesay*, 437 U.S. 463, 469 n.11 (1978).  As the Second Circuit has observed, "because the results of class proceedings are binding on absent class members [citation omitted], the district court has the affirmative 'duty of monitoring its class decisions in light of the evidentiary developments of the case.'"  *Mazzei v. Money Store*, 829 F.3d 260, 266 (2d Cir. 2016) (*quoting Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983)); *accord Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999) (district courts are "required to reassess their class rulings as the case develops").  "A district court may exercise its discretion to decertify a class if it appears the Rule 23 requirements of class certification are no longer satisfied."  *Sheinberg v. Sorensen*, No. 00-6041, 2007 WL 496872, at *2 (S.D.N.Y. Feb. 8, 2007); *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 572 (2d Cir. 1982) ("a district court may decertify a class if it appears that the requirements of Rule 23 are not in fact met"); *see also Richardson*, 709 F.2d at 1019 ("The district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts.").  Finally, although this is a 2016 case and the class was certified in September 2019, any prejudice to the class will be minimal "since class notification has not yet been provided…."  *Doe I v. Karadzic*, 192 F.R.D. 133, 136 (S.D.N.Y 2000) ("[P]rior to the point at which notice is sent to members of the class, a class order 'is inherently tentative.'") (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).

A.     **The Full Record Reveals Overwhelmingly Individual Issues of Investor Knowledge of Gilbertson and Reger's Ownership and Role in the Company.**

In certifying the class, the Court was persuaded that the primary grounds supporting class certification was Plaintiff's contention that Gilbertson and Reger hid their ownership stake in the Company, Dkt. No. 253 at 14-15, and that the most material information allegedly withheld is "who was running the Company…." Dkt. No. 238 at 1. Yet on this primary issue, the evidence accumulated over the course of this litigation confirms that many significant investors, including large hedge funds, knew of Gilbertson and Reger's role in the Company including as founders. Given Plaintiff's central thesis that no reasonable investor would have purchased shares in Dakota Plains if the investor knew of Gilbertson and Reger's roles and share ownership, this raises a fundamentally individualized (and non-hypothetical) inquiry as to what each class member knew concerning Reger and Gilbertson's involvement, and whether class members would have nevertheless purchased Dakota Plains shares if they had that knowledge. Because that issue cannot be resolved through common proof, Rule 23(b)(3)'s predominance requirement is not satisfied, and the class should be decertified.

In a money damages class action, such as the instant case, predominance "is a core feature of the Rule 23(b)(3) class action mechanism, and is not satisfied simply by showing that the class claims are framed by the common harm suffered by potential plaintiffs." *In re Petrobras Secs. Litig.*, 862 F.3d 250, 270 (2d Cir. 2017). The question is whether common issues "are more prevalent or important than the non-common, aggregation defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). Stated differently, the predominance inquiry focuses on whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Class-wide issues predominate only "if resolution of some of the legal or factual questions that

qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Catholic Healthcare W. v. U.S. Foodservice Inc.*, 729 F.3d 108, 118 (2d Cir. 2013) (internal citations omitted).

The evidence that has accumulated surrounding the investor community's widespread knowledge of Reger and Gilbertson's roles and as owners in Dakota Plains is inescapable.  Craig McKenzie, the one-time CEO of Dakota Plains, has provided sworn testimony that establishes this point.  By way of illustration, McKenzie testified that he met with about 100 investors, and "generally everyone knew that Mike [Reger] and Ryan [Gilbertson] and Jim Sankovitz had formed the company."  Declaration of Kenneth M. Kliebard ("Kliebard Decl."), Ex. A, McKenzie Dep. Tr. at 67:10-12, 70:14-20.  When repeatedly pressed on this, McKenzie affirmed that these meetings were with "all the usual suspect hedge funds," and it was "general knowledge, common knowledge they were founders," and this was true among investors and "whoever we were speaking to."  *Id.*, 68:7-12, 69:13-14, 70:8-10, 71:11-12.  So too, Nick Shermeta, at the time a Minnesota stockbroker who had been employed by Northland Securities, testified that investors purchased Dakota Plains stock *because of* Reger's involvement with the Company.  Kliebard Decl. Ex. B, Gilbertson Trial Tr. Vol. XI at 1049:8-1051:10.  Gilbertson likewise testified that "people [were] interested in investing in Dakota Plains because Mike Reger and Ryan Gilbertson were involved in Dakota Plains."  Kliebard Decl. Ex. C, Gilbertson Trial Tr. Vol. IX at 1797:2-1798:25.  This is not surprising given Gilbertson and Reger's track record with Northern Oil and Gas, which was enormously profitable to investors.  Kliebard Decl. Ex. D, Twin Cities CEO Named One of America's Most Powerful Young Leaders.

These investors who attended the investor "road shows" were substantial investors, as revealed by document discovery, and some went on to purchase Dakota Plains shares armed with the "common knowledge" that Gilbertson and Reger were the Company founders.  For instance, in December 2012, after the Company's stock was publicly traded, Gilbertson and Claypool attended roadshows in New York where they met Aaron Kennon and Roger Liddell of Clear Harbor Asset Management (and of course many others).  Kliebard Decl. Ex. E, Reger's Am. Answers to Pl.'s First Set of Interrogs., at 1.II.6.  In and around that time period Clear Harbor purchased (and later sold) 556,500 shares of Dakota Plains Stock.  *See* Kliebard Decl. ¶ 12. Trading records reveal that in February 2014, Kennon individually purchased approximately 57,500 shares, and that same month Clear Harbor bought thousands of additional shares of the Company's stock.  *Id*.

By way of further example, in July 2013, Reger traveled with Peter Lynch (the famed Fidelity investment fund manager) to the Company's transloading facility to promote the Company.  Kliebard Decl. Ex. E, at 1.II.8.q.  During the period of July to September 2013, Lynch purchased approximately 30,000 shares of Dakota Plains stock.  *See* Kliebard Decl. ¶ 12. Lynch's wife (Carolyn) bought a similar number of shares in the same timeframe as did The Lynch Foundation.  *Id.*

Even Plaintiff's Fourth Amended Complaint ("FAC") alleges that a large shareholder, Lone Star Value Management LLC, was aware of Reger's ownership of Dakota Plains stock. FAC ¶ 25.  Indeed, Reger has identified by name 57 individuals and institutional investors who purchased Dakota Plains shares with knowledge of Reger's involvement as a founder and/or shareholder of Dakota Plains.  Kliebard Decl. Ex. E, at 1.II.8.  In stark contrast, Plaintiff has

uncovered *no evidence* in exhaustive discovery that any shareholder, other than Plaintiff himself, was unaware of Reger and Gilbertson's involvement with the Company.

The revelation that a significant number of shareholders were aware of Gilbertson and Reger's role creates insurmountable predominance issues.  Predominance "is a core feature of the Rule 23(b)(3) class action mechanism, and is not satisfied simply by showing that the class claims are framed by the common harm suffered by potential plaintiffs."  *In re Petrobras Secs. Litig.*, 862 F.3d at 270.  The question is whether common issues "are more prevalent or important than non-common, aggregation defeating, individual issues."  *Tyson Foods, Inc.*, 136 S. Ct. 1036 at 1045.  In light of the record that Gilbertson and Reger's roles were widely known in the investor community and among those who purchased shares of Dakota Plains, there are serious predominance issues going to Plaintiff's contention, accepted by the Court in certifying the class, that "it is hard to conceive of anything more material to an investor than the facts as to who was running the Company."  Dkt. No. 238 at 1.

Accepting Plaintiff's formulation of the issue, the full record reveals that individual issues will overwhelm common issues as to whether the purchasers of Dakota Plains' thinly traded stock were aware of Gilbertson and Reger's role as founders and investors in the Company.  If investors were aware of Gilbertson and Reger's role in the Company, as supported by the record, then that destroys Plaintiff's central thesis at the core of this Court's class certification order.  And this type of state of mind evidence cannot be established through common proof, but instead would require separate mini-trials of each class member to determine if and to what degree that class member was aware of Gilbertson and Reger's roles.  Where there is a need for these types of mini-trials in order to establish liability on behalf of class members, class certification is improper.  *See, e.g., Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1253 (2d

Cir. 2002); *Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228, 235 (S.D.N.Y. 2002)

("series of 'mini-trials' on factual issues [] support the finding that class certification is not

appropriate").  Because individual mini-trials on investor knowledge of the supposedly withheld

information cannot be avoided, the predominance requirement can no longer be satisfied.

Accordingly, the class should be decertified.

> **B.**     **The Full Record Confirms That as to the D&Os Plaintiff Asserts Primarily a Misrepresentation Case and Therefore *Affiliated Ute* Does Not Apply.**

There is another predominance issue that warrants decertification at this time.

Notwithstanding Plaintiff's flip-flop from an affirmative misrepresentation case at the outset to

an omissions case by the time of class certification briefing so as to avail himself of the *Affiliated*

*Ute* presumption of reliance, the record confirms Plaintiff has reverted to the position that his

claims as the D&Os are primarily based on misrepresentations.  On this basis alone, the class

should be decertified as to the D&Os.

Plaintiff's class certification bid relied on the *Affiliated Ute* presumption, which applies

only in cases "involving primarily a failure to disclose."  *Affiliated Ute Citizens of the State of*

*Utah v. United States*, 406 U.S. 128, 153-54 (1972).  In such circumstances, "[a]ll that is

necessary is that the facts withheld be material in the sense that a reasonable investor might have

considered them important in the making of [their] decision."  *Id.*  Courts have sometimes had

difficulty distinguishing between claims based on misrepresentations and claims based primarily

on omissions because "[t]he distinction between misstatements and omissions is often illusory."

*In re Smith Barney Transfer Agent Litig.*, 290 F.R.D. 42, 47 (S.D.N.Y. 2013).  Nonetheless,

while the distinction between omissions and misrepresentations is at times elusive, the case law

confirms that this is primarily a misrepresentation case.

First, *Affiliated Ute* is grounded in an evidentiary concern: absent the presumption, "reliance as a practical matter is impossible to prove" in cases where "no positive statements exist." *Wilson v. ComTech Telecomms. Corp.*, 648 F.2d 88, 93 (1981). By contrast, the presumption does *not* apply where complaints allege "numerous affirmative misstatements" such that "the Plaintiffs are [ ] not in a situation in which it is impossible for them to point to affirmative misstatements." *Waggoner v. Barclays PLC*, 875 F.3d 79, 96 (2d Cir. 2017). Second, and relatedly, the *Affiliated Ute* presumption does not apply in "mixed" cases in which the plaintiff alleges affirmative misstatements as well as omissions. *Id.* Third, the *Affiliated Ute* presumption does not apply to "earlier misrepresentations made more misleading by subsequent omissions, or to what has been described as 'half truths,' nor does it apply to misstatements whose only omission is the truth that the statement misrepresents." *Id.* Thus, the presumption does not apply when the omissions simply "exacerbated the misleading nature of the [alleged conduct]." *Starr ex rel. Estate of Sampson v. Georgeson Shareholder, Inc.*, 412 F.3d 103, 109 n.5 (2d Cir. 2005).

The Court found this was primarily an omissions case based on its conclusion that Plaintiff's "primary contention is that Gilbertson and Reger—and those two specifically—hid substantial ownership stakes which allowed them to perpetrate a fraud." Dkt. No. 253 at 14-15. The Court further held that Plaintiff's claims were based on "other key information which was omitted"—in particular, "facts about the stock manipulation scheme," that the "additional payment provision" came about at Gilbertson's direction and "incentivized the stock manipulation scheme," and "findings of the internal investigation" regarding Gilbertson's and Reger's conduct. *Id.* at 15.

10

As this case has progressed from assertion to facts, the claims as to the D&Os inescapably derive from supposed affirmative misstatements.  The linchpin of Plaintiff's claims is that had investors known of Gilbertson and Reger's substantial ownership in the Company, no investor would have purchased Dakota Plains shares.  That this claimed affirmative misrepresentation underlies the claims against the D&Os upon which Plaintiff rests his case is confirmed by the expert report and testimony of Plaintiff's liability expert, Professor Steven Thel.

In describing his opinions that he will offer in his case, Thel's only articulated basis for liability as to the D&Os concerns Gilbertson and Reger's beneficial stock ownership.  Thel states his opinion on Plaintiff's theory of liability as to the D&Os as follows:

> Overwhelming evidence shows that the officers and directors … of the Company knew, or were reckless in not knowing, that Gilbertown and Reger each beneficially owned more than 5% of the Company's stock, yet made no disclosures thereof, or of the transactions between them and the Company in violation of their duties as officers and directors of a public-reporting company.

Kliebard Decl. Ex. F, Expert Report of Steven Thel at 3-4.  Thel offers no other theory opinion in his report on the liability of the D&Os.

Thel himself acknowledged in his report and in his sworn testimony that the case against the D&Os is primarily a misrepresentation case based on the Super 8-K.  In his report, for example, Thel describes the Super 8-K issue as a misrepresentation, namely, that "the Company falsely stated that: 'Based on the information available to us, as of [March 22, 2012], no person is a beneficial owner of more than 5% of our common stock.'"  Kliebard Decl. Ex. G, Rebuttal Expert Report of Steven Thel ¶ 15 (quoting Dakota Plains Form 8-K filed March 22, 2012 at 22).  Along these lines, Professor Thel's testimony confirms that as to the D&Os the case primarily concerns the alleged misstatement in the Super 8-K that no individuals are beneficial shareholder

of more than 5% of the Company's stock.  Kliebard Decl. Ex. H, Thel Dep. Tr. at 77:5-20,

133:8-24, 134:23-135:1, 135:10-17; Kliebard Decl. Ex. G, Rebuttal Expert Report of Steven

Thel ¶ 15, Kliebard Decl. Ex. F, Expert Report of Steven Thel ¶ 38.

Professor Thel's opinions and testimony, which are offered to prove the D&Os' liability,

confirm that the case as to the D&Os is not primarily an omissions case.  The Company's

statement, made in numerous securities filings, that "no person is a beneficial owner of more

than 5% of our common stock" is an affirmative misstatement.  *See Teamsters Local 445 Freight*

*Div. Pension Fund v. Bombardier, Inc.*, No. 05 Civ. 1898, 2006 WL 2161887, at *5 (S.D.N.Y.

Aug. 1, 2006) ("Where positive statements are central to the alleged fraud, thereby eliminating

the evidentiary problems inherent in proving reliance on an omission, the *Affiliated Ute*

presumption does not apply.").

In spite of this, in certifying the class the Court found that the Company's alleged

misstatement about its ownership structure was not central to the alleged fraud because it was the

failure to disclose that Gilbertson and Reger specifically were the majority beneficial owners that

caused the injury.  Dkt. No. 253 at 14-15.  But this finding misconstrues Second Circuit

precedents, as well as *Affiliated Ute's* underlying rationale: the presumption is justified when

reliance would otherwise be "impossible to prove" because the plaintiff could not point to any

affirmative misstatements.  *Wilson*, 648 F.2d at 93; *see also Waggoner*, 875 F.3d at 96.

Here, Plaintiff alleges he relied on an affirmative misstatement, that no individual owned

more than 5% of the Company's stock.  FAC ¶ 109, 168-169.  This misstatement is the crux of

his claim; the omission—which, at most, would have provided further detail about *why* the claim

that no one owned more than 5% of the company was false—did no more than "exacerbat[e] the

misleading nature of the affirmative statements."  *Starr*, 412 F.3d at 109 n.5.

The same is true of the other alleged omissions that the Court found were central to Plaintiff's claims.  The Court found that the Company failed to disclose details of the fraudulent scheme.  Likewise, the Court found that the failure to disclose details of the Company's internal investigation was an actionable omission.  Dkt. No. 253 at 15.  But all of the alleged omissions are merely further, opposing details regarding what the Company actually said in public filings about Reger and Gilbertson's equity stake in the company; their efforts in causing the Company to add the embedded derivative to the consolidated notes; their stock manipulation in the first twenty days of trading; their insider trading; and the "control" they exerted over the Company. FAC ¶ 167.  That is not enough to trigger the *Affiliated Ute* presumption.  Given the numerous affirmative representations pleaded throughout that form the basis for the FAC and which, according to Professor Thel, are the basis of the D&Os' liability, establishing reliance does not pose the particular evidentiary challenge warranting the *Affiliated Ute* presumption.  *See Wilson*, 648 F.2d at 93.

## C.    The Court Should Revisit its Holding That Plaintiff's Claims Are Typical.

Finally, the Court should take this opportunity to revisit its conclusion that Plaintiff's claims were typical of absent class members.  Respectfully, in holding that Plaintiff satisfied the typicality requirement, the Court overlooked or ignored key facts about the timing and circumstances of Plaintiff's purchase of Dakota Plains stock.

Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar arguments to prove the defendant's liability." *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001).  Moreover, "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation," certification is improper because the representative can no longer represent the

best interests of the class.  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000).

Plaintiff alleges that the class period begins on March 23, 2012, the first day of public trading of Dakota Plains stock, and that investment decisions of the class were based on material misrepresentations in the Company's SEC filings.  FAC ¶¶ 1, 167.  Plaintiff, however, did not purchase any shares until February 5, 2013, nearly a year *after* the twenty-day period of alleged price manipulation and 10 months *after* the Company disclosed the embedded derivative had been triggered.  Dkt. No. 271-2 at 3.  Moreover, in deciding to purchase Dakota Plains stock, Plaintiff explicitly disclaimed reliance on any statements or omissions in the Company's SEC filings, and none of the purported deceptive conduct had anything to do with his decision to purchase the stock.  Instead, Plaintiff based his decision to invest on what was happening at the Company on February 5, 2013.  At that time he "felt [he] knew enough to make a positive decision," and "[a] year earlier, I could care less what the stock did."  Kliebard Decl. Ex. I, Gruber Dep. Tr. at 150:11-13, 139:10-12.

In the meantime on May 15, 2012, Dakota Plains reported in its SEC filings that the Company faced a going concern risk.  Kliebard Decl. Ex. J, Dakota Plains Form 10-Q, filed May 15, 2012 at 4-5. A going concern risk is disclosed in the company's financial statements when the company's auditor concludes, based on a review of the company's financial records and market risks, that there is substantial doubt about the entity's ability to continue as a going concern for a reasonable period of time.  *See* PCAOB AS 2415:  Consideration of an Entity's Ability to Continue as a Going Concern, *available at* https://pcaobus.org/Standards/Auditing/Pages/AS2415.aspx (last accessed September 21, 2020). That disclosure in the Company's SEC filings was made because at that point the effect of the

manipulation scheme had been disclosed; namely, the Company was aware that the embedded derivative had been triggered and that it lacked the financial means to satisfy its obligations under the notes. Therefore, at the time the lone class representative purchased shares on February 5, 2013, the financial harm from the stock manipulation was fully disclosed to the market. That begs the question of how Plaintiff's claims are typical of class members who purchased shares before the going concern disclosure.

The Court looked past these typicality issues, finding that "[d]ifferences in purchase date and the information relied on to make those purchases do not defeat typicality when those purchases were made during the class period." Dkt. No. 253 at 7-8. Respectfully, the Court should re-evaluate that conclusion. Courts have frequently held that a proposed class representative's non-reliance on misleading information creates a unique defense that destroys typicality. *See, e.g.*, *Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007) ("[I]t has been recognized that a named plaintiff who is subject to an arguable defense of non-reliance on the market has been held subject to a unique defense, and therefore, atypical of the class."), *quoting In re Harcourt Brace Jovanovich, Inc.*, *Sec. Litig.*, 838 F. Supp. 109, 113 (S.D.N.Y. 1993)); *Blank v. Jacobs*, No. 03-CV-2111, 2009 WL 3233037, at *5 (E.D.N.Y. Sept. 30, 2009) (finding that plaintiff who "was relying on its own assessment of the value of the stock," and not on allegedly misleading audits, was atypical because "[t]his defense does threaten to become the focus of the litigation.").

Plaintiff's own testimony leaves him vulnerable to the defense that he did not rely on either the share price or the Company-related news during the months between the Company going public and his own share purchases. Plaintiff cannot represent a class that includes investors who purchased during those periods and may have so relied. He bought his stock after

the Company announced publicly its going concern risk.  That makes his claims unlike other class members who bought before that announcement.  He therefore cannot meet Rule 23(a)(3)'s typicality requirement.  *Rocco*, 245 F.R.D. at 136; *Gen. Tel. Co.*, 457 U.S. at 156 (class representative must possess the same interest, and suffer the same injury, as other members of the class).  For this additional reason, the class should be decertified.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court decertify the class.

Dated: September 21, 2020

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

By: *s/ Kenneth M. Kliebard*
    Kenneth M. Kliebard

Kenneth M. Kliebard (admitted *pro hac vice*)
kenneth.kliebard@morganlewis.com
Jane E. Dudzinski (admitted *pro hac vice*)
jane.dudzinski@morganlewis.com
77 West Wacker Drive, Suite 500
Chicago, Illinois 60601
Telephone: (312) 324-1000

– and –

Victoria Peng
victoria.peng@morganlewis.com
101 Park Avenue
New York, New York 10178
Telephone: (212) 309-6000

***Attorneys for Defendant Gabriel G. Claypool***

**KUTAK ROCK LLP**

By: *s/K. Jon Breyer*
    K. Jon Breyer

K. Jon Breyer (admitted *pro hac vice*)
Leland P. Abide (admitted *pro hac vice*)
jon.breyer@kutakrock.com
leland.abide@kutakrock.com
60 South Sixth Street, Suite 3400
Minneapolis, MN 55402-2274
Telephone: (612) 334-5057

– and –

**BALLARD SPAHR LLP**

Majorie J. Peerce
peercem@ballardspahr.com
1675 Broadway, 19th Floor
New York, NY 10019
Telephone: (212) 223-0200

***Attorneys for Defendants Craig McKenzie,
James Thornton, David Fellon, Gary Alvord,
Terry Rust, and Paul Cownie***


**FOX ROTHSCHILD LLP**

By: *s/ Ranelle Leier*
    Ranelle Leier

Ranelle Leier (admitted *pro hac vice*)
rleier@foxrothschild.com
2000 Campbell Mithun Tower
222 South Ninth Street
Minneapolis, MN 55402-3339
Telephone: (612) 607-7000

– and –

Oksana G. Wright
owright@foxrothschild.com
101 Park Avenue, 17th Floor
New York, NY 10178
Telephone: (212) 878-7900

***Attorneys for Defendant Timothy R. Brady***

17

**DORSEY & WHITNEY LLP**

By: _s/ James K. Langdon_
        James K. Langdon

James K. Langdon (admitted *pro hac vice*)
Michael E. Rowe, III (admitted *pro hac vice*)
langdon.jim@dorsey.com
rowe.michael@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-8759

– and –

Kaleb McNeely
mcneely.kaleb@dorsey.com
51 West 52nd Street
New York, NY 10019
Telephone:  (212) 415-9200

***Attorneys for Defendant Michael Reger***

**BEST & FLANAGAN LLP**

By: _s/ Amy S. Conners_
        Amy S. Conners

Amy S. Conners (SBN 4226148)
John A. Sullivan (admitted *pro hac vice*)
aconners@bestlaw.com
jsullivan@bestlaw.com
60 South Sixth Street, Suite 2700
Minneapolis, Minnesota 55402
Telephone:  (612) 339-7121

***Attorneys for Defendant Ryan Gilbertson***

18

**CERTIFICATE OF SERVICE**

I, Kenneth M. Kliebard, hereby affirm that on September 21, 2020, I caused a copy of the

foregoing, **Memorandum of Defendants in Support of Their Motion to Decertify the Class**,

to be filed and served via this Court's Electronic Case Filing System.

*/s/ Kenneth M. Kliebard*
Kenneth M. Kliebard
