UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JON D. GRUBER, Individually and on Behalf
of All Others Similarly Situated,

                    Plaintiff,

      v.

RYAN R. GILBERTSON, et al.,

                    Defendants.

No. 1:16-cv-09727-JSR

Hon. Jed S. Rakoff

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE
TO PRECLUDE DEFENDANT RYAN R. GILBERTSON FROM DISPUTING
HIS KNOWING PARTICIPATION IN STOCK-PRICE MANIPULATION**

Solomon B. Cera
Pamela A. Markert
Kenneth A. Frost
CERA LLP
595 Market Street, Suite 1350
San Francisco, CA 94105
(415) 777-2230

Steven F. Molo
Robert K. Kry
Mark W. Kelley
Alexandra C. Eynon
MOLOLAMKEN LLP
430 Park Avenue, 6th Floor
New York, NY 10022
(212) 607-8170
smolo@mololamken.com

*Attorneys for Plaintiff
and All Others Similarly Situated*

# TABLE OF CONTENTS

Page

INTRODUCTION ......................................................................................................... 1

BACKGROUND .......................................................................................................... 1

ARGUMENT ................................................................................................................ 3

I.     Collateral Estoppel Bars Gilbertson from Relitigating Whether He Manipulated
       Dakota Plains' Stock Price with Fraudulent Intent ............................................. 3

       A.     The Issues Are Identical ........................................................................... 4

       B.     The Issues Were Actually Litigated ......................................................... 5

       C.     Gilbertson Had Ample Opportunity To Litigate the Issues ...................... 6

       D.     The Jury Findings Were Necessary to the Conviction ............................. 6

II.    The Court Should Preclude Gilbertson from Disputing Facts Established at His
       Criminal Trial ..................................................................................................... 7

CONCLUSION ............................................................................................................ 9

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Adelphia Commc'ns Corp.*,
    No. 03 MD 1529 (LMM), 2006 WL 2463355 (S.D.N.Y. Aug. 23, 2006) ..........................3, 4

*Bifolck v. Philip Morris USA Inc.*,
    936 F.3d 74 (2d Cir. 2019)...............................................................................................4, 6

*Bobby v. Bies*,
    556 U.S. 825 (2009).............................................................................................................6

*D'Agostino v. Hous. Auth. of City of Waterbury*,
    No. 3:05CV01057 PCD, 2007 WL 274531 (D. Conn. Jan. 29, 2007) ....................................8

*Emich Motors Corp. v. Gen. Motors Corp.*,
    340 U.S. 558 (1951)............................................................................................................4

*Gelb v. Royal Globe Ins. Co.*,
    798 F.2d 38 (2d Cir. 1986)...........................................................................................3, 4, 5

*Gordon v. Sonar Capital Mgmt. LLC*,
    116 F. Supp. 3d 360 (S.D.N.Y. 2015)............................................................................3, 4

*In re Namenda Direct Purchaser Antitrust Litig.*,
    No. 15 Civ. 7488 (CM), 2019 WL 6242128 (S.D.N.Y. Aug. 2, 2019) ...................................8

*Proctor v. LeClaire*,
    715 F.3d 402 (2d Cir. 2013)................................................................................................6

*In re Rodrigues*,
    No. 18-20095 (JJT), 2019 WL 2385799 (Bankr. D. Conn. June 4, 2019)...............................8

*SEC v. Afriyie*,
    No. 16-CV-2777, 2018 WL 6991097 (S.D.N.Y. Nov. 26, 2018)...........................................7

*SEC v. Tandem Mgmt. Inc.*,
    No. 95 Civ. 8411 (JGK), 2001 WL 1488218 (S.D.N.Y. Nov. 21, 2001) ................................6

*SEC v. Tzolov*,
    No. 08 Civ. 7699 (SAS), 2011 WL 308274 (S.D.N.Y. Jan. 26, 2011)................................4, 6

*United States v. Gilbertson*,
    970 F.3d 939 (8th Cir. 2020) ..............................................................................................3

*United States v. Podell*,
    572 F.2d 31 (2d Cir. 1978)..................................................................................4

**Statutes**

15 U.S.C. § 78j(b) ..................................................................................2, 4, 5

**Regulations**

17 C.F.R. § 240.10b-5 ............................................................................2, 4, 5

**Rules**

Fed. R. Evid. 401(b)..............................................................................8

Fed. R. Evid. 403 ..................................................................................8, 9

## INTRODUCTION

This securities fraud class action alleges that defendants Ryan R. Gilbertson and Michael L. Reger founded Dakota Plains Holdings, Inc. ("Dakota Plains" or the "Company") as part of a plan to enrich themselves at investors' expense. A principal component of that plan was to take the Company public via a reverse merger and then manipulate its stock price to trigger lucrative bonus payments that Gilbertson and Reger had embedded in Company promissory notes. Gilbertson was criminally tried and convicted of securities and wire fraud for his role in that manipulation. Under familiar principles of collateral estoppel, that conviction is preclusive in this civil action. Gilbertson cannot dispute either (1) that he participated in the manipulation of Dakota Plains' stock price; or (2) that he did so with scienter. Plaintiff intends to seek an instruction directing the jury to accept those facts as given. To avoid the prejudice and confusion that might result in the meantime, Plaintiff seeks an order barring Gilbertson from introducing any contrary evidence or argument at trial.

## BACKGROUND

The operative complaint in this securities fraud class action alleges that Gilbertson and Reger used their secret control over Dakota Plains to take the Company public and then enrich themselves at investors' expense. Fourth Am. Compl. ¶¶ 2-3 (Dkt. 271) ("FAC"). Gilbertson and Reger first caused the Company to issue them millions of dollars in high interest rate notes. *Id.* ¶¶ 94, 99. Those notes promised the holders additional bonus payments if the Company went public and maintained an average share price of $2.50 or more for the first 20 days. *Id.* ¶ 104. Gilbertson and Reger then caused Dakota Plains to go public through a reverse merger with a publicly traded shell company. *Id.* ¶¶ 105-108.

Minutes after the Company began trading, Gilbertson began to manipulate its stock price. FAC ¶ 110. Gilbertson had his polo instructor offer thousands of shares bought with Gilbertson's

money for sale at around $12 per share.  *Id.* ¶¶47, 48, 110.  At the same time, Gilbertson instructed a broker-dealer friend, Nicholas Shermeta, to buy shares at that same price.  *Id.*  As a result of that manipulation, the shares traded at more than $11 for the first twenty days, triggering tens of millions of dollars of bonus payments to Gilbertson and Reger.  *Id.* ¶ 118.

The government criminally charged Gilbertson for his role in this stock-price manipulation scheme.  *See United States v. Gilbertson*, No. 17-CR-0066 (D. Minn.).  The superseding indictment in that case alleged that Gilbertson violated Section 10(b) and Rule 10b-5 by participating in "a scheme to defraud the investing public by trading in the securities of Dakota Plains Holding, Inc., for the purpose of artificially inflating and manipulating the price of those securities."  Kelley Decl. Ex. 1 ¶ 36; *see also id.* ¶ 16.

The court in Gilbertson's criminal case instructed the jury to determine whether Gilbertson used "a manipulative or deceptive device or contrivance designed to artificially inflate and manipulate the price of shares of Dakota Plains" or aided and abetted someone else to do so, and whether he acted with "intent to defraud."  Kelley Decl. Ex. 2 Instr. No. 26; *see also id.* No. 16 (similar instruction on wire fraud counts).  The jury found beyond a reasonable doubt that Gilbertson did so, returning a guilty verdict on all but one of the twenty-two counts.  Kelley Decl. Ex. 3.  The trial court denied Gilbertson's motion for judgment of acquittal, observing that there was "plenty of . . . evidence" of Gilbertson's "deception, fraudulent intent, and active concealment."  Kelley Decl. Ex. 4 at 10.

When Gilbertson tried to dispute his fraudulent intent at sentencing, the trial court rejected his arguments "out of hand."   Kelley Decl. Ex. 5 at 11:20-21 (sentencing transcript).  "There is no doubt," the court found, "that Mr. Gilbertson attempted to manipulate the price of Dakota Plains stock."  *Id.* at 12:7-9.  The evidence of his intent was "overwhelming."  *Id.* at 12:9.

It was "clear from the evidence at trial that these steps were taken with criminal intent." *Id.* at 14:24-15:2.

The Eighth Circuit affirmed. Kelley Decl. Ex. 6 (reported at *United States v. Gilbertson*, 970 F.3d 939 (8th Cir. 2020)). The court of appeals concluded that "the jury heard and believed ample evidence that Gilbertson created a scheme to defraud through stock manipulation." *Id.* at 11. Gilbertson "was not engaged in 'legitimate trading strategies' " but rather "took multiple acts to manipulate prices and distort market forces on both the buy and sell side." *Id.* at 13.

## ARGUMENT

Gilbertson has already litigated whether he manipulated Dakota Plains' stock price with fraudulent intent, and the jury in his criminal case resolved those issues against him. Collateral estoppel precludes him from relitigating those issues at trial.

## I.   COLLATERAL ESTOPPEL BARS GILBERTSON FROM RELITIGATING WHETHER HE MANIPULATED DAKOTA PLAINS' STOCK PRICE WITH FRAUDULENT INTENT

It is well-established that collateral estoppel precludes a defendant in a civil case from "relitigating any issue determined adversely to him" in a prior "criminal proceeding." *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 43 (2d Cir. 1986). That principle applies fully to private securities claims against defendants previously convicted of securities fraud. *See, e.g.*, *Gordon v. Sonar Capital Mgmt. LLC*, 116 F. Supp. 3d 360, 364 (S.D.N.Y. 2015) (Rakoff, J.) (applying collateral estoppel principles to prior securities fraud conviction); *In re Adelphia Commc'ns Corp.*, No. 03 MD 1529 (LMM), 2006 WL 2463355, at *5 (S.D.N.Y. Aug. 23, 2006) (same). The jury in Gilbertson's criminal case resolved at least two issues against him that are central to Plaintiff's claims here: that Gilbertson participated in a plan "to artificially inflate and manipulate the price of shares of Dakota Plains" and that he did so with "intent to defraud."

Kelley Decl. Ex. 2 Instr. No. 26.   Collateral estoppel bars Gilbertson from relitigating those issues now.

> Four requirements must be met for collateral estoppel to apply:
>
> (1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

*Gelb*, 798 F.3d at 44.   To evaluate those factors, courts consider the full record of the criminal case, including "the pleadings, the evidence submitted, the instructions under which the jury arrived at its verdict, and any opinions of the courts." *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 569 (1951); *see also United States v. Podell*, 572 F.2d 31, 36 (2d Cir. 1978); *Adelphia*, 2006 WL 2463355, at *5.

All four of those requirements are met here.

### A.     The Issues Are Identical

The first prong "requires that the issue decided in the earlier case and the issue to which the plaintiff seeks to give preclusive effect be identical." *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 80-81 (2d Cir. 2019).   That determination requires a court to compare "the facts set forth in the Indictment and those alleged in the civil Complaint." *Gordon*, 116 F. Supp. 3d at 365; *see also SEC v. Tzolov*, No. 08 Civ. 7699 (SAS), 2011 WL 308274, at *4 (S.D.N.Y. Jan. 26, 2011).

That comparison is straightforward here.   Plaintiff's complaint is expressly based on the "same conduct" at issue in Gilbertson's criminal case.   FAC ¶¶ 4, 48.   The superseding indictment alleged that Gilbertson violated Section 10(b) and Rule 10b-5 by "participat[ing] in a scheme to defraud the investing public by trading in the securities of Dakota Plains Holding, Inc., for the purpose of artificially inflating and manipulating the price of those securities." Kelley Decl. Ex. 1 ¶ 36.   The complaint in this case likewise alleges that Gilbertson violated

Section 10(b) and Rule 10b-5 by "deceiv[ing] the investing public" by "artificially inflat[ing] and maintain[ing] the market price of Dakota Plains securities."  FAC ¶217.

Both the indictment and the complaint describe the steps Gilbertson took during the first 20 days of trading to increase the stock price.  *Compare* Kelley Decl. Ex. 1 ¶16 *with* FAC ¶12. Both explain how Gilbertson and Reger set the stage for their fraud by causing Dakota Plains to issue notes with a bonus provision linked to the first 20 days of trading.  *Compare* Kelley Decl. Ex. 1 ¶¶5-8, 16 *with* FAC ¶¶8-9.  And both allege how Gilbertson directed both sides of the trades to carry out the manipulation.  *Compare* Kelley Decl. Ex. 1 ¶¶17-24 *with* FAC ¶10.

### B.      The Issues Were Actually Litigated

Those same issues were "actually litigated and actually decided" in Gilbertson's criminal proceeding.  *Gelb*, 798 F.3d at 44.

The trial court observed when denying Gilbertson's motion for judgment of acquittal that there was "plenty of . . . evidence" of Gilbertson's "deception, fraudulent intent, and active concealment."  Kelley Decl. Ex. 4 at 10.  The government called multiple witnesses who testified that "they worked in concert with Gilbertson" to "inflate the price of Dakota Plains stock."  *Id.* The government also presented extensive documentary evidence, including a text message in which Gilbertson boasted that the shares would be selling "at 7 bucks not 12 ***were it not for my involvement***."  *Id.* at 6 (emphasis added).

The trial court's instructions focused the jury's attention on those issues.  The court told the jury that "the allegation to which all of the charges relate" was that Gilbertson "schemed to manipulate the price of Dakota Plains stock during the first 20 days of public trading following the reverse merger."  Kelley Decl. Ex. 2 Instr. No. 33.  It explained that "[t]he main focus of your deliberations should be on whether the government has proven, beyond a reasonable doubt, that this allegation is true."  *Id.*

### C.     Gilbertson Had Ample Opportunity To Litigate the Issues

On the third element, Gilbertson rather than Plaintiff bears the burden of proof.  *Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013).  Gilbertson must show that "the prior action did not afford a full and fair opportunity to litigate the issues."  *Id*.  He cannot possibly make that showing here.

Gilbertson was represented at trial by a team of attorneys from three different law firms. Kelley Decl. Ex. 4 at 1.  His trial lasted two weeks.  No. 17-CR-0066 Dkts. 178-207 (D. Minn.). He enjoyed the "full panoply" of procedural protections afforded to criminal defendants, including "a standard of proof that was more favorable to him" than the one that applies in these civil proceedings.  *SEC v. Tandem Mgmt. Inc.*, No. 95 Civ. 8411 (JGK), 2001 WL 1488218, at *11 (S.D.N.Y. Nov. 21, 2001) (applying collateral estoppel for those reasons); *see also Tzolov*, 2011 WL 308274, at *4 (similar).  Gilbertson had every opportunity to persuade the jury of his innocence, but the jury rejected his arguments.

### D.     The Jury Findings Were Necessary to the Conviction

The fourth prong is satisfied too.  An issue is "necessary" to the judgment when "the final outcome hinge[d] on it."  *Bifolck*, 936 F.3d at 82 (quoting *Bobby v. Bies*, 556 U.S. 825, 835 (2009)) (emphasis omitted).  The trial court's instructions make plain that the verdict hinged on Gilbertson's knowing participation in a scheme to manipulate Dakota Plains' stock price.  *See, e.g.*, *SEC v. Afriyie*, No. 16-CV-2777, 2018 WL 6991097, at *4 (S.D.N.Y. Nov. 26, 2018) (Rakoff, J.) (consulting jury instructions from prior trial to determine facts established by criminal conviction).

The trial court's instructions explained that an "essential element" of all of the substantive fraud counts against Gilbertson was that he participated in a scheme to "manipulate[] the price of shares of Dakota Plains stock during the first 20 days of trading following the

reverse merger in order to increase the stock's trading price."  Kelley Decl. Ex. 2 Instr. No. 16; *see also id.* Instr. No. 26 (scheme "to artificially inflate and manipulate the price of shares of Dakota Plains").  The court further instructed the jury that it had to find that Gilbertson "acted with the intent to defraud."  *Id.* Instr. Nos. 16, 26.

Given those instructions, the jury could not have convicted Gilbertson on any of the substantive fraud counts without first finding that the government had proven that Gilbertson participated in the stock-price manipulation alleged in the indictment and that he acted with scienter.  Those findings were necessary to the verdict.

## II.   THE COURT SHOULD PRECLUDE GILBERTSON FROM DISPUTING FACTS ESTABLISHED AT HIS CRIMINAL TRIAL

Because Gilbertson's criminal conviction collaterally estops him from relitigating whether he knowingly participated in the manipulation of Dakota Plains' stock price, Plaintiff intends to seek an instruction from this Court directing the jury that it must accept those facts as true.  In the meantime, the Court should enter an order in limine precluding Gilbertson from introducing any evidence or argument, including any expert testimony, that would be contrary to those established facts.[1]

Evidence from Gilbertson on those issues would be both irrelevant and prejudicial.  If the Court plans to instruct the jury that it must accept that Gilbertson knowingly participated in stock-price manipulation, nothing Gilbertson could say disputing his complicity would have the slightest relevance to any disputed issue in the case.  *See* Fed. R. Evid. 401(b) (evidence must be "of consequence in determining the action" to be relevant).  Such evidence would also be highly

---

[1] Gilbertson has served an expert report from a former equity and options trader, Lawrence A. Pines, who disputes whether anyone manipulated the price of Dakota Plains stock.  The Court should preclude Gilbertson from offering any testimony from Mr. Pines that is inconsistent with Gilbertson's criminal conviction.

prejudicial.  It would risk misleading the jury into thinking that those issues remain in dispute as to Gilbertson – and at a minimum, inject needless confusion into the case.  Fed. R. Evid. 403.

Courts have therefore regularly forbidden parties from presenting evidence or arguments disputing issues that were previously finally resolved in prior litigation.  *See, e.g.*, *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 Civ. 7488 (CM), 2019 WL 6242128, at *6 (S.D.N.Y. Aug. 2, 2019) (barring party from making arguments disputing previously decided issue); *In re Rodrigues*, No. 18-20095 (JJT), 2019 WL 2385799, at *2 (Bankr. D. Conn. June 4, 2019) (noting that evidence on issues subject to collateral estoppel would be "patently improper"); *D'Agostino v. Hous. Auth. of City of Waterbury*, No. 3:05CV01057 PCD, 2007 WL 274531, at *2, *4 (D. Conn. Jan. 29, 2007) (barring evidence and testimony on previously decided issues).  The same concerns justify a similar order here.

The risk that Gilbertson might otherwise try to inject improper argument or evidence into the case is particularly acute.  Judge Pauley previously admonished Gilbertson for attempting to relitigate issues from his criminal trial in the summary judgment proceedings.  Responding to Gilbertson's argument that he traded in Dakota Plains' shares merely "to diversify his equity holdings," Judge Pauley wrote:  "Given that Gilbertson provided this testimony while in prison for those very trades, his shameless testimony strains credulity."  Mem. & Order Denying Sum. J. at 29 (Dkt. 387).  The Court should not permit Gilbertson to make similarly shameless arguments to the jury at trial.

Finally, excluding this evidence would streamline and focus the trial on the disputed issues.  There is no indication that any of the other Defendants plans to dispute that the stock-price manipulation occurred (as opposed to disputing their knowledge of, or participation in, the manipulation).  Even if the other Defendants sought to dispute that fact, the Court should exclude

the evidence under Rule 403.  Given that a federal jury has already determined beyond a reasonable doubt that Gilbertson participated in stock-price manipulation, and that finding is binding on Gilbertson himself, it would confuse the jury and waste time for other Defendants to dispute whether the manipulation actually occurred.  Precluding all Defendants from disputing that the stock-price manipulation occurred would focus the jury's attention on the issue that actually matters: the extent of each Defendant's knowledge and role in the fraud.

## CONCLUSION

The Court should preclude Gilbertson from presenting any arguments or evidence, including any expert testimony, disputing either that he participated in the manipulation of Dakota Plains' stock price or that he did so with scienter.

January 17, 2022                                  Respectfully submitted,

                                                  /s/ Steven F. Molo
Solomon B. Cera                                   Steven F. Molo
Pamela A. Markert                                 Robert K. Kry
Kenneth A. Frost                                  Mark W. Kelley
CERA LLP                                          Alexandra C. Eynon
595 Market Street, Suite 1350                     MOLOLAMKEN LLP
San Francisco, CA 94105                           430 Park Avenue, 6th Floor
(415) 777-2230                                     New York, NY  10022
                                                  (212) 607-8170
                                                  smolo@mololamken.com

*Attorneys for Plaintiff*
*and All Others Similarly Situated*