UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JON D. GRUBER, Individually and on Behalf of all Others Similarly Situated,<br><br>      Plaintiff,<br><br>   v.<br><br>RYAN R. GILBERTSON, et al.,<br><br>      Defendants. | No. 1:16-cv-09727-JSR<br><br>Hon. Jed S. Rakoff |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE DEFENDANTS FROM ASSERTING ADVICE-OF-COUNSEL DEFENSE**

Solomon B. Cera
Pamela A. Markert
Kenneth A. Frost
CERA LLP
595 Market Street, Suite 1350
San Francisco, CA 94105
(415) 777-2230

Steven F. Molo
Robert K. Kry
Mark W. Kelley
Alexandra C. Eynon
MOLOLAMKEN LLP
430 Park Avenue, 6th Floor
New York, NY 10022
(212) 607-8170
smolo@mololamken.com

*Attorneys for Plaintiff
and All Others Similarly Situated*

# **TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

I.     James Sankovitz ............................................................................................................ 2

II.    Faegre Drinker Biddle & Reath LLP ............................................................................ 4

III.   McKenna Long & Aldridge LLP .................................................................................. 6

ARGUMENT ........................................................................................................................... 7

I.     Defendants' Reliance on Conflicted Counsel Precludes an Advice-of-Counsel Defense ........................................................................................................................... 7

II.    Defendants Asserted Privilege over Relevant Communications ................................ 10

III.   The Court Should Exclude Evidence Relating to Counsel's Advice ............................ 12

CONCLUSION ...................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arista Recs. LLC v. Lime Grp. LLC*,
    No. 06-cv-5936 KMW, 2011 WL 1642434 (S.D.N.Y. Apr. 20, 2011) .................................10

*Arthur Lipper Corp. v. SEC*,
    547 F.2d 171 (2d Cir. 1976) ............................................................................................7, 8

*C.E. Carlson, Inc. v. SEC*,
    859 F.2d 1429 (10th Cir. 1988) ...........................................................................................7

*In re Grand Jury Proc.*,
    219 F.3d 175 (2d Cir. 2000) ..............................................................................................10

*Papilsky v. Berndt*,
    No. 71-cv-2534, 1976 WL 792 (S.D.N.Y. June 24, 1976) ..............................................8, 9

*In re Reserve Fund Sec. & Derivative Litig.*,
    09-cv-4346 PGG, 2012 WL 4774834 (S.D.N.Y. Sept. 12, 2012) ..................................7, 10

*SEC v. Lek Sec. Corp.*,
    No. 17-cv-1789 (DLC), 2019 WL 5703944 (S.D.N.Y. Nov. 5, 2019) ...........................10, 12

*SEC v. Melchior*,
    No. 90-C-1024J, 1993 WL 89141 (D. Utah Jan. 14, 1993) .................................................9

*SEC v. O'Meally*,
    No. 06-cv-6483 (LTS) (RLE), 2010 WL 3911444 (S.D.N.Y. Sept. 29, 2010) .....................7

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991) ............................................................................................10

**Rules**

Fed R. Evid. 403 ...........................................................................................................................12

**Other Authorities**

ABA Model Rules of Prof'l Conduct R. 1.7 (2020) .......................................................................9

# INTRODUCTION

During the short and troubled existence of Dakota Plains Holdings, Inc. ("Dakota Plains" or the "Company"), the Company and its founders, Defendants Michael L. Reger and Ryan R. Gilbertson, employed a succession of lawyers that included attorney James R. Sankovitz as well as the law firms Faegre Drinker Biddle & Reath LLP (formerly Faegre & Benson LLP and then Faegre Baker Daniels LLP) ("Faegre") and McKenna Long & Aldridge LLP ("McKenna"). Defendants have made clear that they will assert at trial that they relied on advice from those lawyers to bless the actions they took while perpetrating a fraud on public investors. The Court should not permit them to do so.

First, Defendants cannot demonstrate that their counsel provided disinterested advice – a necessary requirement for any advice-of-counsel defense. At the same time Sankovitz and Faegre were advising Dakota Plains about the propriety of the Company's transactions with Reger and Gilbertson, those same attorneys were also acting as longtime counsel to Reger and Gilbertson and the entities they controlled – a blatant conflict of interest of which the Company's officers and directors (among the Defendants here) were well aware. Moreover, Sankovitz suffered from an even more debilitating conflict. Defendants' Statement of Facts describes Sankovitz as a "business partner" of Reger and Gilbertson. Eynon Decl. Ex. 4 ¶3. Alongside Reger and Gilbertson, he invested in Dakota Plains stock and purchased the Dakota Plains notes at the center of Defendants' fraud. Sankovitz thus had a personal financial interest in approving the transactions necessary for Reger and Gilbertson to monetize their fraud and to conceal information from the public that could have derailed their enterprise. No reasonable person could believe that a lawyer could give disinterested advice in such circumstances.

Second, Defendants have withheld documents from those lawyers on privilege grounds. It is well-established that a defendant cannot assert an advice-of-counsel defense while at the same

time shielding the actual contents of the advice from scrutiny by withholding communications on the same subject-matter. Privilege logs make clear that Defendants have done precisely that.

Allowing Defendants to justify their conduct based on advice from their lawyers in these circumstances would seriously mislead the jury. That risk is particularly acute in a case like this where much of the "advice" consists of Defendants' own uncorroborated assertions about what their lawyers told them. The Court should preclude Defendants from offering any evidence relating to their communications with counsel and the conduct of their counsel at trial.

## BACKGROUND

### I. James Sankovitz

Sankovitz was a longtime business partner of Reger and Gilbertson. Eynon Decl. Ex. 4 ¶3. Gilbertson, Reger, and Sankovitz were known as the "three amigos" and were involved in a multitude of other ventures together. Mem. Order Denying Sum. J. at 25 n.2 (Dkt. 387).

Sankovitz initially held the title of general counsel of Dakota Plains. Defs. Statement of Undisputed Material Facts ¶8 (Dkt. 327) ("Defs. SUMF"); *see also* Eynon Decl. Ex. 1 (written action of the board electing Sankovitz secretary and general counsel). He "played a very active role in . . . all aspects of the company," including the reverse merger by which Dakota Plains became a publicly traded company. Eynon Decl. Ex. 2 at 184:4-14. Around the time of that public listing, Sankovitz gave up the title of general counsel, although he continued to be involved in the Company's legal decisions as a "consultant" through an LLC he controlled. *Id.* at 73:15-22, 182:18-183:24; *see also* Eynon Decl. Ex. 3 at 139, 142 (Sankovitz's "main role was as the attorney for Dakota Plains"). In his capacity as general counsel for the Company, Sankovitz wrote himself the lucrative contract for that consulting arrangement. Eynon Decl. Ex. 2 at 185:8-11; Eynon Decl. Ex. 3 at 141.

At the same time Sankovitz was advising the Company, he was also Reger's and Gilbertson's longtime business associate and lawyer. Along with Reger and Gilbertson, Sankovitz was a significant stockholder in Dakota Plains, owning 1.8 million shares through his personal investment vehicle, 1242 Investments, LLC. Eynon Decl. Ex. 5. Sankovitz served as general counsel, COO, or both in Reger's and Gilbertson's other ventures, including Northern Oil and Gas, Great Plains Sand, and Plains Energy Investments. Eynon Decl. Ex. 6 at 50:1-13; 73:12-17; Eynon Decl. Ex. 7 at 62:7-15. Sankovitz also represented Gilbertson personally. Eynon Decl. Ex. 7 at 58:5-14. Dakota Plains was well aware of those ties. CEO Craig McKenzie described Sankovitz as the "key implementer for when Mike and Ryan were starting up companies or doing . . . ventures." Eynon Decl. Ex. 8 at 114:5-25; *see also* Eynon Decl. Ex. 2 at 40:24-41:9 (Sankovitz "was a part of all the companies that Mike and Ryan formed").

Sankovitz had a direct role in the disputed financial transactions at the center of this case. Alongside Reger and Gilbertson, Sankovitz purchased Dakota Plains Senior Promissory Notes through an LLC he controlled. Eynon Decl. Ex. 9 (February 2011 subscription agreement signed by Sankovitz). Sankovitz then negotiated with Gilbertson and Faegre over the conversion of those Senior Promissory Notes into Consolidated Notes, helping craft the "Additional Payment Provision" that promised lucrative payouts to noteholders based on the Company's stock price during the first 20 days of trading. Eynon Decl. Ex. 2 at 112:9-18; Eynon Decl. Ex. 10 at 3 (email describing discussion of APP with Sankovitz). As a result, Sankovitz acquired a direct financial stake in the Company's public listing – one that paid out handsomely after Gilbertson manipulated the stock price to trigger massive bonus payments under the notes.

Reger and Gilbertson apparently intend to rely at trial on Sankovitz's purported legal advice. Reger, for example, has claimed that he relied on Sankovitz's advice when he concealed

his ownership of more than 5% of Dakota Plains' stock through custodial accounts he controlled. Eynon Decl. Ex. 6 at 208:10-209:20 (claiming that Sankovitz told him that "if the custodians were at different addresses, they didn't aggregate to the same beneficial ownership"). Nonetheless, Defendants have withheld on privilege grounds various communications with Sankovitz that are relevant to these issues. *See, e.g.*, Eynon Decl. Ex. 11 (Reger Privilege Log) at P001 (withholding communication with Sankovitz concerning Reger's equity); Eynon Decl. Ex. 12 (redacting Claypool's notes concerning communications with Sankovitz and Faegre about "shareholder issues").

## II.    Faegre Drinker Biddle & Reath LLP

To add an air of legitimacy to their dealings with Dakota Plains, the "three amigos" hand-picked a law firm, Faegre, to represent the Company. Eynon Decl. Ex. 7 at 29:1-25; Eynon Decl. Ex. 2 at 134:23-136:7. Faegre blessed a series of transactions in which the Company's interests were adverse to Reger's and Gilbertson's interests, including the Consolidated Notes and their Additional Payment Provision that left Dakota Plains owing tens of millions of dollars to Reger and Gilbertson after the Company went public. Defs. SUMF ¶ 31.

This "outside" counsel was, in reality, another insider that was already thoroughly involved in Reger's and Gilbertson's other business ventures. Faegre served as counsel to several Reger and Gilbertson companies, including Northern Oil and Gas, Voyager Oil and Gas, and Great Plains Sand. Eynon Decl. Ex. 7 at 29:1-32:1. Reger and Gilbertson also worked with Faegre to form their private investment vehicle, the Total Depth Foundation, which held a portion of their Dakota Plains stock. *Id.* at 53:17-54:2; Eynon Decl. Ex. 13 (chart showing custodial accounts). Faegre represented Reger and Gilbertson in their individual capacities during the same period as well. Eynon Decl. Ex. 2 at 331:21-332:25 (Faegre obtained a restraining order on behalf of Reger); Eynon Decl. Ex. 7 at 85:22-86:18, 87:2-11 (Faegre represented Gilbertson in individual capacity).

By blessing transactions for the Company at the same time it was representing the Company's counterparties Reger and Gilbertson, Faegre labored under an obvious conflict of interest. Longstanding Dakota Plains shareholders became so concerned that they complained about the conflict in an April 2013 letter to Faegre and the Company:

> Finally, I want to bring to your attention that I understand Michael Reger, CEO of Northern Oil and Gas, may be one of the note holders who may have benefitted from the note transactions described above. Your website biography indicates that you represent Northern Oil and Gas. . . . Because Mr. Reger may have received a substantial benefit from the subject loan transactions, at the expense of the Company, it appears that he and the Company may be materially adverse to one another. ***If your firm represents both the Company and Mr. Reger or his company under these circumstances, that may of course be a prohibited conflict of interest.***

Eynon Decl. Ex. 21 (emphasis added). Despite those concerns, Faegre continued to work for Dakota Plains. *See, e.g.*, Eynon Decl. Ex. 14 at 2 (2014 letter referring to Faegre as "the Company's lawyers").

Defendants apparently intend to rely on Faegre's advice with respect to several key transactions, including the consolidation of the notes and the negotiation of the terms of the Additional Payment Provision, as well as the SEC filings that omitted Reger's and Gilbertson's beneficial ownership of over 5% of Dakota Plains shares. Defs. SUMF ¶31 ("The Board relied on the Company's outside counsel, Faegre, . . . to advise it during [the process of consolidating the notes]."); *id.* ¶36 (Faegre was involved "in developing, drafting, reviewing, and approving the filing of the Super-8K"); Eynon Decl. Ex. 2 at 112:9-14 (Sankovitz and Faegre drafted the APP). Nonetheless, as with Sankovitz, Defendants have withheld a number of communications with Faegre that are relevant to those issues. *See, e.g.*, Eynon Decl. Ex. 15 (Claypool Redaction Log); Eynon Decl. Ex. 16 at 17 (redacting Claypool's notes concerning communications with Faegre about Additional Payment Provision); Eynon Decl. Ex. 17 (same); Eynon Decl. Ex. 12 (redacting

5

Claypool's notes concerning communications with Sankovitz and Faegre about "shareholder issues").

### III.     McKenna Long & Aldridge LLP

In 2013, after shareholders began raising concerns about the transactions at the center of the fraud in this case, Dakota Plains hired another law firm, McKenna, to conduct an internal investigation. Defendant James Thornton had formerly been a partner at that firm. Eynon Decl. Ex. 22 at 16:2-7. McKenna found that there was "likely some improper activity" related to the Company's stock. Eynon Decl. Ex. 18 at 8. But the firm apparently concluded that the information was too inconclusive to require disclosure.

The director and officer defendants intend to rely on McKenna's advice to show that they conducted a reasonable investigation but were unable to uncover any wrongdoing. Defs. SUMF ¶ 50 ("The Company retained the law firm of McKenna Long & Aldridge . . . to perform an internal investigation of the stock trading . . . . These investigations were both inconclusive . . . ."). As with Sankovitz and Faegre, however, Defendants have withheld many relevant communications with McKenna, claiming they are privileged. Eynon Decl. Ex. 19 (redacting Claypool's notes concerning communications with McKenna about "promissory notes and threatened legal action by shareholders"); Eynon Decl. Ex. 20 (Baker Hostetler Schedule of Inadvertently Produced Documents) (clawing back numerous communications with McKenna relating to the shareholder complaints (Baker0093818-93822, Baker00093839, Baker00093840, Baker00094037, Baker00094042, Baker00094043, Baker00095454, Baker00095458, Baker00095462) and the promissory notes (Baker00034499, Baker00034609, Baker00034616, Baker00034618, Baker00034644, Baker00036104)).

**ARGUMENT**

Defendants cannot present a valid advice-of-counsel defense at trial, both because they relied on obviously conflicted counsel and because they withheld relevant communications on privilege grounds. The Court should accordingly preclude Defendants from offering any evidence relating to those attorney communications at trial.

**I.  Defendants' Reliance on Conflicted Counsel Precludes an Advice-of-Counsel Defense**

Defendants cannot invoke an advice-of-counsel defense because they cannot establish one of the basic elements necessary to establish that defense: that the counsel they consulted were "in a position to give petitioners wholly disinterested advice." *Arthur Lipper Corp. v. SEC*, 547 F.2d 171, 181-82 (2d Cir. 1976). "[I]n order to present an advice of counsel defense . . . defendant[s] must demonstrate that the attorney [they] consulted was 'disinterested and independent.'" *In re Reserve Fund Sec. & Derivative Litig.*, No. 09-cv-4346 (PGG), 2012 WL 4774834, at *4 (S.D.N.Y. Sept. 12, 2012) (quoting *SEC v. O'Meally*, No. 06-cv-6483 (LTS) (RLE), 2010 WL 3911444, at *4 (S.D.N.Y. Sept. 29, 2010)); *see also C.E. Carlson, Inc. v. SEC*, 859 F.2d 1429, 1436 (10th Cir. 1988). Defendants cannot demonstrate that either Sankovitz or Faegre was "disinterested and independent" here. Both Sankovitz and Faegre labored under obvious conflicts of interest, and Defendants could not reasonably have believed that counsel was giving disinterested advice.

Courts have rejected the advice-of-counsel defense in similar circumstances. In *Arthur Lipper*, the Second Circuit rejected an advice-of-counsel defense to a claim for improper commission payments where the same lawyer represented both the defendant broker-dealer that received the commissions and one of the funds that paid the commissions. 547 F.2d at 182. Because the lawyer represented parties on both sides of the transaction, "he was not in a position to give petitioners wholly disinterested advice and petitioners could not have reasonably have

7

thought he was." *Id.*  The lawyer "was counsel for [the broker-dealer] and his primary concern lay, as petitioners must have known, in promoting its interests." *Id.*

Similarly, in *Papilsky v. Berndt*, No. 71-cv-2534, 1976 WL 792 (S.D.N.Y. June 24, 1976), the court held that a mutual fund could not rely on advice it received about whether to recapture broker commissions where the same law firm advised both the mutual fund that paid the commissions and the advisor that received them.  *Id.* at *4.  The advice-of-counsel defense failed because the firm "was counseling people with contrary interests" and the mutual fund was "excessively willing" to rely on counsel's advice without further inquiry despite "numerous indications from authoritative sources that counsel's advice should not have been treated as dispositive." *Id*. at *18.

The conflicts in this case are even more pronounced.  Sankovitz and Faegre – Reger's and Gilbertson's hand-picked lawyers – advised Dakota Plains and the director and officer defendants on multiple issues where the Company's interests were adverse to Reger's and Gilbertson's.  Those issues included the negotiation of the Consolidated Notes and their Additional Payment Provision that left the Company obligated but unable to pay tens of millions of dollars to Reger and Gilbertson.  They also allegedly included counsel's advice over whether the Company should disclose Reger's and Gilbertson's ownership and control – an issue where the Company's interest in strict compliance with disclosure requirements clashed with Reger's and Gilbertson's strong desire to keep their role secret so they could take the Company public, cash in on their notes, and engage in insider selling.

Sankovitz and Faegre could not reasonably have been expected to give impartial advice on those topics.  In addition to advising Dakota Plains, Sankovitz and Faegre also had longstanding engagements with Reger and Gilbertson.  *See* pp. 2-6, *supra*.  They represented Reger's and

8

Gilbertson's other companies as well as Reger and Gilbertson themselves at the same time they represented Dakota Plains.  *Id.*  Those representations posed a prohibited conflict of interest, even if they involved unrelated subject-matters.  *See* ABA Model Rules of Prof'l Conduct R. 1.7 cmt. 6 (2020) ("[A]bsent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, ***even when the matters are wholly unrelated***." (emphasis added)); *id.* cmt. 7 (clients are directly adverse where, for example, "a lawyer is asked to represent the seller of a business in negotiations with a buyer represented by the lawyer, not in the same transaction but in another, unrelated matter").  Sankovitz and Faegre could not reasonably be expected to counsel Dakota Plains and its officers and directors to take a course of action that would be contrary to Reger's and Gilbertson's interests.  It is therefore no surprise that shareholders expressed concerns to the Company about the "prohibited conflict of interest" that may "of course" arise if lawyers represented both Dakota Plains as well as Reger's and Gilbertson's other business interests.  Eynon Decl. Ex. 21.

Sankovitz's conflicts of interest were even more egregious.  Sankovitz was concededly Reger's and Gilbertson's "business partner."  Eynon Decl. Ex. 4 ¶ 3.  And as a fellow noteholder in Dakota Plains, Sankovitz stood to profit directly from the transactions he orchestrated for Reger and Gilbertson.  Because Sankovitz would reap the benefits of the Additional Payment Provision only if Dakota Plains successfully went public, he had every incentive to avoid public disclosures that could derail a successful public listing – such as the disclosure of Reger's and Gilbertson's secret ownership and control.  That personal financial stake in a public listing was a conflict of interest that prevented Sankovitz from giving disinterested advice about disclosure obligations to ***any*** of the parties – Reger, Gilbertson, or the Company.  *See SEC v. Melchior*, No. 90-cv-1024J, 1993 WL 89141, at *20 (D. Utah Jan. 14, 1993) ("Defendants cannot claim to reasonably rely on

9

the advice of counsel where counsel has a pecuniary interest in the offering and thus participated in the allegedly violative scheme."). Defendants cannot claim to have relied on Sankovitz's independent legal judgment when Sankovitz was a fellow traveler in, and beneficiary of, their fraudulent scheme.

## II.  Defendants Asserted Privilege over Relevant Communications

Defendants may not pursue an advice-of-counsel defense for a second reason as well: They withheld relevant communications on privilege grounds. By failing to make full disclosure in response to Plaintiff's discovery demands, Defendants waived their advice-of-counsel defense.

It is well-established that "a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." *In re Grand Jury Proc.*, 219 F.3d 175, 182 (2d Cir. 2000). A party may not use attorney-client privilege "as a shield and a sword." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). Parties who fail to make full disclosure of relevant privileged communications during discovery therefore waive the advice-of-counsel defense at trial. *See Arista Recs. LLC v. Lime Grp. LLC*, No. 06-cv-5936 (KMW), 2011 WL 1642434, at *2 (S.D.N.Y. Apr. 20, 2011) (granting motion to preclude good-faith defense based on defendants' invocation of privilege); *SEC v. Lek Sec. Corp.*, No. 17-cv-1789 (DLC), 2019 WL 5703944, at *3 (S.D.N.Y. Nov. 5, 2019) (failure to disclose documents during discovery precluded advice-of-counsel defense).

That is precisely what Defendants have done here. Privilege logs produced in this case show that Defendants withheld numerous documents and communications with Sankovitz, Faegre, and McKenna that relate to the same topics on which Defendants now seek to offer an advice-of-counsel defense. For instance, Defendants withheld communications with Sankovitz and other attorneys concerning their shareholdings in Dakota Plains. Eynon Decl. Ex. 11 (Reger Privilege

10

Log) at P001 (withholding communication with Sankovitz concerning Reger's equity).  They withheld communications with Faegre and other attorneys concerning both the Additional Payment Provision the firm helped negotiate and the Company's disclosure obligations.  Eynon Decl. Ex. 16 (redacting Claypool's notes concerning communications with Faegre about Additional Payment Provision); Eynon Decl. Ex. 17 (same); Eynon Decl. Ex. 12 (redacting Claypool's notes concerning communications with Sankovitz and Faegre about "shareholder issues"); Eynon Decl. Ex. 19 (redacting Claypool's notes concerning communications with McKenna about "promissory notes and threatened legal action by shareholders").  Dakota Plains clawed back scores of communications with McKenna relating to the internal investigation.  Eynon Decl. Ex. 20 (Baker Hostetler Schedule of Inadvertently Produced Documents) (clawing back numerous communications relating to the shareholder complaints (Baker0093818-93822, Baker00093839, Baker00093840, Baker00094037, Baker00094042, Baker00094043, Baker00095454, Baker00095458, Baker00095462) and the promissory notes (Baker00034499, Baker00034609, Baker00034616, Baker00034618, Baker00034644, Baker00036104)).

      These examples are likely only the tip of the iceberg.  Defendants' privilege logs also show that documents were withheld but fail to provide information sufficient to identify the subject.  Eynon Decl. Ex. 15 (Claypool Privilege Log) at 203-239 (withholding Claypool's notes with only the annotation "Attorney-Client Privileged").  The Court should not permit Defendants to avoid their disclosure obligations in connection with an advice-of-counsel defense by using vague or nonexistent privilege log descriptions that make it impossible to determine whether they have withheld material that should have been disclosed.

Defendants may not selectively disclose legal advice that supports their case while holding back critical facts that undermine their claims. By asserting privilege over relevant documents in discovery, Defendants waived the right to pursue an advice-of-counsel defense.

### III. The Court Should Exclude Evidence Relating to Counsel's Advice

Because Defendants have failed to satisfy the requirements for a valid advice-of-counsel defense, the Court should preclude them from introducing evidence at trial that is relevant to such a defense. That includes any evidence of communications with Sankovitz, Faegre, or McKenna relating to the disputed issues in this case. Failing to exclude that evidence now would mislead the jury and cause irreparable prejudice to Plaintiff's case.

In the absence of a valid advice-of-counsel defense, "references to counsel's communications are not relevant . . . and should be excluded as well pursuant to Rule 403." *Lek Sec. Corp.*, 2019 WL 5703944, at *4. Such evidence lacks probative value and would "mislead the jury by suggesting that the . . . Defendants did not have an independent obligation to ensure their own compliance with federal securities laws." *Id.*

The Court should address this issue through an order in limine at this time. Once the jury has been exposed to the claim that Defendants were merely complying with their lawyers' guidance, it would be very difficult to unring that bell, even if the Court later refused to give an advice-of-counsel instruction at the end of trial. There is too great a risk that the jury will attach unwarranted weight to Sankovitz's and Faegre's supposed opinions about what information must be included in SEC filings, or McKenna's opinions about what the firm's internal investigation showed. That evidence would prejudice Plaintiff by discouraging jurors from making an independent determination of whether Defendants complied with their legal obligations.

The risks of confusion and prejudice are particularly acute in this case. Defendants have not listed Sankovitz or any of the Faegre attorneys on their trial witness list. Thus, it appears that

12

Defendants' advice-of-counsel defense will consistent largely of Defendants themselves simply asserting to the jury, without any corroboration, that their lawyers told them what they were doing was okay. Plaintiff will be deprived of the opportunity both to cross-examine the lawyers who allegedly gave the advice and to impeach the witness with written evidence of what the lawyers actually said. The Court should not permit Defendants to mislead the jury in that manner.

## CONCLUSION

The Court should preclude Defendants from offering any evidence relating to their communications with counsel or other evidence relevant to an advice-of-counsel defense.

January 17, 2022

Respectfully submitted,

/s/ Steven F. Molo

| | |
|---|---|
| Solomon B. Cera | Steven F. Molo |
| Pamela A. Markert | Robert K. Kry |
| Kenneth A. Frost | Mark W. Kelley |
| CERA LLP | Alexandra C. Eynon |
| 595 Market Street, Suite 1350 | MOLOLAMKEN LLP |
| San Francisco, CA 94105 | 430 Park Avenue, 6th Floor |
| (415) 777-2230 | New York, NY  10022 |
| | (212) 607-8170 |
| | smolo@mololamken.com |

*Attorneys for Plaintiff
and All Others Similarly Situated*