UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JON D. GRUBER, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

RYAN R. GILBERTSON, et al.,

Defendants.

No. 1:16-cv-09727-JSR

Hon. Jed S. Rakoff

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF SUNTRUST BANK'S LOAN AND DUE DILIGENCE**

Solomon B. Cera
Pamela A. Markert
Kenneth A. Frost
CERA LLP
595 Market Street, Suite 1350
San Francisco, CA 94105
(415) 777-2230

Steven F. Molo
Robert K. Kry
Mark W. Kelley
Alexandra C. Eynon
MOLOLAMKEN LLP
430 Park Avenue, 6th Floor
New York, NY 10022
(212) 607-8170
smolo@mololamken.com

*Attorneys for Plaintiff and All Others Similarly Situated*

**TABLE OF CONTENTS**

Page

INTRODUCTION ..... 1

BACKGROUND ..... 1

ARGUMENT ..... 3

CONCLUSION ..... 7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bank of China, N.Y. Branch v. NBM, LLC*,
359 F.3d 171 (2d Cir. 2004)....................4

*Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
860 F. Supp. 2d 251 (S.D.N.Y. 2012)....................5, 6

*In re: Dakota Plains Holdings, Inc.*,
No. 16-43711 (Bankr. D. Minn.) ....................3

*Pac. Select Fund v. Bank of N.Y. Mellon*,
No. SACV10198, 2012 WL 12886495 (C.D. Cal. July 2, 2012) ....................6

*United States v. Garcia*,
413 F.3d 201 (2d Cir. 2005)....................4

**Statutes**

15 U.S.C. § 78j ....................4

**Rules**

Fed. R. Civ. P. 30(b)(6)....................2

Fed. R. Evid. 401 ....................3

Fed. R. Evid. 701 ....................4

Fed. R. Evid. 701(c)....................4

Fed. R. Evid. 702 ....................4

Fed. R. Evid. 702(a)....................4

## INTRODUCTION

This case concerns the fraudulent concealment of the secret ownership and control of Dakota Plains Holdings, Inc. ("Dakota Plains" or the "Company") by Defendants Michael Reger and Ryan Gilbertson, whose misconduct drove Dakota Plains into bankruptcy. One victim of that fraud was a lender called SunTrust, whose lending personnel were left in the dark not only as to Reger's and Gilbertson's true relationship with Dakota Plains, but also as to its own employee's relationship with Reger and the Company. SunTrust lost millions as a result of the Company's descent into bankruptcy. It was the largest creditor of the Dakota Plains bankruptcy estate.

Defendants apparently intend to introduce evidence at trial relating to SunTrust's decision to loan substantial sums to Dakota Plains, including the due diligence SunTrust performed, testimony from a SunTrust corporate representative, and the fact of the loan itself. The point of that evidence is apparently to try to show that Dakota Plains was engaged solely in legitimate business activities and was not created to defraud the Company's public investors.

That evidence is irrelevant. SunTrust's loan sheds no light on whether Defendants concealed material information and thereby defrauded the purchasers of Dakota Plains common stock who make up the Class. In any event, SunTrust was privy to more and different information, and applied a different risk framework, than Class members, who purchased their stock on the open market. And even if the evidence were marginally relevant, it should be excluded to avoid a mini-trial on whether SunTrust's due diligence and loan were infected by the same fraud that forms the basis of this lawsuit.

## BACKGROUND

The relationship between SunTrust and defendants Reger and Gilbertson goes way back. One of Reger's and Gilbertson's earlier ventures, Northern Oil and Gas, used the investment banking arm of SunTrust, called SunTrust Robinson Humphrey ("STRH"), to help with debt

offerings. Kelley Decl. Ex. 1 (listing SunTrust email addresses in internal circulation of drafts of Northern Oil and Gas offering). STRH also acted as a financial advisor to Dakota Plains. Kelley Decl. Ex. 2. Neil Dingmann, an STRH employee, was a "good friend" of Reger's and an early Dakota Plains investor. Kelley Decl. Ex. 3 at 327:15; Kelley Decl. Ex. 4. Dingmann was also involved in the promotion of Dakota Plains: He introduced Dakota Plains' CEO, defendant Gabriel Claypool, to a contact at Bloomberg TV, attended roadshows with the Company, and organized conference calls to discuss the Company's finances. Kelley Decl. Exs. 5, 6.

In late 2014, Dakota Plains sought outside funding, not only to help offset the massive debt it owed to Reger and Gilbertson as a result of the fraud at the heart of this case, but also to buy out one of its joint venture partners, World Fuel Services. SunTrust's banking division apparently performed due diligence before extending credit to Dakota Plains. However, the evidence demonstrates that SunTrust was misled. SunTrust's Rule 30(b)(6) witness, Katie Mendolera, testified that she did not know Dingmann had a relationship with Dakota Plains and "would be surprised" if Dingmann was in contact with senior management of Dakota Plains. Kelley Decl. Ex. 7 at 78:18-79:1. As far as Mendolera knew, SunTrust and STRH's relationship with Dakota Plains began only in 2014. *Id.* at 84:23-85:17. That information was clearly incorrect: STRH had a longstanding relationship with Dakota Plains, as explained above. *See* pp. 1-2, *supra*.

SunTrust also appears to have been misled during whatever due diligence it performed. SunTrust's diligence did not uncover anything about Reger's and Gilbertson's controlling role in Dakota Plains. Mendolera testified that she had not heard of Gilbertson until she was subpoenaed to testify in this lawsuit, and was unfamiliar with Reger's relationship with either Dakota Plains or SunTrust. Kelley Decl. Ex. 7 at 93:5-13; *id.* at 61:2-11; 69:7-19. That information would have

been critical to SunTrust's lending decision: Mendolera testified that "who owns the equity" in a company "is important to us" when deciding whether to extend credit. *Id.* at 113:6-12.

Mendolera also testified that she did not remember whether SunTrust knew that multiple shareholders had accused Dakota Plains of fraud in connection with the Company's securities offering in 2012. Kelley Decl. Ex. 7 at 96:21-23. She was not aware that the Company had suspicious trading activity in its opening days on the public market. *Id.* at 119:7-11. She was only able to speculate that allegations of fraud may have triggered an internal investigation at the Company. *Id.* at 95:20-96:19.

SunTrust ultimately loaned Dakota Plains $37.5 million and extended an additional $20 million in credit in December 2014. Kelley Decl. Ex. 8. Dakota Plains filed for bankruptcy two years later. *See In re Dakota Plains Holdings, Inc.*, No. 16-43711 (Bankr. D. Minn.). Dakota Plains' largest creditor, by far, was SunTrust, to which it owed over $63 million for "promissory notes and accrued finance costs and interest." *Id.* Dkt. 1-2 at 12 (Bankr. D. Minn. Dec. 26, 2016).

## ARGUMENT

Evidence of SunTrust's loan and due diligence should be excluded because it is irrelevant and would invite a mini-trial on the sufficiency of SunTrust's diligence.

First, the evidence is irrelevant. There is no "fact[] of consequence in determining the action" that SunTrust's lending decisions make any "more or less probable." Fed. R. Evid. 401. The evidence has no bearing on what information Defendants concealed from the open-market public investors who make up the Class. Whether Defendants defrauded Plaintiff and other investors by concealing Reger's and Gilbertson's ownership and control of Dakota Plains does not turn on the decisions of non-plaintiff banks acting under entirely different circumstances. Either SunTrust's due diligence failed, and SunTrust was ***also*** misled, or SunTrust discovered indicia of fraud through a due diligence process not available to public investors but chose to proceed with

its loan anyway – perhaps to prop up an important client of the bank's investment banking arm. That evidence cannot plausibly support any defenses to liability on Plaintiff's Section 10(b) claim.

Nor is the evidence relevant to damages or loss causation. Although Mendolera testified that, in her opinion, a decline in oil prices affected Dakota Plains' viability as a business, that testimony is clearly inadmissible as improper expert testimony. Defendants have not even attempted to lay a foundation for Mendolera to offer expert opinions on that subject. A lay witness like Mendolera may not offer testimony "based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701(c). The relationship between Dakota Plains' business, the Company's stock price, and the price of oil indisputably involves such expert matters. *See, e.g.*, *Bank of China, N.Y. Branch v. NBM, LLC*, 359 F.3d 171, 181 (2d Cir. 2004) (finding error in admission of lay witness testimony that "was not based entirely on [the witness's] perceptions" but instead relied on purported "experience and specialized knowledge"). If a witness's "opinion rests '***in any way***' upon scientific, technical, or other specialized knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701." *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005) (emphasis added). Defendants and Plaintiff have both already offered expert testimony on the reasons why Dakota Plains failed; Defendants cannot proffer an expert on a subject while also contending that a lay witness is qualified to opine on the same subject. Fed R. Evid. 701(c), 702(a).

The evidence would also waste time and cause distraction by inviting a mini-trial on the SunTrust due-diligence process. If Defendants introduced evidence of SunTrust's loan, Plaintiff would be forced to respond with evidence refuting the relevance of that loan, including evidence of the conflicted relationship between SunTrust and Reger, STRH's motivation and opportunity to encourage SunTrust to loan money to Dakota Plains to maintain that relationship, Dakota Plains'

failure to raise capital from other lenders or investors, the extent of the due diligence SunTrust performed, and the risk profile SunTrust applied when making the loan. The exploration of those issues would needlessly consume days of trial. Moreover, Mendolera claimed that the investment banking arm of SunTrust was walled off from the lending side. Kelley Decl. Ex. 7 at 86:22-87:10. That issue too would become a distracting sideshow if Plaintiff were forced to spend time debunking those assertions at trial.

What's more, much of the evidence relating to these issues is inconclusive. SunTrust's Rule 30(b)(6) witness was unsure of several critical details, such as whether SunTrust was aware of letters from investors accusing Dakota Plains of fraud, allegations of stock manipulation during the first 20 days of trading, the relationship between Dingmann, Reger, and Dakota Plains, and Dingmann's own investment in Dakota Plains stock. *See* Kelley Decl. Ex. 7 at 78:18-79:1, 84:23-85:17, 96:21-23, 119:7-11. Those uncertainties would confuse and distract the jury, reducing whatever probative value the evidence might have.

Courts have rejected similar evidence despite stronger arguments for admission. For example, in *Board of Trustees of AFTRA Retirement Fund v. JPMorgan Chase Bank, N.A.*, 860 F. Supp. 2d 251 (S.D.N.Y. 2012), a class of ERISA plaintiffs alleged that the defendant's purchase of certain securities breached its fiduciary duties. *Id. at* 258. The defendant sought to introduce evidence that other institutional investors had purchased similar securities from the same issuer. *Id.* The court noted that the other investors had "investment guidelines substantially similar" to the defendant and that the securities were not "meaningfully different." *Id.* But the court excluded the evidence because there was insufficient evidence of "the third-parties' due diligence efforts, respective risk tolerances, and the information available to them," and the "confusion and wasted time resulting from requiring a mini-trial on the prudence of every non-party investor . . . would

substantially outweigh any probative value." *Id.*; *see also Pac. Select Fund v. Bank of N.Y. Mellon*, No. SACV10198, 2012 WL 12886495, at *3 (C.D. Cal. July 2, 2012) (similar).

As in *Board of Trustees*, evidence of SunTrust's loan to Dakota Plains would invite a "mini-trial on the prudence" of SunTrust's lending decision. But the evidence of SunTrust's loan is even less relevant, because unlike in *Board of Trustees*, the standards SunTrust applied to determine whether to loan money to Dakota Plains were not "substantially similar" to the standards applied by Class members who purchased Dakota Plains common stock on the open market. And whereas the institutional investors in *Board of Trustees* had access to similar information, SunTrust had access to more and different information. Moreover, the issue is far more complex and distracting here, where Plaintiff would be forced to introduce evidence on many other sub-topics in response. The grounds for exclusion are therefore even stronger here than they were in *Board of Trustees*.

## CONCLUSION

For the foregoing reasons, the Court should exclude all evidence relating to SunTrust's due diligence and loan to Dakota Plains.

January 17, 2022

Respectfully submitted,

/s/ Steven F. Molo

Steven F. Molo
Robert K. Kry
Mark W. Kelley
Alexandra C. Eynon
MOLOLAMKEN LLP
430 Park Avenue, 6th Floor
New York, NY 10022
(212) 607-8170
smolo@mololamken.com

Solomon B. Cera
Pamela A. Markert
Kenneth A. Frost
CERA LLP
595 Market Street, Suite 1350
San Francisco, CA 94105
(415) 777-2230

*Attorneys for Plaintiff*
*and All Others Similarly Situated*