**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------- X

Jon D. Gruber, individually and on behalf of
all others similarly situated,

        Plaintiff,

    v.

Ryan R. Gilbertson, Michael L. Reger,
Gabriel G. Claypool, Craig M. McKenzie,
Timothy R. Brady, Terry H. Rust, Paul M.
Cownie, David J. Fellon, Gary L. Alvord, &
James L. Thornton,

        Defendants.

---------- X

Case No. 16-cv-9727-JSR

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EVIDENCE UNRELATED TO PLAINTIFF'S CLASS CLAIM**

## **TABLE OF CONTENTS**

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*,
   269 F.R.D. 252, 260 (S.D.N.Y. 2010), *aff'd sub nom. Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111 (2d Cir. 2014), *as amended* (Nov. 12, 2014), *certified question accepted sub nom. Commonwealth of Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co. Inc.*, 22 N.E.3d 187 (NY 2014) and *Commonwealth of Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 35 N.E.3d 481 (NY 2015), and *aff'd sub nom. Commonwealth of Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 814 F.3d 641 (2d Cir. 2016) ..................................................................................................................4

*In re Citigroup, Inc. Securities Litigation*,
   330 F. Supp. 2d 367, 375 (S.D.N.Y.2004)..................................................................................6

*Comcast Corp. v. Behrend*,
   569 U.S. 27, 31 (2013)................................................................................................................5

*Decker v. Massey–Ferguson, Ltd.*,
   681 F.2d 111, 115 (2d Cir.1982).................................................................................................6

*Desai v. Deutsche Bank Sec. Ltd.*,
   573 F.3d 931, 940-41 (9th Cir. 2009) .........................................................................................8

*In re Freddie Mac Sec. Litig.*,
   281 F.R.D. 174, 177 (S.D.N.Y. 2012) ........................................................................................3

*Intellivision v. Microsoft Corp.*,
   484 F. App'x 616, 621 (2d Cir. 2012) ........................................................................................4

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553, 562 (S.D.N.Y. 2014) ..................................................................................6

*Menaldi v. Och-Ziff Capital Mgt. Group LLC*,
   328 F.R.D. 86, 93-98 (S.D.N.Y. 2018).......................................................................................3

*New Hampshire v. Maine*,
   532 U.S. 742, 749 (2001)............................................................................................................4

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*,
   694 F. Supp. 2d 287, 303 (S.D.N.Y. 2010)................................................................................6

*Republic of Ecuador v. Chevron Corp.*,
  638 F.3d 384, 397 (2d Cir. 2011)..........................................................................................4

*Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het
  Kapitaal Van Saybolt Int'l B.V. v. Schreiber*,
  407 F.3d 34, 45 (2d Cir.2005)..............................................................................................4

**Other Authorities**

Fed. R. Evid. 401 ...........................................................................................................................7

Fed. R. Evid. 403 .......................................................................................................................6, 7

Fed. R. Evid. 404 ...........................................................................................................................6

Plaintiff's Section 10(b) claim proceeded for much of this case as a mash-up of multiple and inconsistent liability theories. The operative complaint alleges: (i) extensive misrepresentations, (ii) an alleged scheme to manipulate the market, and (iii) purported omissions. Plaintiff pursued all three theories equally in discovery and in opposition to dispositive motions. Plaintiff sought class certification, however, on only *one* of those theories—that of omissions. That was hardly surprising. Plaintiff migrated to an omissions theory at class certification to avail himself of the *Affiliated Ute* presumption of reliance that applies to an omissions case.

Notwithstanding the narrowed scope of the classwide claim, it is apparent from the parties' pre-trial exchanges that Plaintiff intends to present extensive evidence at trial—involving many witnesses and hundreds of exhibits—related to myriad matters arising before the Company even went public (on March 23, 2012), apparently in an attempt to prove a quite different claim—that the Company was founded, and operated for its entire history, in a fraud perpetrated by two Defendants and covered up by the remainder. This quite different claim, apparently based on a mix of alleged misrepresentations and scheme liability, extends well beyond purported omissions during the class period—the only Section 10(b) theory on which the Court certified the class.

Now is the time, before the needless presentation of irrelevant and prejudicial evidence, to limit the trial to the omissions theory on which Plaintiff was allowed to pursue class-based claims. Doing so now will dramatically reduce both the length of trial and the potential for unfair prejudice. Accordingly, Defendants move for an order limiting the evidence presented at trial to only that which is relevant to Plaintiff's omission theory of liability.

## BACKGROUND

Dakota Plains was founded in 2008, went public on March 23, 2012, and filed bankruptcy in December 2016; its shares were offered privately at prices ranging up to $4/share and, with the exception of the first several months of trading in 2012, traded publicly between approximately $4/share and $.01/share. The parties dispute virtually the entire eight-year history of the Company.

Plaintiff contends the Company was "founded in fraud" and involved self-dealing lasting a full eight years and encompassing virtually every aspect of the Company's operations, that the pinnacle of the fraud was a share price manipulation scheme that occurred nearly a year before the class representative first purchased shares, that the Company was at all times a worthless "zero value enterprise," and that the class accordingly is entitled to recover as damages its entire investment in the Company. Defendants contend, and will prove at trial, that the Company's history was one of good faith efforts and appropriate disclosure of material facts and that the Company's developmental arc was like that of many emerging companies at the time in the Bakken oil field, starting with investments by friends and family, later going public and, ultimately, collapsing along with the price of oil. Defendants will establish at trial that the alleged fraud, if any, was limited to a one-month period in 2012, after the Company went public via a reverse merger (and during which, as a criminal jury later found, one Defendant attempted to manipulate the share price), that the Company had years of legitimate commercial operations before and after that manipulation and was never worthless, that the Company at all times accurately disclosed its financial status, that the identity and shareholdings of the two founding Defendants had no bearing on the Company's financial performance, and that investors' losses were caused entirely by market and other factors.

One fact not in dispute is that Plaintiff purchased his shares in the Company long after the financial effect of the attempted manipulation was disclosed in the Company's public SEC filings.

Plaintiff asked the Court to certify the class on an omissions theory. (*See* Dkt. 161 at 21 ("The [Third Amended Complaint] established that defendants' fraud was based on material omissions.").) And the Court did so. (*See* Dkt. 253 at 16; Dkt. 387 at 31.) The Court agreed that Plaintiff's claims, including any with respect to scheme liability, are omissions-based because they focus entirely on the alleged omission that Defendants Reger and Gilbertson's involvement in the Company was not disclosed. (Dkt. 253 at 15.) In so convincing the Court, Plaintiff vigorously rejected any suggestion his claims involve misrepresentations or affirmative misrepresentation scheme liability, each of which would require proof of classwide reliance— presumably because Plaintiff cannot prove that the market for the Company's shares was efficient.[1] Indeed, Plaintiff has not offered any evidence or expert testimony on the issue. Instead, Plaintiff rested solely on *Affiliated Ute*, and its concomitant presumption of reliance, to avoid altogether the class-wide reliance requirement.

## ARGUMENT

Plaintiff's choice to proceed under *Affiliated Ute* has consequences. The most significant of which, and the focus of this motion, is that only evidence relevant to the omissions claim should be presented at trial. Having prevailed at class certification by convincing the Court that

---

[1] *See In re Freddie Mac Sec. Litig.*, 281 F.R.D. 174, 177 (S.D.N.Y. 2012) (stating class certification is available for misrepresentation theory claims only if plaintiff can establish a class-wide presumption of reliance through the 'fraud on the market' theory) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 241–42 (1988)); *Menaldi v. Och-Ziff Capital Mgt. Group LLC*, 328 F.R.D. 86, 93-98 (S.D.N.Y. 2018) (stating "classwide adjudication is possible only if reliance can be presumed" and that the *Basic* presumption applies to misrepresentation theory, whereas the *Affiliated Ute* presumption applies only to an omissions-theory claim).

3

this is an omissions case, Plaintiff cannot now seek to present evidence at trial that advances a separate theory he strategically abandoned at an earlier phase of the case. Put differently, Plaintiff is estopped from advancing such evidence at trial. *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 149 L.Ed.2d 968 (2001) ("judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase"); *Republic of Ecuador*, 638 F.3d at 397 (judicial estoppel "prevents a party from asserting a factual position clearly inconsistent with a position previously advanced by that party and adopted by the court in some manner" (internal quotation marks and ellipsis omitted)).[2]

Because Plaintiff is limited to advancing an omissions theory for the class, Plaintiff's trial evidence should match that liability theory. Such evidence should be limited to that related to material facts, not disclosed during the class period, that one or more Defendants had a duty to disclose. Evidence that relates to the theory that the Company "was founded in fraud,"[3] to

---

[2] On this point, the Second Circuit, like the Supreme Court, has recognized "that a prior inconsistent representation made in a prior phase of the same case can trigger judicial estoppel." *Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 621 (2d Cir. 2012) (summary order); *see also*, *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 45 (2d Cir.2005) (assuming arguendo that defendants took inconsistent positions in the first and second motions to dismiss in the same case, but concluding the earlier position was never adopted by the district court).

[3] The "founded in fraud" theory is akin to the short-lived "fraud created the market" theory. Courts in this circuit have roundly rejected such an approach to establishing class-wide reliance. *See Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, 269 F.R.D. 252, 260 (S.D.N.Y. 2010), *aff'd sub nom. Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111 (2d Cir. 2014), *as amended* (Nov. 12, 2014), *certified question accepted sub nom. Commonwealth of Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co. Inc.*, 24 N.Y.3d 1028, 22 N.E.3d 187 (2014), and *certified question answered sub nom. Commonwealth of Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 25 N.Y.3d 543, 35 N.E.3d 481 (2015), and *aff'd sub nom. Commonwealth of Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 814 F.3d 641 (2d Cir. 2016) (stating that "courts that have criticized the fraud-created-the-market doctrine have done so because, unlike cases where the fraud-on-the-market theory of reliance is applied, cases involving newly issued

alleged self-dealing during the nearly four years of the Company's existence as a private entity (before the class period) and even to the purported market manipulation scheme itself is not among those material facts.

None of the evidence Plaintiff apparently wishes to champion in his effort to establish this different theory of liability, one based on a pattern of fraud before the class period, conceivably could be relevant to whether Defendants failed to disclose material facts during the period in which shares were publicly traded. Evidence Plaintiff contends establishes "self-dealing" during the four years in which the Company was privately held, for example, is not relevant to a class-wide omissions claim spanning the following four-year period in which its shares were publicly traded. Given that the Company indisputably accurately reported all material financial information during that latter period—the only actionable period—such facts are not material. Nor did any Defendant have a duty to disclose them during the class period.

This includes evidence with respect to business decisions made when the Company was private, such as that two of the Defendants' fathers acted as the first officers and directors of the Company, that nevertheless those two Defendants really ran the Company, that the Company issued promissory notes in 2011 allegedly to fund a shareholder dividend, that those notes carried outsized interest and warrants, that later notes carried even more outsized terms, or that

---

securities lack an efficient market" and "[w]ithout an efficient market, it is not a fair presumption that an investor in a newly issued security necessarily relied on certain information when making that investment decision."). Moreover, a damages methodology which presumes liability based on such a theory is not sufficiently related to Plaintiff's omissions claim for that damages methodology fairly to be applied on a class-wide basis. *See Comcast Corp. v. Behrend,* 569 U.S. 27 (2013) (where plaintiffs proposed four theories of antitrust impact, and the district court accepted one theory of antitrust impact as capable of classwide proof and rejected the rest, the plaintiff was precluded from proceeding with a damages model that was not limited to the theory on which the class was certified). *Id*. at 31.

the Company's later officers and directors were friends or acquaintances of the founding Defendants.

Even were such conduct assailable as poor business decisions, or even a breach of fiduciary duty, it does not rise to the level of securities fraud, particularly because it occurred before the class period and the Company accurately disclosed all material facts during that class period. As the Second Circuit has observed, "Section 10(b) was not designed to regulate corporate mismanagement nor to prohibit conduct which does not involve manipulation or deception." *Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 115 (2d Cir.1982) (*citing Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 473, 479 (1977)); *see also In re Citigroup, Inc. Securities Litigation,* 330 F.Supp.2d 367, 375 (S.D.N.Y.2004) ("Plaintiffs' section 10(b) claim ... amounts to nothing more than a charge that [Defendant]'s business was mismanaged. . . . [A]llegations of mismanagement, even where a plaintiff claims that it would not have invested in an entity had it known of the management issues, are insufficient to support a securities fraud claim under section 10(b)."); *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 303 (S.D.N.Y. 2010) (Plaintiffs' "fundamental disagreements with Defendants' business judgments . . . are not actionable under Section 10(b) and Rule 10b-5."); *see also In re Lululemon*, 14 F. Supp. 3d at 562 ("This narrative requires the Court to stretch allegations of, at most, corporate mismanagement into actionable federal securities fraud. This is not the law.").

Evidence with respect to such immaterial matters does not make any claim of liability for material omissions during the class period more or less likely to be true. It also carries a substantial risk of unfair prejudice under Rule 403 and would run afoul of Rule 404's prohibition

of evidence of other bad acts. Accordingly, such evidence and argument about it should be excluded as irrelevant under Rule 401 and unfairly prejudicial under Rule 403.

What evidence is relevant to the class-wide Section 10(b) omissions claim? With respect to Defendants Reger and Gilbertson, depending on the parameters of their respective duties to disclose, such evidence could include their beneficial ownership of shares and the absence of any filings during the class period under Sections 13(d) or 16(a) as well as their acquisition of those shares and the circumstances of their subsequent transfers of them to family members. It would also include the nature and extent of their dealings with the Company during the years in which it was publicly traded. Ultimately, the issue would be whether such facts were material and whether the failure to disclose them caused any of the drop in value of the Company's shares. With respect to the officer and director Defendants, again depending on the parameters of their duty to disclose, such evidence could include any material facts not disclosed in the Company's many public filings during the four-year class period—a challenging hurdle given Plaintiff's concession that the Company wholly and accurately disclosed its financial information over the entire four-year period (including the debt incurred under the terms of the earlier-issued notes).

Some evidence of the history of the Company's founding, its operations, and its finances (including the issuance of the notes and their terms), together with the backgrounds of its founders and its subsequent officers and directors, of course, will be necessary for context. Such information also may be relevant to establish or rebut such things as motive and knowledge. It may not be offered as, or argued to be, however, evidence of a fraud or a scheme.

With respect to the market manipulation scheme purportedly perpetrated during one month in 2012, it appears the Court previously believed it could be part of an omissions claim. (Dkt. 387 at 31.) Defendants respectfully believe that belief is mistaken. This is true because the

7

failure to disclose an alleged fraud cannot be the basis for an omissions claim. Otherwise, every scheme claim and every misrepresentation claim could be cast, based on the failure to disclose the alleged wrongdoing, as an omissions claim entitled to a presumption of reliance under *Affiliated Ute*. As the Ninth Circuit noted:

> Manipulative conduct, by contrast, is actionable under Rule 10b-5(a) or (c) and includes activities designed to affect the price of a security artificially by simulating market activity that does not reflect genuine investor demand. *See Santa Fe*, 430 U.S. at 476-77; *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976) ("[Manipulation] connotes intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities."). In order to succeed, manipulative schemes must usually remain undisclosed to the general public. *See Santa Fe*, 430 U.S. at 477. If such nondisclosure of a defendant's fraud was an actionable omission, then every manipulative conduct case would become an omissions case. If that were so, then all of the Supreme Court's discussion of what constitutes manipulative activity would be redundant.

*Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 940–41 (9th Cir. 2009).

In sum, although Plaintiff, based on his own extensive due diligence and interactions with the Company, arguably might have an individual claim based on the broader theory Plaintiff now wishes to pursue, the class claim is limited to attempting to prove material omissions occurring during the period when the Company was publicly traded. Evidence related to matters occurring before then, and to any potential scheme liability not based on omissions simply is not relevant to the class claim.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' motion *in limine* to exclude reference to and evidence of any purported schemes or fraudulent conduct other than a failure, during the class period, to disclose material facts a Defendant had a duty to disclose.

DATED: January 17, 2022

    **KUTAK ROCK LLP**
    By: */s/ K. Jon Breyer*
    K. Jon Breyer (Admitted *pro hac vice*)
    Diane L. Peterson (Admitted *pro hac vice*)
    60 S. 6th Street, Suite 3400
    Minneapolis, MN 55402-4018
    Tel: (612) 334-5000
    Email: Jon.Breyer@kutakrock.com
           Diane.Peterson@kutakrock.com

    *– and –*

    Marjorie J. Peerce
    BALLARD SPAHR LLP
    919 Third Avenue, 37th Floor
    New York, NY 10022-3915
    Tel: (646) 346-8039
    PeerceM@ballardspahr.com
    *Attorneys for Defendants*
    *Craig M. McKenzie, Terry H. Rust, Paul M.*
    *Cownie, David J. Fellon, Gary L. Alvord, James L.*
    *Thornton*

    **FOX ROTHSCHILD LLP**
    By: */s/ Ranelle A. Leier*
    Ranelle A. Leier (Admitted *pro hac vice*)
    222 South Ninth Street, Suite 2000
    Minneapolis, MN 55402-3339
    Tel: (612) 607-7000
    Email: rleier@foxrothschild.com

    *– and –*
    John A. Wait
    FOX ROTHSCHILD LLP
    101 Park Ave., 17th Floor
    New York, NY 10178
    Tel: (212) 878-7900
    Email: JWait@foxrothschild.com
    *Attorneys for Defendant*
    *Timothy R. Brady*

    **DORSEY & WHITNEY**

    By: */s/ Michael Rowe*
    James K. Langdon (Admitted *pro hac vice*)
    Michael E. Rowe, III (Admitted *pro hac vice*)

Caitlin L.D. Hull (Admitted *pro hac vice*)
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Tel: (612) 640-2600
Email: langdon.jim.@dorsey.com
Email: rowe.michael@dorsey.com
Email: hull.caitlin@dorsey.com

*– and –*

Kaleb McNeely
Dorsey & Whitney LLP
51 West 52nd Street
New York, NY 10019
Tel: (212) 415-9200
Email: mcneely.kaleb@dorsey.com

*Attorneys for Defendant*
*Michael L. Reger*

**MORGAN, LEWIS & BOCKIUS LLP**

By: */s/ Kenneth M. Kliebard*
Kenneth M. Kliebard (Admitted *pro hac vice*)
110 North Wacker Drive
Chicago, Illinois 60606
Tel: (312) 324-1000
Email: kenneth.kliebard@morganlewis.com

*– and –*

Victoria Peng
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178
Tel: (212) 309-6000
Email: victoria.peng@morganlewis.com

*Attorneys for Defendant*
*Gabriel G. Claypool*

**BEST & FLANAGAN LLP**

By: */s/ Amy S. Conners*
Amy S. Conners (SBN 4226148)
John A. Sullivan (admitted *pro hac vice*)
60 South Sixth Street, Suite 2700

Minneapolis, Minnesota 55402
Phone: (612) 339-7121

*Attorneys for Defendant Ryan Gilbertson*