UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JON D. GRUBER, Individually And On    :    No. 16-cv-09727-JSR
Behalf Of All Others Similarly Situated,    :
                                    :
              Plaintiff,    :    Hon. Jed S. Rakoff
                                    :
     v.    :
                                    :
RYAN R. GILBERTSON, et al.,    :
                                    :
              Defendants.    :
                                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
## CLASS ACTION SETTLEMENTS WITH THE OFFICER AND DIRECTOR
## DEFENDANTS AND DEFENDANT RYAN R. GILBERTSON

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT .................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.........................................................................4

I.     THE ALLEGATIONS ...................................................................................................4

II.    EXTENSIVE DISCOVERY HAS BEEN TAKEN..............................................................6

III.   CERTIFICATION OF THE CLASS AND NOTICE............................................................7

IV.    SUMMARY JUDGMENT MOTION ...............................................................................8

V.     JUDICIAL REASSIGNMENT........................................................................................8

VI.    NEGOTIATIONS LEADING TO THE SETTLEMENTS .....................................................9

ARGUMENT ...........................................................................................................................10

I.     THE PROPOSED SETTLEMENTS SATISFY THE REQUIREMENTS FOR
       PRELIMINARY APPROVAL .......................................................................................11

       A.    The Settlements Are Procedurally Fair.........................................................12

             1.    Adequate Representation ...................................................................13

             2.    The Proposed Settlements Are the Product of Good Faith, Informed, and
                   Arm's-Length Negotiations ................................................................13

       B.    The Settlements Are Substantively Fair ........................................................14

             1.    The Costs, Risks, and Delay of Trial and Appeal......................................14

             2.    The Proposed Method of Processing Claims and Distributing Relief is
                   Equitable ............................................................................................17

             3.    The Terms of Any Proposed Award of Attorneys' Fees ...........................18

II.    THE PROPOSED SETTLEMENTS SATISFY THE GRINNELL FACTORS ..............19

       A.    Complexity, Expense, Likely Duration ..........................................................19

       B.    Reaction of Class ............................................................................................19

       C.    Stage of Proceedings and Amount of Discovery ...................................................20

       D.    Risk of Establishing Liability and Damages...................................................21

       E.    Risk of Maintaining the Class ........................................................................21

       F.    Ability of Defendant to Withstand Greater Judgment .........................................22

i

G.      Reasonableness of the Settlements in Light of Attendant Risks of Litigation ......22

III.    THE MANNER AND FORM OF NOTICE SHOULD BE APPROVED ........................23

A.      The Manner of Notice Satisfies Rule 23(e)(1)........................................................23

B.      The Form of Notice Satisfies Rule 23(c)(2)(B) ......................................................23

IV.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS ...............................................24

CONCLUSION...................................................................................................................................25

## **TABLE OF AUTHORITIES**

**Cases**

*Arbuthnot v. Pierson*,
    607 F.App'x 73 (2d Cir. 2015) ....................................................................................... 21

*Bahena v. Park Ave. S. Mgmt. LLC*,
    2017 WL 3452383 (S.D.N.Y. Aug. 9, 2017) ................................................................. 11

*Charron v. Pinnacle Grp. NY LLC*,
    874 F.Supp.2d 179 (S.D.N.Y. 2012) ........................................................................... 16

*Christine Asia Co. v. Yun Ma*,
    No. 15-MD-02631 (CM) (SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............ 15

*City of Detroit v. Grinnell Corp.*
    495 F.2d 448 (2d Cir. 1974) .................................................................... 12, 19, 21, 22

*City of Providence v. Aeropostale, Inc.*,
    No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ................... 21

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ........................................................................................... 14

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ......................................................................................... 20

*Diamond v. Fogelman*,
    No. CV–90–0900, 1992 WL 167271 (E.D.N.Y. June 26, 1992) ..................................... 20

*Eisen v. Carlisle & Jacquelin*
    417 U.S. 156 (1974) ..................................................................................................... 23

*Gilliam v. Addicts Rehab. Ctr. Fund*,
    2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ................................................................. 16

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ........................................................................................... 12

*Gruber v. Gilbertson*,
    2018 WL 1418188 (S.D.N.Y. Mar. 20, 2018) ................................................................. 2

*Gruber v. Gilbertson*,
    2019 WL 4439415 (S.D.N.Y. Sept. 17, 2019) ........................................................... 2, 13

*Gruber v. Gilbertson*,
    2019 WL 4458956 (S.D.N.Y. Sept. 17, 2019 ................................................................. 2

*Gruber v. Gilbertson*,
    2021 WL 2482109 (S.D.N.Y. June 17, 2021) ................................................................. 2

*Gruber v. Gilbertson*,
    2021 WL 3524089 (S.D.N.Y. Aug. 10, 2021) ................................................. 19

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    293 F.R.D. 459 (S.D.N.Y. 2013) ..................................................... 13

*In re Excess Value Ins. Coverage Litig.*,
    No. M-21-84RMB, 2004 WL 1724980 (S.D.N.Y. July 30, 2004) ................................... 20

*In re GSE Bonds Antitrust Litig.*,
    414 F.Supp.3d 686 (S.D.N.Y. 2019) ................................................... 11, 17

*In re Healthsouth Corp. Sec. Litig.*,
    334 F.App'x 248 (11th Cir. 2009) ..................................................... 20

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ............................ 12

*In re Initial Pub. Offering Sec. Litig.*
    671 F. Supp. 2d 467 (S.D.N.Y. 2009) ................................................. 18

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    No. 02 MDL 1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ..................................... 15

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) ..................................................... 18

*In re PaineWebber Ltd. P'ships Litig.*,
    147 F.3d 132 (2d Cir. 1998) ........................................................ 11

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ..................................................... 17

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ..................................................... 13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    986 F.Supp.2d 207  (E.D.N.Y. 2013) ................................................... 16

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 01695 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ........................... 21

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 06CIV11515, 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ................................... 19

*In re Warner Commc'ns*
    618 F.Supp. 735 (S.D.N.Y. 1985) ..................................................... 21

*Khait v. Whirlpool Corp.*
    2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ................................................ 18

*Lowery v. City of Albuquerque,*
    No. CIV 09-0457 JB/WDS, 2013 WL 1010384 (D.N.M. Feb. 27, 2013) ....................... 20

*Meredith Corp. v. SESAC LLC,*
    87 F.Supp.3d 650 (S.D.N.Y. 2015)................................................................ 18

*Moulton v. United States Steel Corp.,*
    581 F.3d 344 (6th Cir. 2009) ...................................................................... 20

*Newman v. Stein*
    464 F.2d 689 (2d Cir. 1972)........................................................................ 22

*Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.,*
    No. 17CV5543, 2021 WL 76328 (S.D.N.Y. Jan. 7, 2021) ............................... 12

*Park v. The Thomson Corp.,*
    2008 WL 4684232 (S.D.N.Y. Oct. 22, 2008) ................................................ 15

*Polar Int'l Brokerage Corp. v. Reeve*
    187 F.R.D. 108 (S.D.N.Y. 1999) ................................................................ 20

*Silver v. 31 Great Jones Rest.,*
    2013 WL 208918 (S.D.N.Y. Jan. 4, 2013) ................................................. 11

*Story v. SEFCU,*
    2021 WL 736962 (N.D.N.Y. Feb. 25, 2021) ............................................... 18

*U.S. v. Gilbertson,*
    970 F.3d 939 (8th Cir. 2020) .................................................................... 3

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96 (2d Cir. 2005) ................................................................ *passim*

*Xuechen Yang v. Focus Media Holding Ltd.,*
    2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014)............................................... 17

**Statutes**

15 U.S.C. §78j(b) ................................................................................................ 2

15 U.S.C. §78m(d) .......................................................................................... 5, 6

15 U.S.C. §78p(a) ............................................................................................ 5, 6

15 U.S.C. §78t(a) .............................................................................................. 2

15 U.S.C. §78t-1 ............................................................................................... 2

15 U.S.C. §78u-4 .............................................................................................. 4

15 U.S.C. §78u-4(a)(7)(A-D)........................................................................... 23

15 U.S.C. §78u-4(b)(3)(B) ................................................................................ 6

17 C.F.R. §240.10b-5 ...................................................................................... 2

Securities Exchange Act of 1934

    Section 10(b) ......................................................................................... 2, 3, 4

    Section 20(a) ............................................................................................ 2, 4

    Section 20A .............................................................................................. 2, 7

**Other Authorities**

2018 Advisory Notes to Fed. R. Civ. P. 23, Subdiv. (e)(2) ......................... 11

Manual for Complex Litigation, Third, § 30.42 (1995) ............................... 11

**Rules**

Federal Rules of Civil Procedure

    Rule 23 .................................................................................................... 11

    Rule 23(a) ............................................................................................... 2, 7

    Rule 23(b)(3) .......................................................................................... 2, 7

    Rule 23(c)(1)(C) ....................................................................................... 21

    Rule 23(c)(2)(B) ....................................................................................... 23

    Rule 23(c)(2)(B)(v) ................................................................................. 2, 8

    Rule 23(e) ...................................................................................... 1, 11, 12

    Rule 23(e)(1) ............................................................................................ 23

    Rule 23(e)(2) ..................................................................................... 11, 19

    Rule 23(e)(2)(A) ...................................................................................... 12

    Rule 23(e)(2)(B) ...................................................................................... 12

    Rule 23(e)(2)(C)(i) ................................................................................... 19

    Rule 23(e)(2)(D) ...................................................................................... 14

    Rule 23(f) .................................................................................................. 8

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure,[1] Plaintiff and Class Representative Jon D. Gruber (hereafter the "Class Representative"), individually and on behalf of himself and the certified Class, respectfully submits this memorandum of law in support of his motion for: preliminary approval of classwide settlements of this securities fraud class action (the "Action") with (1) defendants Gabriel G. Claypool, Timothy R. Brady, Craig M. McKenzie, Paul M. Cownie, David J. Fellon, Gary L. Alvord, Terry H. Rust, and James L. Thornton (the "Officer and Director Defendants"), and (2) defendant Ryan R. Gilbertson ("Gilbertson").[2]  If finally approved following notice to the Class and this Court's final fairness hearing, the two settlements will resolve all claims in this Action, except for Class claims against defendant Michael L. Reger, which are set to go to trial on June 6, 2022.  By this motion, the Class Representative seeks entry of the proposed Preliminary Approval Order, which has been agreed to in form by the Settling Parties.[3]  It provides for, *inter alia*, approval of the form and manner of giving notice of the proposed Settlements to the Class including a Proof of Claim form, and the scheduling of a final fairness hearing.

## PRELIMINARY STATEMENT

For more than five years, the Class Representative has aggressively prosecuted this complex securities fraud class action, which has been hotly contested on virtually every material

---

[1]    All references hereafter to "Rule __" are to the Federal Rules of Civil Procedure.

[2]    The settlement agreements are attached as Exhibits 1 and 2, respectively, to the Declaration of Solomon B. Cera ("Cera Decl."), filed herewith.  Ex. 1 is hereafter referred to as the "D&O Settlement" and Ex. 2 the "Gilbertson Settlement."

[3]    "Settling Parties" refers, collectively, to the Class Representative, the Officer and Director Defendants, and Gilbertson.

factual and legal point.  Two classwide settlements are now before the Court for preliminary approval.

Following an in depth investigation of the facts leading to the filing of the complaints herein, resolution of multiple motions to dismiss gave rise to the filing of the 135 page operative Fourth Amended Complaint ("FAC").[4]  ECF 271.  Thereafter, substantial fact and expert discovery was taken.  Class certification was vigorously litigated, resulting in the Court's certification of a Class and Subclass on August 10, 2021 pursuant to Rules 23(a) and (b)(3). *Gruber v. Gilbertson*, 2019 WL 4439415, at *1 (S.D.N.Y. Sept. 17, 2019).  ECF 396. Thereafter, pursuant to the Court's order and Rule 23(c)(2)(B), Notice of the Pendency of this class action was disseminated to Class members on September 9, 2021.  ECF 403.  The Notice included a right of Class members to exclude themselves pursuant to Rule 23(c)(2)(B)(v). Significantly, not one of the thousands of persons and entities who were sent the Notice chose to opt-out.

In addition, a combined motion for summary judgment under Rule 56 was filed by all defendants based on numerous arguments as to the sufficiency of the evidence adduced to support the Class claims under Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78j(b), 78t(a), and 78t-1, and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.  Defendants' motion was denied.  *Gruber v. Gilbertson*, 2021 WL 2482109 (S.D.N.Y. June 17, 2021).  Following re-assignment of this case to the Honorable Jed S. Rakoff, the case was promptly set for trial to begin on February 4, 2022 (this date was

---

[4]  The Court's orders on the motions to dismiss are found at *Gruber v. Gilbertson*, 2018 WL 1418188 (S.D.N.Y. Mar. 20, 2018) and *Gruber v. Gilbertson*, 2019 WL 4458956 (S.D.N.Y. Sept. 17, 2019).  ECF 119 and 252.

later continued to June 1, 2022 due to COVID-19 related issues) and trial is now set for June 6, 2022.

Thus, this Action has been intensely litigated for a lengthy period of time. It was only on the eve of the prior trial date that meaningful settlement discussions began with the Officer and Director Defendants. The Class Representative has now reached an agreement with these defendants, assisted by the retired former Chief Magistrate Judge of the Northern District of California, the Hon. Edward A. Infante (Ret.) acting as mediator, to settle the Class claims against them for a cash payment of $13,950,000. This is approximately 21% of the Class' estimated Section 10(b) damages before pre-judgment interest.[5] The D&O Settlement merits preliminary approval. The Class Representative has also reached an agreement with defendant Gilbertson to settle the Class claims against him in consideration of Gilbertson's cooperation, including testifying at the June 6, 2022 trial. While the Gilbertson Settlement involves cooperation only, it nonetheless merits preliminary approval. Gilbertson has already paid dearly for his conduct related to Dakota Plains Holdings, Inc. ("Dakota Plains" or the "Company"). He is presently serving a 12 year prison sentence for his role in the fraud. *See U.S. v. Gilbertson*, 970 F.3d 939 (8th Cir. 2020). He has paid more than $15 million in restitution to the United States, and owes significantly more in fines to be paid. Gilbertson and his counsel have demonstrated to Plaintiff's Counsels'[6] satisfaction that he has no ability to fund a cash settlement of the Class claims alleged against him. Gilbertson has nonetheless agreed to provide significant

---

[5]    If the D&O Settlement is preliminarily approved, the settlement consideration is to be deposited in an interest bearing escrow account at Heritage Bank of Commerce, as escrow agent, no later than thirty (30) calendar days from entry of the Preliminary Approval Order ("PAO").

[6]    Plaintiff's Counsel refers collectively to Class Counsel, Cera LLP, together with MoloLamken LLP and Abraham Fruchter & Twersky, LLP.

value to the Class in the form of his cooperation, including at trial.  This is very meaningful, as the Class alleges Dakota Plains was founded in fraud by non-settling defendant Michael L. Reger working in tandem with Gilbertson and their colleague James L. Sankovitz.[7]  Under the circumstances, the Gilbertson Settlement merits preliminary approval.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    THE ALLEGATIONS

This unusual and complex case has had a lengthy history.  On December 16, 2016, a shareholder class action was filed in this Court against, *inter alia*, certain of the Officer and Director Defendants for alleged violations of Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder based on allegedly false and misleading statements issued by Dakota Plains[8] in the period from March 23, 2012 through August 15, 2016.  On February 14, 2017, Jon D. Gruber moved to be appointed lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4 *et seq.*  On April 7, 2017, the Court appointed Mr. Gruber as Lead Plaintiff and his attorneys, the law firm of Cera LLP, as Lead Counsel.  ECF 35.

Dakota Plains was taken public on March 23, 2012 via a reverse merger with a defunct Utah-based tanning salon that had maintained a public listing.  FAC ¶41.  Defendants Reger and Gilbertson were the driving forces behind the creation and subsequent public listing of Dakota Plains.  The Company was supposed to be in the business of transloading oil from the Williston

---

[7]    These individuals were sometimes referred to by Dakota Plains insiders as "The Three Amigos."

[8]    On December 20, 2016, Dakota Plains and its affiliated companies filed a voluntary petition under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Minnesota (the "Bankruptcy Court").  Accordingly, the Class Representative could not name Dakota Plains as a defendant in the complaints he filed.

Case 1:16-cv-09727-JSR   Document 460   Filed 05/23/22   Page 12 of 33

Basin of North Dakota to East Coast refineries.  Defendants Reger and Gilbertson are alleged to have founded, owned and controlled Dakota Plains, one of many oil/energy related companies they owned and controlled together in their tangled web of alleged business frauds.  The Class alleges they intentionally obscured from the investing public their ownership and control of the Company, spreading their stock among nominee accounts to be able to conduct a complex securities fraud scheme upon taking the Company public in March 2012, as well as to be able to subsequently manipulate and surreptitiously sell stock in the Company without detection.  The FAC alleges that Reger and Gilbertson each owned more than 5% of the Company and made its key decisions and directed its core business operations, but never reported their ownership, as required by §§13(d) and 16(a) of the Exchange Act, 15 U.S.C. §§78m(d), p(a).  The FAC alleges Reger and Gilbertson caused the Company to issue $9 million in 12% notes with an embedded additional payment provision ("APP"), triggered upon going public, which varied based on the average price of the Company's stock in the first 20 days of public trading.  Reger and Gilbertson together purchased $7.5 million of the $9 million of notes.  After going public via reverse merger on March 22, 2012, the FAC alleges Reger and Gilbertson intentionally manipulated the price of the Company's stock up in its first 20 days of public trading to trigger a $32.85 million windfall additional payment.  The Company, a small entity with a handful of employees, could never recover from this massive debt burden and ultimately descended into bankruptcy in December 2016.

On October 31, 2016 the SEC issued a press release announcing: (1) its civil enforcement action against, *inter alia*, Gilbertson, *Securities and Exchange Commission v. Ryan Gilbertson, et al.*, No. 16-cv-3779, (D. Minn., Oct. 31, 2016) together with (2) its settlement and cease and desist order with Reger, who agreed to pay nearly $8 million in disgorgement, interest and civil

5

money penalties.

The fundamental theory of the case is that the members of the Class purchased Dakota Plains stock at inflated prices caused by fraud by omission alleged in the FAC.  Who owns more than 5% of a Company's shares is material information that must be disclosed under the federal securities laws.  *See* §§13(d) and 16(a) of the Exchange Act.  No such required disclosure was made.  That Reger and Gilbertson were also the control persons of Dakota Plains is particularly significant. Before Dakota Plains went public, Gilbertson and Reger were the subject of significant negative press in mainstream financial media (*e.g., Barron's*), regarding their management of another public company, Northern Oil and Gas, Inc. ("NOG"). NOG was called by Twin Cities Business Magazine in 2011 "a tangled web of overlapping family and business relationships; cross-hatched investments in companies that are competitors; massive insider selling; a vendor relationship that doesn't pass the smell test; [and] a questionable board appointment" and "a company that appears to operate at the edge of the ethical envelope." Clearly, Reger and Gilbertson's ownership of more than 5% of its stock and their control of Dakota Plains were material facts required to be required.

## II.    EXTENSIVE DISCOVERY HAS BEEN TAKEN

Following resolution of defendants' motions to dismiss, and the lifting of the PSLRA's mandatory stay of discovery[9] extensive discovery was conducted in this Action.  Indeed, the discovery necessary to effectively prosecute this factually complex case cannot be overstated. The FAC alleges that this case involved a highly sophisticated, secret scheme conducted by individuals who used numerous limited liability companies, joint ventures, family members, and

---

[9]    15 U.S.C. §78u-4(b)(3)(B).

friends to conceal and carry out the securities fraud that allegedly harmed thousands of Dakota Plains' shareholders.[10]  As a first step, the Class Representative arranged to obtain all relevant Company documents from the bankruptcy trustee for Dakota Plains beginning in 2017.  Starting in April 2018 and continuing through January 2020, Class Counsel engaged in extensive document discovery efforts involving the defendants, more than a dozen third parties, multiple government agencies, including the DOJ and SEC, and family members of defendants Reger and Gilbertson.  These efforts resulted in document productions in excess of 1 million pages that were reviewed and analyzed.  Further, counsel took or defended more than two dozen depositions of fact and expert witnesses over the course of the litigation.  Given the intensive nature of the discovery, Class Counsel are well positioned to evaluate the reasonableness of the settlements.

## III.    CERTIFICATION OF THE CLASS AND NOTICE

On January 29, 2019, a class certification motion was filed pursuant to Rules 23(a) and (b)(3).  Following full briefing and oral argument, the Court granted the motion on September 17, 2019.  ECF 253.  It certified a class of investors who purchased or otherwise acquired Dakota Plains common stock during the Class Period, as well as a Subclass of investors who purchased Company stock contemporaneously with sales by defendants Reger and Gilbertson, pursuant to Section 20A of the Exchange Act.  *Id.*[11]

---

[10]   Indeed, this Action represents the only vehicle for redress for the beleaguered purchasers of the common stock of Dakota Plains on the public market during the Class Period, as no recovery has been made available to investors through either the bankruptcy case, Gilbertson's criminal conviction, or Reger's SEC order.

[11]   Excluded from the Class are the following persons or entities: (i) any named Defendant in the Action and Dakota Plains; (ii) the parents, successors, subsidiaries, affiliates and assigns of any named Defendant in the Action or of Dakota Plains; (iii) members of the Immediate Family of any named Defendant in the Action; (iv) any person who was an officer or director of Dakota

On October 1, 2019, the Defendants sought to immediately appeal the class certification order to the Second Circuit pursuant to Rule 23(f).  The Petition was denied on February 12, 2020.  ECF 285.  On September 21, 2020, Defendants moved to decertify the Class on various grounds.  ECF 322.  That motion was denied on June 17, 2021.  ECF 387.

Thereafter, on August 6, 2021, the Court authorized a Notice of Pendency of Class Action ("Notice of Pendency") to be mailed to all Class members and a summary notice to be published in the *Wall Street Journal* and *Minneapolis Star Tribune*.  ECF 396.  The Notice of Pendency, which included an opt-out right pursuant to Rule 23(c)(2)(B)(v), was disseminated to Class members on September 9, 2021 and the summary notice was published on September 13, 2021.  ECF 403.  There were no requests to opt out of the case.  *Id.*

## IV.   SUMMARY JUDGMENT MOTION

On September 21, 2020, all defendants moved for summary judgment on various grounds.  ECF 312.  These motions were vigorously litigated.  ECF 356 and 359.  Defendants' summary judgment motions were denied in their entirety.  ECF 387.[12]

## V.   JUDICIAL REASSIGNMENT

Following the death of the Honorable Senior United States District Judge William H. Pauley III, who had overseen proceedings in the Action from its inception, the Action was reassigned to the Honorable Senior United States District Judge Jed S. Rakoff on July 28, 2021.

---

Plains during the Class Period; and (v) any firm, trust, corporation, or other entity in which any of the named Defendants in the Action has a controlling interest or had a controlling interest during the Class Period.

[12]   The Court (per Judge Pauley), caused this decision to be published on the Court's website as a "Ruling of Special Interest."

## VI.    NEGOTIATIONS LEADING TO THE SETTLEMENTS

Following reassignment of the case, the Court promptly set a February 4, 2022 trial date. This date was subsequently continued to June 1, 2022, and then June 6, 2022.

On April 27, 2022, with trial looming, the Class and the Officer and Director Defendants participated in a voluntary mediation conducted by Judge Infante.  They submitted detailed mediation statements and conducted negotiations through him.  The case against the Officer and Director Defendants undoubtedly raises numerous difficult factual and legal points.  The Class Representative alleged that these defendants omitted to disclose material facts about Reger and Gilbertson's shareholding percentages, their control, and the fact they conducted a scheme to manipulate the price of Dakota Plains stock to benefit themselves.  The Officer and Director Defendants have argued that the obligation to disclose greater than 5% shareholders rests with those shareholders, and not the Company.  Moreover, they maintained they acted responsibly in investigating suspicions of wrongdoing by Reger and Gilbertson, but could not identify specific facts giving rise to a disclosure obligation.  While the Class disagrees with the validity and likely success of these defenses, in light of the risks they presented at trial, as well as the circumstances with available insurance coverage discussed below, the Class submits that the substantial cash recovery of $13,950,000 reflected in the D&O Settlement is a significant achievement and warrants preliminary approval.

This is especially true given the insurance coverage available.  Specifically, the Officer and Director Defendants are insured under an insurance tower consisting of four (4) separate insurance policies, each with a $5 million limit of liability.  It is only upon exhaustion of the full policy limits from one of the applicable policies in line, that the obligations arising under the next policy are triggered.  Moreover, each of the policies is "wasting" in that all defense costs,

including attorneys' fees, are paid from the policies.  By the time of the recent mediation, the

first policy had been entirely exhausted, leaving at most $15 million of available insurance.

Through their negotiation efforts, counsel for the Class were able to obtain in settlement 93% of

the remaining insurance policy proceeds from the three (3) remaining policies (i.e. $13,950,000),

for the benefit of the Class, even though it was only the second policy in the "tower" that was

technically available for payments, given that it had not been exhausted.  In addition to this

substantial cash consideration, under the D&O Settlement, at least three (3) of the Officer and

Director Defendants, at the discretion of Class Counsel, are obligated to cooperate with counsel

in the continued prosecution of the case, including testifying at the trial against defendant Reger.

This is a significant additional benefit the Class has obtained from the D&O Settlement.

The Gilbertson Settlement arose from intense recent negotiations.  As noted, Gilbertson is

impecunious.  Indeed, Gilbertson has paid more than $15 million to the government and owes

several million more.  He and his counsel have satisfied Plaintiff's Counsel that he is unable to

satisfy any judgment that may be obtained against him at trial.  Thus, rather than pursuing

Gilbertson for money that does not exist, the Class will instead benefit from his cooperation at

trial in presenting the Class claims against defendant Reger.  As noted, Dakota Plains was

created by Reger and Gilbertson and they worked in tandem with respect to many of the key

events involving the Company.  Thus, Gilbertson's cooperation is a valuable benefit to the Class.

## **ARGUMENT**

The settlements with the Officer and Director Defendants and defendant Gilbertson merit

preliminary approval.  Accordingly, the proposed Preliminary Approval Order should be entered

by the Court.

I.   **THE PROPOSED SETTLEMENTS SATISFY THE REQUIREMENTS FOR PRELIMINARY APPROVAL**

Rule 23(e) requires court approval for class action settlements.  There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("*Wal-Mart Stores*") (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)).  The Second Circuit recognizes that a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116-17 (quoting Manual for Complex Litigation, Third, § 30.42 (1995)).

"Preliminary approval is typically granted 'where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, [and] does not improperly grant preferential treatment to class representatives or segments of the class..." *Bahena v. Park Ave. S. Mgmt. LLC*, 2017 WL 3452383, at *2 (S.D.N.Y. Aug. 9, 2017) (quoting *Silver v. 31 Great Jones Rest.*, 2013 WL 208918, at *1 (S.D.N.Y. Jan. 4, 2013)).  A recent amendment to Rule 23 requires a district court to also consider whether it will "likely be able to" finally approve the proposal under Rule 23(e)(2), which is a more exacting standard than whether a settlement is "within the range of possible final approval" that previously applied in the Second Circuit. *See In re GSE Bonds Antitrust Litig.*, 414 F.Supp.3d 686, 691 (S.D.N.Y. 2019) (Rakoff, J).  The 2018 Advisory Committee Notes to the amendment to Rule 23(e)(2) state that the goal is not to "displace any [circuit-specific] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance" to decide whether a settlement should be approved. *See* 2018 Advisory Notes to Fed. R. Civ. P. 23, Subdiv. (e)(2) ("2018 Advisory Note").  The Second Circuit also requires consideration of the nine factors set out in *City of*

*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).[13]  Both settlements before the Court should be preliminarily approved.  They are the product of arm's-length, good faith negotiations, provide significant benefits to Class members and, we submit, will be appropriate for final approval.

### A.      The Settlements Are Procedurally Fair

The settlements before the Court are procedurally fair.  To determine whether a settlement is procedurally fair, Rule 23(e) requires the Court to find that "the class representatives and class counsel have adequately represented the class" and "the proposal was negotiated at arm's length."  Rule 23(e)(2)(A)-(B).  Courts afford counsel's opinion considerable weight because they are closest to the facts and risks associated with the litigation itself. *Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, No. 17CV5543, 2021 WL 76328, at *1 (S.D.N.Y. Jan. 7, 2021).  The Settlements are also entitled to a presumption of reasonableness given that the Class Representative, who has actively supervised the Action and endorsed the Settlements, is a sophisticated investor who successfully operated an investment fund for 25 years and continues to actively invest for himself and family accounts.  *See In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL 7323417, at *5 (S.D.N.Y. Dec. 19, 2014) (a settlement reached under supervision and endorsement of sophisticated investor is entitled to an even greater presumption of reasonableness).  As demonstrated by their vigorous work on behalf of the Class over more than five years, including obtaining favorable orders on motions to dismiss, class certification and summary judgment, and taking the case to the eve of

---

[13]   The *Grinnell* factors are discussed in Section II., *infra*.

trial, Plaintiff's Counsel have adequately represented the Class.  Further, as discussed, the settlements are the product of arm's length negotiations.

### 1.    Adequate Representation

The "essential question in determining whether the Settlement complies with the adequate representation doctrine is whether the interests that were served by the Settlement were compatible with" those of all the settlement class members.  *Wal-Mart Stores*, 396 F.3d at 110. Here, the Class Representative's interests are completely aligned with those of the Class members.  As a purchaser of Dakota Plains stock on the open market, the Class Representative has the same interest as all Class members in obtaining the best possible recovery under all the circumstances.  He will be treated identically under the settlements as all other Class members.

Further, the Class Representative and Class members have been represented in this action by sophisticated and highly qualified counsel as recognized by Judge Pauley in appointing Class Counsel.[14]  *See In re Am. Int'l Grp., Inc. Sec. Litig.,* 293 F.R.D. 459, 464 (S.D.N.Y. 2013); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 330 F.R.D. 11, 29 (E.D.N.Y. 2019).  Class Counsel, the law firm of Cera LLP, together with other counsel retained to assist in the prosecution of the Action, including MoloLamken LLP, and Abraham, Fruchter & Twersky LLP have amply demonstrated, by bringing this case to trial, that they have adequately represented the Class, including in the settlement process.

### 2.    The Proposed Settlements Are the Product of Good Faith, Informed, and Arm's-Length Negotiations

The proposed settlements are the product of good faith, informed, and arm's length

---

[14]  *Gruber v. Gilbertson*, 2019 WL 4439415 (S.D.N.Y. Sept. 17, 2019).  Class Counsel have also acted in the best interests of the Class by adding highly qualified trial counsel to the trial team, Steven F. Molo, Esq. and the firm of MoloLamken LLP.

negotiations.  The D&O Settlement was reached only after extensive negotiations overseen by a nationally recognized mediator and former federal judge.  The recent mediation occurred after all fact and expert discovery and pretrial motions (save for motions for limine) had been completed and resolved, and with a trial date looming.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (mediator involvement "helps to ensure that the proceedings were free of collusion and undue pressure").  The D&O Settlement is unquestionably the product of good faith, fully informed, arm's length negotiations.

So too is the settlement with defendant Gilbertson.  Cera LLP and MoloLamken LLP and counsel for defendant Gilbertson negotiated in good faith, and were fully informed as to the facts and Gilbertson's financial condition.  Gilbertson and his counsel have satisfied counsel that he has no money left with which to satisfy any money judgment.  Nonetheless, the value of Gilbertson's cooperation has already begun to be realized, as he is assisting Plaintiff's Counsel in their trial preparation, and will himself be testifying at trial, a significant benefit for the Class. The Gilbertson Settlement is clearly non-collusive and should be preliminarily approved.

## B.    The Settlements Are Substantively Fair

The Court is likely to be able to finally approve the settlements.  To determine whether a settlement is substantively fair, a court considers the factors set forth in Rule 23(e)(2)(C).  The Court must also evaluate whether "the proposal treats class members equitably relative to each other."  Rule 23(e)(2)(D).

### 1.    The Costs, Risks, and Delay of Trial and Appeal

Here, a recovery at trial for the Class in the absence of settlement with the Officer and Director Defendants is uncertain.  Such a recovery at trial would be dependent on the Class prevailing on complex factual and damage issues in light of competing theories as to the scienter

14

of the eight officer and director defendants with regard to Reger and Gilbertson's scheme, and whether and when each one knew about it.  These defendants have always aggressively argued that they had no concrete information about the scheme that would trigger a disclosure obligation.  Moreover, they contend that the disclosure obligation as to more than 5% shareholders rests with those individual shareholders and not the issuing entity.  There is also the risk that the jury could lay blame exclusively on Reger and Gilbertson.  *See Park v. The Thomson Corp.*, 2008 WL 4684232, at *4 (S.D.N.Y. Oct. 22, 2008) ("The complexity of Plaintiff's claims *ipso facto* creates uncertainty. . . .  A trial on these issues would likely be confusing to a jury.").  In light of these issues, the D&O Settlement calls for an immediate cash payment in the amount of $13,950,000, a significant percentage of recoverable damages.  A recovery of approximately 21 percent of the total damages is well within the range of settlements approved within this District.  *See Christine Asia Co. v. Yun Ma*, No. 15-MD-02631 (CM) (SDA), 2019 WL 5257534, at *14 (S.D.N.Y. Oct. 16, 2019) (17% recovery of maximum recoverable damages as determined by Plaintiff's expert approved); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (6.25% recovery was "at the higher end of the range of reasonableness of recovery in class action [] securities litigation").

The Officers and Director Defendants' position is that no damages are recoverable against them.  Any recovery for Class members absent settlement would depend on a jury finding the Officer and Director Defendants either knew or were reckless in not knowing about the many steps taken by Reger and Gilbertson to conceal their five percent ownership and their scheme.  A jury could also conclude that while some liability and therefore financial responsibility exists for one or more of the Officer and Director Defendants, the most culpable

defendants were Reger and Gilbertson.  A small apportionment of liability—or even no liability—would result in the Class receiving a nominal amount or no money from the Officer and Director Defendants.  In stark contrast to these risks and uncertainties and the prospect of the available insurance policies continuing to be expended on defense counsel's fees and costs, including a potential appeal, the settlement consideration here presents a significant current and certain recovery for the Class.  "In assessing the Settlement, the Court should balance the benefits afforded the Class, including the ***immediacy*** and ***certainty*** of a recovery, against the continuing risks of litigation."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F.Supp.2d 207, 212 (E.D.N.Y. 2013) (emphasis in original); *Charron v. Pinnacle Grp. NY LLC*, 874 F.Supp.2d 179, 201 (S.D.N.Y. 2012) (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (finding that a settlement is reasonable when it "assures immediate payment of substantial amounts to Class Members, 'even if it means sacrificing speculative payment of a hypothetically larger amount years down the road . . . .'")).  In addition, the Class also benefits from the cooperation of the Officer and Director Defendants, including the participation at trial of up to three (3) of the Officer and Director Defendants.

The Gilbertson Settlement includes his cooperation and trial testimony about, among other things, the scheme with Reger to conceal their ownership in and exercise of control over Dakota Plains.  Gilbertson's testimony will provide critical information for the jury on which to evaluate defendant Reger's conduct.  Further, Gilbertson has established that he is unable to pay any cash settlement due to the restitution and fines levied against him in the related criminal proceedings and his having incurred large attorney's fees obligations from the criminal trial and related appeals, his defense fees and costs in this case, and his role as a defendant in at least one other action.  *See Apex Financial Options, LLC v. Gilbertson, et al.*, Case No. 19-0046-WCB (D.

16

Del.).  After careful evaluation by counsel and with the approval of the Class Representative, it

was reasonably concluded that Gilbertson's cooperation and testimony is far more valuable and

beneficial to the Class than pursuit of a worthless money judgment.  *See In re GSE Bonds*, 414

F.Supp.3d at 698-99 (Rakoff, J).

### 2. The Proposed Method of Processing Claims and Distributing Relief is Equitable

The Settlement Notice sets forth the proposed Plan of Allocation to govern the

distribution of the D&O Settlement proceeds to Class members who submit a timely and valid

Proof of Claim.  While approval of a plan of allocation is a discretionary decision for the court,

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 132 (S.D.N.Y. 1997), approval will issue

if a plan is "fair and adequate."  *In re Facebook, Inc. IPO Sec. & Derivative Litig.,* 2015 WL

6971424, at *7 (S.D.N.Y. Nov. 9, 2015), *aff'd sub nom. In re Facebook, Inc.*, 674 F. App'x 37

(2d Cir. 2016).  "An allocation formula need only have a reasonable, rational basis, particularly

if recommended by experienced and competent class counsel."  *Id.*; *accord Xuechen Yang v.

Focus Media Holding Ltd.*, 2014 WL 4401280, at *9 (S.D.N.Y. Sept. 4, 2014).

The proposed Plan of Allocation included in the Settlement Notice measures the amount

of loss that a Class member can claim for purposes of making *pro rata* allocations of the Net

Settlement Fund to Authorized Claimants.[15]  It is not, and need not be, premised on a formalized

damage analysis, but rather is based upon a Class member's purchases and sales during the Class

Period using a constant valuation of Dakota Plains common stock of $0.03, as determined by the

Class' damages expert.  Indeed, this is the expert opinion that has been presented in his expert

---

[15]  The Net Settlement Fund is the total Settlement Amount plus interest thereon, less any Taxes, Notice and Administration Costs, and less any attorneys' fee and litigation expenses awarded by the Court.

report.  "A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable."  *See In re Merrill Lynch Tyco Rsch. Sec. Litig.,* 249 F.R.D. 124, 135 (S.D.N.Y. 2008).  The proposed Plan of Allocation is thus equitable. The Class Representative will be treated under the Plan of Allocation in the same manner as all other Class members insofar as his claim is concerned.[16]

### 3.    The Terms of Any Proposed Award of Attorneys' Fees

Plaintiff's Counsel will apply for an award of attorneys' fee of one-third of the settlement funds.  An attorneys' fee request of one-third is comparable to the fees awarded in similar complex cases.[17]  Plaintiff's Counsel will also ask for an award of unreimbursed litigation costs and expenses incurred to date not to exceed of $1,500,000, together with claims administration expenses in connection with the notice of the settlements not to exceed $100,000.  *See Story v. SEFCU*, 2021 WL 736962, at *11 (N.D.N.Y. Feb. 25, 2021) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred . . . as long as they were 'incidental and necessary to the representation[.]'"); *Meredith Corp. v. SESAC LLC*, 87 F. Supp. 3d 650, 671 (S.D.N.Y. 2015) (reasonably incurred expenses may be reimbursed from the settlement fund).

---

[16]   This is separate from the Class Representative's right to seek reimbursement of his reasonable costs and expenses directly related to his participation in the Action pursuant to the PSLRA.  15 U.S.C. §78u-4(a)(4).

[17]   *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *1, *9 (33% fee of $26.5 million settlement); *In re U.S. Foodservice, Inc. Pricing Litig.*, No. 3:07-md-1894 (AWT), slip op. at 7 (D. Conn. Dec. 9, 2014) (1/3 fee of $297 million settlement fund); *In re NYSE Specialists Sec. Litig.,* No. 03-cv-8264 (RWS), slip op at 10 (S.D.N.Y. June 10, 2013) (41% fee of $18.5 million settlement); *In re Marsh ERISA Litig.*, 265 F.R.D. at 135, 146–47 (33.33% fee of $35 million settlement);  *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *1, *8 (E.D.N.Y. Jan. 20, 2010) (33% fee of $9.25 million settlement); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (one-third fee of $510 million net settlement recovery).

Given the more than five (5) year long litigation effort in this Action, such expenses have been reasonably incurred on behalf of the Class.[18]

## II.     THE PROPOSED SETTLEMENTS SATISFY THE *GRINNELL* FACTORS

In addition to satisfying the Rule 23(e)(2) standards for preliminary approval, the settlements also pass muster applying the *Grinnell* factors.

### A.     Complexity, Expense, Likely Duration

The first *Grinnell* factor overlaps with the Rule 23(e)(2)(C)(i) reference to "the costs, risks, and delay of trial and appeal" addressed above.  Rule 23(e)(2)(C)(i).

### B.     Reaction of Class

The reaction of the Class to the settlements is unknown at this stage and will not be until the objection deadline has passed.  *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06CIV11515, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) (consideration of this factor generally premature at this stage).  As noted, no members of the Class chose to opt out following dissemination of the Notice of Pendency in September 2021.  While the option to object to the settlements is preserved in the proposed Settlement Notice, it is submitted that there should be no new, additional opportunity to opt-out at this time.  The Notice of Pendency informed potential class members that the failure to opt out could waive an opportunity to opt out in the future.  *Gruber v. Gilbertson*, 2021 WL 3524089, at *5 (S.D.N.Y. Aug. 10, 2021).  Since the Notice of Pendency was relatively recently sent to Class members with an opt-out deadline of October 25, 2021 and no Class members opted out, allowing a second opportunity to opt out could raise uncertainty

---

[18]  Rule 23(e)(2)(C) requires the parties to disclose any agreement made in connection with the settlement.  Rule 23(e)(2)(C).  There are no such agreements other than as reflected in the settlement agreements themselves.

and potential confusion.  Therefore, while the opportunity to object to the settlements is of course preserved, the Settling Parties request that this Court exercise its discretion to not allow a second opportunity to opt out of the Class.  *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270–71 (2d Cir. 2006) (no abuse of discretion in not allowing a second opt-out); *see also Lowery v. City of Albuquerque*, No. CIV 09-0457 JB/WDS, 2013 WL 1010384, at \*32 (D.N.M. Feb. 27, 2013) citing *Moulton v. United States Steel Corp.,* 581 F.3d 344, 354 (6th Cir. 2009) ("The decision whether to reject a proposed settlement because class members were not given the opportunity to opt out is purely discretionary for the court, and courts 'are not compelled to' reject a settlement on this basis."); *see also In re Healthsouth Corp. Sec. Litig.,* 334 F.App'x 248, 255 n. 12 (11th Cir. 2009) (the decision to permit a second opt out "is wholly within the discretion of the district court.").  There should be no second opt out right here.

### C.    Stage of Proceedings and Amount of Discovery

The third *Grinnell* factor considers the settlements in light of the stage of the proceedings, with consideration of the amount of investigation, discovery and motion practice conducted at the time of the settlement.  This factor weighs heavily in favor of approving the settlements.  Here, the plaintiff has "'sufficient information to make an informed judgment on the reasonableness of the settlement proposal.'"  *See In re Excess Value Ins. Coverage Litig.*, No. M-21-84RMB, 2004 WL 1724980, at \*12 (S.D.N.Y. July 30, 2004) (*citing Diamond v. Fogelman*, No. CV–90–0900, 1992 WL 167271, at \*4 (E.D.N.Y. June 26, 1992); *Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 114 (S.D.N.Y. 1999) (same). All fact and expert discovery, as well as pre-trial motion practice have been completed.  This factor strongly supports preliminary approval of the settlements.

### D.      Risk of Establishing Liability and Damages

When evaluating the fourth and fifth *Grinnell* factors (the risk of establishing liability and damages), "the Court should balance the benefits afforded to the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation." *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *7 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F.App'x 73 (2d Cir. 2015).  While the Class is confident in its litigation positions, it recognizes that risks associated with establishing liability and damages are present here and that there is a risk of no recovery at all if the case proceeded against the Officer and Director Defendants.  With respect to liability, the Officer and Director Defendants have taken the position that they were not aware of Reger's and Gilbertson's scheme, and conducted serious investigations to ferret out who manipulated Dakota Plains stock.  Even if the jury were to agree with the Class, the Officer and Director Defendants would almost certainly raise their position with the Second Circuit in the event of an adverse verdict.  *See Park*, 2008 WL 4684232, at *4 ("The complexity of Plaintiff's claims *ipso facto* creates uncertainty . . . . A trial on these issues would likely be confusing to a jury.").  *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *10 (S.D.N.Y. Nov. 7, 2007) citing *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744–45 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35, 38 (2d Cir. 1986).  Accordingly, the fourth and fifth *Grinnell* factors weigh in favor of preliminary approval.

### E.      Risk of Maintaining the Class

The sixth *Grinnell* factor looks to the risks of maintaining a class action through trial. While the Class has previously been certified and a motion for decertification denied, the Court can revisit certification at any time prior to judgment.  Rule 23(c)(1)(C).  Because there is some

21

risk that yet another effort to decertify could arise, this factor weighs in favor of preliminary approval.

### F.    Ability of Defendant to Withstand Greater Judgment

The seventh *Grinnell* factor is particularly important given that Dakota Plains went bankrupt and all of the settling defendants are individuals.  As to the Officer and Director Defendants, to proceed through a trial and possible appeals would dramatically diminish the available insurance proceeds.  Further, there is a real possibility that the officers and directors who may be deemed culpable by a jury would have no individual ability to satisfy any significant judgment.  And, as noted, Gilbertson has no significant personal assets in light of his large payments to the government and his related ongoing obligations.  This factor supports preliminary approval of the Settlements.

### G.    Reasonableness of the Settlements in Light of Attendant Risks of Litigation

The reasonableness of the Settlements and attendant risks of litigation (*Grinnell* factors eight and nine) likewise support approval.  "'[T]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . . .'"  *Wal-Mart Stores, Inc.*, 396 F.3d at 119 (quoting *Newman v. Stein*,  464 F.2d 689, 693 (2d Cir. 1972)).  "'[T]he judge will not be reversed if the appellate court concludes that the settlement lies within that range.'"  *Id.* (quoting *Newman*, 464 F.2d at 693).  The Class's damages expert has estimated likely recoverable damages as approximately $66 million before pre-judgment interest.  The $13,950,000 cash settlement from the Officer and Director Defendants is more than 20% of these estimated damages, an excellent recovery under the circumstances.

### III.    THE MANNER AND FORM OF NOTICE SHOULD BE APPROVED

#### A.    The Manner of Notice Satisfies Rule 23(e)(1)

If the Court grants preliminary approval, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(e)(1). Notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(c)(2)(B).

The notice plan set forth in the settlement agreements calls for the Settlement Notice to be sent by direct mail to those Class members that can be identified by reasonable means. *See also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974) (recognizing that direct mail is "best notice practicable" where names and addresses of class members are "easily ascertainable").[19] Notice plans that include direct mailings and publication notice are frequently approved in class action cases. *See, e.g.*, *Wal-Mart Stores*, 396 F.3d at 105; *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *5 (S.D.N.Y. Apr. 26, 2016). Accordingly, it is respectfully requested that the Court approve the plan for dissemination of the Settlement Notice.

#### B.    The Form of Notice Satisfies Rule 23(c)(2)(B)

As discussed, each of the requirements of Rule 23(c)(2)(B) is satisfied by the Settlement Notice proposed here.[20] "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-*

---

[19] Consistent with the Notice of Pendency previously disseminated in this Action, a summary notice is also proposed to be published in the *Wall Street Journal* and *Minneapolis Star Tribune*, as well as on the *PR Newswire*.

[20]    In addition, as required by the PSLRA, 15 U.S.C. §78u-4(a)(7)(A-D) , the Settlement Notice states: (i) the amount proposed to be distributed in the aggregate and on a per share basis; (ii) the Settling Parties' disagreement as to the amount of damages recoverable; and (iii) the amount of fees and costs on a per share basis.

*Mart Stores*, 396 F.3d at 113-14.  "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  *Id.* at 114.  Such is the case here.[21]

## IV.  PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Entry of the proposed Preliminary Approval Order would, among other things, direct notice of the proposed settlement to all members of the Class.  As such, the Preliminary Approval Order sets forth a proposed schedule for mailing and publication of the Settlement Notice and Publication Notice, and deadlines for submitting claims and/or objecting to the proposed settlements, as well as a provision to set the final fairness hearing on a date and time convenient to the Court.

Class Counsel requests the schedule set forth below.

| Event | Deadline |
| --- | --- |
| Notice of Proposed Settlements and Copy of Proof of Claim Mailed to Class Members (PAO, ¶4(b)) | No later than 15 business days after entry of the PAO |
| Summary Notice published (PAO, ¶4(c)) | No later than 10 days after the mailing of the Settlement Notice |
| Class Counsel shall file with the Court proof, by affidavit or declaration, of such mailing and publication (PAO, ¶4(d)) | No later than 7 days prior to Final Settlement Hearing |
| Notice Packet shall be posted to the website www.dakotaplainssecuritieslitigation.com (PAO, ¶4(e)) | No later than 5 days after the mailing of the Notice |

---

[21]   The Angeion Group was previously approved by the Court as the administrative agent directed to handle dissemination of the Notice of Pendency and should act in a similar capacity with regard to the Settlements.

| Final Approval Hearing | To be determined by the court |
|---|---|
| Deadline to file papers in support of final approval of Settlements and application for attorneys' fees, reimbursement of litigation expenses, and an award to Class Representative, and final application for approval of the Plan of Allocation (PAO, ¶23) | No later than 28 calendar days before the Final Approval Hearing |
| Deadline for Objections to the Settlements, Plan of Allocation, Attorneys' Fees and Litigation Expenses (PAO, ¶10) | No later than 14 calendar days before the Final Approval Hearing |
| Deadline to file reply brief, if necessary (PAO, ¶23) | No later than 7 calendar days before the Final Approval Hearing |
| Deadline for submitting Proof of Claim forms (PAO, ¶7) | Postmarked no later than 60 calendar days after the Notice |

## **CONCLUSION**

For all the foregoing reasons, the Class Representative respectfully requests that the

Court (i) preliminarily approve the D&O Settlement and the Gilbertson Settlement; (ii) approve

the Settlement Notice; and (iii) schedule a date and time for the Final Approval Hearing to

consider final approval of the Settlements and related matters.

Dated:  May 23, 2022

Respectfully submitted,

**CERA LLP**

By:*/s/Solomon B. Cera*
Solomon B. Cera
Pamela A. Markert
Kenneth A. Frost
595 Market Street, Suite 1350
San Francisco, CA 94105
Telephone: (415) 777-2230
Email: scera@cerallp.com
Email: pmarkert@cerallp.com
Email: kfrost@cerallp.com

*Class Counsel*

**MOLOLAMKEN LLP**
Steven F. Molo
Robert K. Kry
Alex C. Eynon
Mark W. Kelley
430 Park Avenue, 6th Floor

New York, NY 10022
Telephone: (212) 607-8170
Email: smolo@mololamken.com
Email: rkry@mololamken.com
Email: aeynon@mololamken.com
Email: mkelley@mololamken.com

**ABRAHAM, FRUCHTER & TWERSKY, LLP**
Jeffrey S. Abraham
Lawrence D. Levit
450 Seventh Avenue, 38th Floor
New York, NY 10123
Tel: (212) 279-5050
Email: jabraham@aftlaw.com
Email: llevit@aftlaw.com

*Attorneys for Plaintiff and on Behalf
of All Others Similarly Situated*