UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JON D. GRUBER, Individually And On    :    No. 16-cv-09727-JSR
Behalf Of All Others Similarly Situated,    :
                                               :
                     Plaintiff,    :    Hon. Jed S. Rakoff
                                                :
        v.    :
                                                :
RYAN R. GILBERTSON, et al.,    :
                                                :
                   Defendants.    :
                                                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENTS WITH THE OFFICER AND
DIRECTOR DEFENDANTS AND DEFENDANT RYAN R. GILBERTSON**

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ....................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.................................................4

I.      THE ALLEGATIONS ..................................................................................4

II.     DISCOVERY AND SUMMARY JUDGMENT.........................................6

III.    CERTIFICATION OF THE CLASS AND NOTICE..............................7

IV.     JUDICIAL REASSIGNMENT, TRIAL DATE, AND SETTLEMENT
        NEGOTIATIONS ........................................................................................8

ARGUMENT .................................................................................................................9

V.      THE PROPOSED SETTLEMENTS SHOULD BE FINALLY APPROVED...................9

        A.     The Settlements Are Fair, Reasonable, and Adequate...........................9

        B.     The Settlements Are Substantively Fair Under Rule 23(e)(2)(C)-(D) and the
               *Grinnell* Factors ...........................................................................12

               1.     Complexity, Expense, and Likely Duration of the Litigation..................13

               2.     Reaction of the Class ...............................................................15

               3.     Stage of Proceedings and Amount of Discovery ......................................16

               4.     Risk of Establishing Liability and Damages............................................16

               5.     Risk of Maintaining the Class....................................................18

               6.     Ability of Defendant to Withstand Greater Judgment .............................18

               7.     Reasonableness of the Settlements in Light of the Best Possible
                      Recovery and the Attendant Risks of Litigation......................................19

        C.     The Notice Satisfies Rule 23 and Due Process....................................21

VI.     THE PLAN OF ALLOCATION SHOULD RECEIVE FINAL APPROVAL ................22

CONCLUSION.............................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arbuthnot v. Pierson*,
    607 F.App'x 73 (2d Cir. 2015) ......................................................................... 16

*Athale v. Sinotech Energy Ltd.*,
    2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013) ................................................ 17

*Cagan v. Anchor Sav. Bank FSB*,
    1990 WL 73423 (E.D.N.Y. May 22, 1990) ..................................................... 20

*Charron v. Pinnacle Grp. NY LLC*,
    874 F.Supp.2d 179 (S.D.N.Y. 2012) ............................................................... 14

*Christine Asia Co., Ltd. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ...................................... 12, 20, 22

*City of Detroit v. Grinnell*,
    495 F. 2d 448 (2d Cir. 1974) .......................................................................... 13

*City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*,
    954 F. Supp. 2d 276 (S.D.N.Y. 2013) ..................................................... *passim*

*City of Providence v. Aeropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014) ............................................. 16, 18

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) .............................................................................. 9, 11

*Dial Corp. v. News Corp.*,
    317 F.R.D. 426 (S.D.N.Y. 2016) .................................................................... 15

*Diamond v. Fogelman*,
    1992 WL 167271 (E.D.N.Y. June 26, 1992) .................................................. 20

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) .............................................................................. 13

*Gruber v. Gilbertson*,
    2018 WL 1418188 (S.D.N.Y. Mar. 20, 2018) .................................................. 2

*Gruber v. Gilbertson*,
    2019 WL 4439415 (S.D.N.Y. Sept. 17, 2019) ..................................... 2, 7, 11

*Gruber v. Gilbertson*,
    2019 WL 4458956 (S.D.N.Y. Sept. 17, 2019 .................................................. 2

*Gruber v. Gilbertson*,
    2021 WL 2482109 (S.D.N.Y. June 17, 2021) .............................................. 3, 7

*In re Advanced Battery Techs, Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................. 23

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) ............................................. 21

*In re American Int'l Grp., Inc. Sec. Litig.*,
2010 WL 5060697 (S.D.N.Y. Dec. 2, 2010) ................................................ 17

*In re Excess Value Ins. Coverage Litig.*,
2004 WL 1724980 (S.D.N.Y. July 30, 2004) ............................................... 16

*In re Facebook, Inc.*,
822 F. App'x 40 (2d Cir. 2020) ................................................................... 15

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018) .......................................................... 15

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ................................................................. 11

*In re Gilat Satellite Networks, Ltd.*,
2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ............................................. 21

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................... 13, 22, 23

*In re GSE Bonds Antitrust Litig.*,
2020 WL 3250593 (S.D.N.Y. June 16, 2020) ......................................... 10, 15

*In re Hi-Crush Partners L.P. Sec. Litig.*,
2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .............................................. 10

*In re Interpublic Sec. Litig.*,
2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ............................................... 21

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ................................................... 20

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
2007 WL 4526593 (S.D.N.Y. Dec. 20, 2007) .............................................. 23

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ................................................................. 22

*In re NASDAQ Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................. 18

*In re PaineWebber Ltd. P'ships Litig.*,
147 F.3d 132 (2d Cir. 1998) ........................................................................ 10

iii

*In re Painewebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd,* 117 F.3d 721 (2d Cir. 1997)............................ 12

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) .................................................................... 13

*In re Pfizer Inc. S'holder Deriv. Litig.*,
  780 F. Supp. 2d 336 (S.D.N.Y. April 29, 2011) ................................................. 16

*In re PPDAI Grp. Inc. Sec. Litig.*,
  2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ...................................................... 23

*In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.*,
  2011 WL 13071020 (S.D.N.Y. Aug. 5, 2011) ................................................... 21

*In re Top Tankers, Inc. Sec. Litig.*,
  2008 WL 2944620 (S.D.N.Y. Jul. 31, 2008) ............................................... 14, 22

*In re Veeco Instruments, Inc. Sec. Litig.*,
  2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) .................................................... 12

*In re Warner Chilcott Ltd. Sec. Litig.*,
  2008 WL 51109094 (S.D.N.Y. Nov. 20, 2008)................................................... 10

*Jander v. Ret. Plans Comm. of IBM,*
  2021 WL 3115709 (S.D.N.Y. Jul. 22, 2021) ........................................... *passim*

*Newman v. Stein,*
  464 F.2d 689 (2d Cir. 1972)........................................................................ 19

*Okl. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
  2021 WL 76328 (S.D.N.Y. Jan. 7, 2021) ..................................................... 9, 12

*Park v. The Thomson Corp.*,
  2008 WL 4684232 (S.D.N.Y. Oct. 22, 2008) ................................................... 14

*Pennsylvania Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*,
  318 F.R.D. 19 (S.D.N.Y. 2016) .................................................................... 17

*Precision Assocs. v. Panalpina World Transport (Holding Ltd.*,
  2013 WL 4525323 (E.D.N.Y. Aug. 27, 2013)................................................... 21

*Rosi v. Aclaris Therapeutics, Inc.*,
  2021 WL 5847420 (S.D.N.Y. Dec. 9, 2021) .................................................... 22

*U.S. v. Gilbertson,*
  970 F.3d 939 (8th Cir. 2020) ....................................................................... 4

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)................................................................ 9, 10, 15, 19

iv

**Statutes**

15 U.S.C. §13(d) ........................................................................................................ 5

15 U.S.C. §16(a) ........................................................................................................ 5

15 U.S.C. §78j(b) ....................................................................................................... 3

15 U.S.C. §78m(d) ..................................................................................................... 5

15 U.S.C. §78p(a) ...................................................................................................... 5

15 U.S.C. §78t(a) ....................................................................................................... 3

15 U.S.C. §78t-1 ........................................................................................................ 3

15 U.S.C. §78u-4(b)(3)(B) ........................................................................................ 6

17 C.F.R. §240.10b-5 ................................................................................................. 3

Securities Exchange Act of 1934

    Section 10(b) ................................................................................... 3, 6, 9

    Section 20(a) ...................................................................................... 3, 9

    Section 20A ........................................................................................... 3

**Other Authorities**

Manual for Complex Litigation, Third, § 30.42 (1995) ........................................... 11

**Rules**

Federal Rule of Civil Procedure

    Rule 23 ................................................................................................ 22

    Rule 23(a) .............................................................................................. 2

    Rule 23(b)(3) .......................................................................................... 2

    Rule 23(c)(1)(C) .................................................................................... 18

    Rule 23(c)(2)(B) ............................................................................... 2, 21

    Rule 23(c)(2)(B)(v) ............................................................................ 2, 7

    Rule 23(e) .......................................................................................... 1, 9

    Rule 23(e)(2) ................................................................................... 9, 10

    Rule 23(e)(2)(A) .................................................................................. 10

Rule 23(e)(2)(B).............................................................................................. 10, 11

Rule 23(e)(2)(C)(i)........................................................................................... 13, 14

Rule 23(e)(2)(C)(ii)........................................................................................... 23

Rule 23(e)(2)(D) ........................................................................................ 12, 13, 23

Rule 23(f) ........................................................................................................ 18

Rule 50(a)......................................................................................................... 12

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure,[1] Plaintiff and Class Representative Jon D. Gruber, individually and on behalf of the Class ("Plaintiffs"),[2] respectfully submits this memorandum of law in support of the motion for final approval of classwide settlements of this securities fraud class action (the "Action") with (1) defendants Gabriel G. Claypool, Timothy R. Brady, Craig M. McKenzie, Paul M. Cownie, David J. Fellon, Gary L. Alvord, Terry H. Rust, and James L. Thornton (the "Officer and Director Defendants"), and (2) defendant Ryan R. Gilbertson ("Gilbertson").[3] Plaintiffs seek entry of the two proposed final judgments, which have been agreed to in form by the Settling Parties.[4] ECF 461-6, 461-12. Plaintiffs also seek final approval of the proposed Plan of Allocation.

## PRELIMINARY STATEMENT

For more than five (5) years, Plaintiffs have aggressively prosecuted this unusual and highly complex securities fraud class action. Two classwide settlements are now before the Court for final approval: one resolving all claims brought in the Action against the Officer and Director Defendants (the "D&O Settlement"); and the other resolving all claims brought in the Action against defendant Gilbertson ("Gilbertson Settlement"). Submitted herewith in further

---

[1]   All references hereafter to "Rule __" are to the Federal Rules of Civil Procedure.

[2]   The Class is defined as all persons and entities who purchased or otherwise acquired Dakota Plains Holdings, Inc.'s publicly traded common stock between March 23, 2012 and August 16, 2016 (the "Class Period"). ECF 253 at 20. All references hereafter to "Dakota Plains" or the "Company" refer to Dakota Plains Holdings, Inc.

[3]   The Court preliminarily approved these proposed settlements by orders dated June 5, 2022 (ECF 474) and June 17, 2022 (ECF 503). The settlement agreements are attached as Exhibits 1 and 2, respectively, to the Declaration of Solomon B. Cera in Support of Motion for Preliminary Approval of Class Action Settlements with the Officer and Director Defendants and Defendant Ryan R. Gilbertson, filed May 23, 2022. ECF 461-1, 461-7.

[4]   "Settling Parties" refers, collectively, to Plaintiffs, the Officer and Director Defendants, and Gilbertson.

support of final approval is the Declaration of Solomon B. Cera in Support of Plaintiffs' Motion

for Final Approval of Class Action Settlements with the Officer and Director Defendants and

Defendant Ryan R. Gilbertson; and in Support of Plaintiffs' Counsel's Motion for an Award of

Attorneys' Fees and Reimbursement of Litigation Expenses ("Cera Decl."), which sets forth in

detail the history of the Action leading to the settlements.

The Settling Parties intensively litigated the sufficiency of the complaint for over a two

(2) year period, culminating in the filing of the 135-page Fourth Amended Complaint ("FAC").

ECF 271.[5]  In connection therewith, Class Counsel had closely monitored Dakota Plains'

bankruptcy case and Gilbertson's criminal case.  ¶19-21, 39.[6]  Once the pleadings were settled,

substantial fact and expert discovery was taken.  ¶41-49, 53.  Class certification was vigorously

litigated, resulting in the Court's certification of a Class on September 17, 2019 pursuant to

Rules 23(a) and (b)(3).  *Gruber v. Gilbertson*, 2019 WL 4439415, at *1 (S.D.N.Y. Sept. 17,

2019).  ECF 253.  An effort to have the Second Circuit immediately review the class certification

order was denied.  ECF 285.  Thereafter, pursuant to the Court's order and Rule 23(c)(2)(B), the

Notice of Pendency of Class Action ("Notice of Pendency") was disseminated to Class members

on September 9, 2021.  ECF 403.  The Notice of Pendency included an opportunity for Class

members to exclude themselves pursuant to Rule 23(c)(2)(B)(v).  ECF 403 at Ex. A.  Not one of

the thousands of persons and entities who received the Notice of Pendency chose to opt out.

ECF 403.

---

[5]   The Court's orders on key motions to dismiss are found at *Gruber v. Gilbertson*, 2018 WL
1418188 (S.D.N.Y. Mar. 20, 2018) (ECF 119) and *Gruber v. Gilbertson*, 2019 WL 4458956
(S.D.N.Y. Sept. 17, 2019).  ECF 252.

[6]   Unless otherwise stated, references herein to "¶_" and "Ex. _" are to paragraphs within, and
exhibits to, the Cera Decl.

A combined motion for summary judgment by all defendants pursuant to Rule 56 was filed on September 21, 2020 challenging the sufficiency of the evidence adduced to support the Class claims under Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78j(b), 78t(a), and 78t-1, and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.  ECF 325.  The Court, per Judge Pauley, following briefing and oral argument, denied Defendants' motion.  *Gruber v. Gilbertson*, 2021 WL 2482109 (S.D.N.Y. June 17, 2021).  ECF 387.

Following the conclusion of fact and expert discovery and resolution of all pretrial motions, and as the trial date approached, Plaintiffs and the Officer and Director Defendants engaged in settlement discussions.  ¶56.  Plaintiffs reached an agreement with these defendants on April 28, 2022, assisted by retired former Chief Magistrate Judge of the Northern District of California, the Hon. Edward A. Infante (Ret.) acting as mediator, to settle the Class claims against them for a cash payment of $13,950,000.[7]  ¶¶2, 56.  In addition, the Officer and Director Defendants agreed to provide cooperation at the trial against defendant Michael L. Reger ("Reger").  ¶¶2, 56.  Their cooperation included three of the defendants sitting for interviews, with two (Claypool and McKenzie) ultimately testifying at trial.  ¶2.  On May 16, 2022, Plaintiffs also reached an agreement with Gilbertson to settle the Class claims against him in consideration for his cooperation at trial, which Gilbertson provided.  ¶¶2, 57.  Gilbertson and his counsel demonstrated to Plaintiffs' counsel that he had no ability to fund a cash settlement of the Class claim.  ¶¶2, 57.  While the Gilbertson Settlement involves cooperation only, it nonetheless

---

[7]   Following entry of the Preliminary Approval Order (ECF 474, 503), the D&O settlement consideration was timely deposited into an interest-bearing escrow account at Heritage Bank of Commerce, the Court-appointed escrow agent.

merits final approval.  Gilbertson is presently serving a 12-year prison sentence for his role in the

fraud.  *See U.S. v. Gilbertson*, 970 F.3d 939 (8th Cir. 2020).  He has paid more than $15 million

in restitution to the United States, and owes a significant fine.  ¶40.  Thus, Gilbertson sufficiently

established his inability to fund a cash settlement of this Action.  ¶¶2, 57.  Nonetheless,

Gilbertson's testimony likely assisted the jury in reaching its trial verdict which was in favor of

the Class.  Because Gilbertson fulfilled his obligations by cooperating with Plaintiffs, the

Gilbertson Settlement also merits final approval.

**FACTUAL AND PROCEDURAL BACKGROUND**

## I.    THE ALLEGATIONS

This unusual and factually intricate and complex case has a lengthy history.  It concerns

the conduct of ten (10) individual defendants, all either officers, directors, or founders of Dakota

Plains, and relates to allegedly fraudulent omissions for which Plaintiffs contend the Officer and

Director Defendants and Gilbertson were legally responsible.  ¶¶43-81.

Defendants Reger and Gilbertson originally founded Dakota Plains as a privately-held

corporation, ostensibly run by their fathers as the Company's first officers and directors, but

where all critical decision-making was made by them.  FAC ¶¶7, 41, 82, 83, 90, 95, 157, 168.

The Company was primarily involved, through various joint ventures established and organized

by Reger and Gilbertson, in the business of transloading oil from the Williston Basin of North

Dakota to refineries.  FAC ¶¶5, 39, 40, 144, 179.

Reger and Gilbertson leveraged their respective backgrounds and worked together to

found and control several oil companies (including Northern Oil & Gas, Inc.).  With respect to

Dakota Plains, they caused the Company to issue $3.5 million of 12% senior promissory notes,

$5.5 million of 12% junior promissory notes, and, ultimately, consolidated those notes to include

4

an "embedded derivative."  The embedded derivative, also sometimes referred to as the "Additional Payment Provision" or "APP," applied to any going-public event including a reverse merger.  FAC ¶¶9, 101.  The APP required the Company to issue additional debt based on the average price of the Company's shares during the first 20 days of public trading, if the price exceeded $2.50 per share.  FAC ¶¶9, 104.

Dakota Plains was taken public on March 23, 2012 via a reverse merger with a non-operating Utah-based tanning salon company that had maintained a public listing.  Based on Reger's and Gilbertson's alleged scheme, the stock price increased from approximately $0.30 to reach almost $12.00 per share in the first 20 days of trading, resulting in a $32.85 million debt owed to noteholders of the Company, where more than 70% of the notes were purchased and beneficially owned by Reger and Gilbertson.

The Company, a small entity with only a handful of employees, had limited revenues, was never profitable, and did not recover from this massive debt burden, ultimately descending into bankruptcy in December 2016.

Reger and Gilbertson each owned far more than 5% of the Company's common shares, founded and set up the Company's structure, made its key decisions, directed its core business operations, and benefitted from related-party transactions.  Yet they never reported their ownership, as required by §§13(d) and 16(a) of the Exchange Act, 15 U.S.C. §§78m(d), p(a).  Reger and Gilbertson used that concealed ownership and control to cause the Company to issue

them the promissory notes with the lucrative APP provision, and then manipulated the Company's stock price to maximize the payout under that provision.[8]

The fundamental theory of the case is that the Class members purchased Dakota Plains stock at artificially inflated prices tied to the omissions of material fact alleged in the FAC. Because Reger and Gilbertson were the subject of significant negative press, including in *Barron's* and *Twin Cities Business Magazine*, regarding their management practices at Northern Oil, they hid their ownership of more than 5% of its stock and their resulting control of Dakota Plains, which were material facts required to be disclosed to the investing public. The Officer and Director Defendants were alleged, *inter alia*, to have known of the greater than 5% positions of Reger and Gilbertson, and to have learned of their roles in the stock manipulation scheme, yet made no disclosure thereof, in violation of Section 10(b) of the Exchange Act.

## II.    DISCOVERY AND SUMMARY JUDGMENT

This case involved a highly sophisticated and factually complex scheme to conceal and carry out the securities fraud that harmed thousands of Dakota Plains' shareholders. Following resolution of defendants' motions to dismiss, and the lifting of the PSLRA's mandatory stay of discovery,[9] extensive discovery was conducted in this Action. ¶37. Beginning in 2017, Plaintiffs obtained Company documents from the bankruptcy trustee for Dakota Plains. ¶21. From April 2018 through January 2020, Class Counsel engaged in extensive document discovery efforts from defendants and numerous third parties, including the SEC and DOJ, which resulted in document productions in excess of one million pages. ¶¶41, 45. These documents were

---

[8]    Gilbertson was ultimately indicted, stood trial, and was convicted, leading to a 12-year sentence, and an order to pay a $2 million fine and $15,135,361 in restitution for his involvement in the 20 day stock manipulation scheme. FAC ¶¶162, 163, 164.

[9]    15 U.S.C. §78u-4(b)(3)(B).

carefully organized and analyzed.  ¶41.  In addition, this case has involved substantial expert

work, including initial and rebuttal expert reports authored by two (2) experts for Plaintiffs and

four (4) for the defense.  ¶¶48-53.  Counsel took or defended two dozen depositions.  ¶¶43, 53.

In filings totaling more than 5,250 pages, the parties vigorously litigated defendants' September

21, 2020 motion for summary judgment which was argued to Judge Pauley.  ¶33.  The summary

judgment motion was denied in its entirety.  *See Gruber v. Gilbertson*, 2021 WL 2482109

(S.D.N.Y. June 17, 2021); ECF 387 at 1, 32.[10]

## III.    CERTIFICATION OF THE CLASS AND NOTICE

Following full briefing and oral argument, the Court granted Plaintiffs' motion for class

certification on September 17, 2019.  *Gruber v. Gilbertson*, 2019 WL 4439415 (S.D.N.Y. Sept.

17, 2019); ECF 253 at 1.  The Court certified a class of investors who purchased or otherwise

acquired Dakota Plains common stock during the Class Period, excluding defendants and their

family members.  *Id.*

As authorized by the Court on August 6, 2021 (ECF 396), a Notice of Pendency of Class

Action ("Notice of Pendency"), which included a Rule 23(c)(2)(B)(v) opt-out right, was

disseminated to Class members on September 9, 2021 and a summary notice was published in

the *Wall Street Journal* and the *Minneapolis Star Tribune* on September 13, 2021.  ECF 403.

There were no requests to opt out.  ECF 403.  On June 27, 2022, the Settlement Notice was

disseminated to potential Class members.  *See* Declaration of Brittany M. Cudworth Re: (a)

Mailing of Notice of Proposed Partial Settlements, Settlement Fairness Hearing, and Motion for

---

[10]   The Court (per Judge Pauley), caused this decision to be published on the Court's website as
a "Ruling [] of Special Interest."  *See* https://www.nysd.uscourts.gov/cases/rulings-of-special-
interest?case_name=gruber (last visited Sept. 1, 2022).

Attorneys' Fees and Reimbursement of Litigation Expenses; and (b) Publication of Summary

Notice at ¶4 ("Cudworth Decl."), filed concurrently herewith.  It was also posted to the website,

https://dakotaplainssecuritieslitigation.com, on June 22, 2022.  Cudworth Decl. at ¶11.  To date,

there have been no objections to the proposed Settlements.[11]  Cudworth Decl. at ¶14.

## IV.    JUDICIAL REASSIGNMENT, TRIAL DATE, AND SETTLEMENT NEGOTIATIONS

Following reassignment of the case after the untimely passing of Judge Pauley, the Court

promptly set a February 3, 2022 trial date, which was subsequently continued to June 1, 2022,

and then to June 6, 2022.  ¶¶3, 35, 55, 56.

On April 27, 2022, with trial looming, the Class and the Officer and Director Defendants

participated in a voluntary mediation conducted by Judge Infante.  ¶¶4, 56.  They submitted

detailed mediation statements and conducted negotiations through him.  ¶56.  Plaintiffs and the

Officer and Director Defendants, with the assistance of the mediator, reached an agreement to

settle the claims for $13,950,000 in cash.  ¶56.  In light of the risks of trial including the need to

establish all elements of the Section 10(b) claim, including scienter, against eight (8) individuals

with differing roles and different levels of involvement and access to information, as well as

concerns about the diminishing availability of "wasting" insurance coverage, the substantial cash

recovery of $13,950,000 reflected in the D&O Settlement is a significant achievement.  ¶56.  It

merits final approval.

The Gilbertson Settlement arose from intense negotiations.  As noted, Gilbertson is

impecunious, having paid more than $15 million to the government and owing still more.  ¶57.

Gilbertson provided a sworn personal financial statement itemizing his assets and liabilities that

---

[11]    The objection deadline is September 13, 2022, and Plaintiffs will respond on September 27, 2022 to any objections.  *See* ECF 474.

convinced Class Counsel that he lacked the resources to pay any meaningful judgment.  ¶57.

Rather than pursuing Gilbertson for non-existent funds, the Class has instead benefitted from his

cooperation and trial testimony.  ¶2.  Indeed, the jury returned a verdict against Reger for

violations of Section 10(b) and Section 20(a).  ECF 483.  The Gilbertson Settlement should be

finally approved.

## ARGUMENT

This Court should grant final approval of the Settlements and enter the two agreed upon

Final Judgments.  ECF 461-6, 461-12.  Further, this Court should finally approve the Plaintiffs'

proposed Plan of Allocation of the settlement funds.

## V.    THE PROPOSED SETTLEMENTS SHOULD BE FINALLY APPROVED

### A.    The Settlements Are Fair, Reasonable, and Adequate

Rule 23(e) requires court approval for class action settlements.  *See* Rule 23(e)(2).  "A

court determines a settlement's fairness by looking at both the settlement's terms and the

negotiating process leading to settlement."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d

96, 116 (2d Cir. 2005) (citation omitted).  As the proposed Settlements satisfy both procedural

and substantive requirements, they are "fair, reasonable, and adequate" and should be finally

approved.  *Id.*

As explained in *Jander v. Ret. Plans Comm. of IBM,* 2021 WL 3115709, at *2 (S.D.N.Y.

Jul. 22, 2021), "because a class action 'may be settled . . . only with the court's approval,'

(Fed.R.Civ.P. 23(e)), 'a court must "carefully scrutinize[] the settlement to ensure its fairness,

adequacy and reasonableness, and that it was not the product of collusion."' (quoting *Okla.*

*Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 2021 WL 76328, at *1 (S.D.N.Y. Jan. 7,

2021) (quoting *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001)).  *See also In re GSE*

*Bonds Antitrust Litig.*, 2020 WL 3250593, at *2 (S.D.N.Y. June 16, 2020) (Rakoff, J.) ("to grant final approval . . . under [Rule] 23(e)(2), the Court must find 'that it is fair, reasonable, and adequate'").  Further, there is a "'strong judicial policy in favor of settlements, particularly in the class action context.'" *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (quoting *In re Painewebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)).  *See also In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 51109094, at *1 (S.D.N.Y. Nov. 20, 2008) ("The settlement of complex class action litigation is favored by the Courts.") (citation omitted).  Applying these principles, the Settlements merit this Court's final approval.

The proposed Settlements are procedurally fair.  Rule 23(e)(2) requires in part that the Court find that "the class representatives and class counsel have adequately represented the class" and that "the proposal was negotiated at arm's length."  Rule 23(e)(2)(A)-(B).  That is the case here.  The proposed Settlements are entitled to a presumption of reasonableness given that the Class Representative, who has actively supervised the Action and endorsed the Settlements, is a sophisticated investor who successfully operated an investment fund for 25 years.  *See In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *5 (S.D.N.Y. Dec. 19, 2014) ("A settlement reached 'under the supervision and with the endorsement of a sophisticated institutional investor . . . is entitled to an even greater presumption of reasonableness.'") (citation omitted).  Moreover, a distinguished retired jurist mediated the D&O Settlement.

Under Rule 23(e)(2)(A), "the essential question in determining whether the Settlement complies with the adequate representation doctrine is whether the interests that were served by the Settlement were compatible with" those of all settlement class members "when plaintiffs negotiated [the] release . . ." *Wal-Mart Stores, Inc.*, 396 F.3d at 110.  As an open-market

purchaser of Dakota Plains stock during the Class Period, the Class Representative has the exact same interest as all Class members in obtaining the best possible recovery.

Moreover, Plaintiffs have been represented by highly qualified counsel as recognized by Judge Pauley in appointing Class Counsel.[12]  Class Counsel, working together with co-counsel, MoloLamken LLP and Abraham, Fruchter & Twersky LLP, have ably represented the Class.

The Second Circuit recognizes that a "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'"  *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (quoting Manual for Complex Litigation, Third, § 30.42 (1995)).  Again, that is precisely what occurred here.

Consistent with Rule 23(e)(2)(B), the D&O Settlement was reached only after extensive negotiations overseen by a nationally recognized mediator and former Chief Magistrate Judge of the Northern District of California.  *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (proposed settlement entitled to "presumption of fairness" in part as it was "facilitated by a respected mediator").  *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("mediator's involvement . . . helps to ensure that the proceedings [are] free of collusion and undue pressure").  The fairness presumption applies.  The mediation occurred after all fact and expert discovery and substantially all pretrial motions had been completed, briefed, and resolved.  ¶¶56, 62.

---

[12]    *See Gruber v. Gilbertson*, 2019 WL 4439415, at *5 (S.D.N.Y. Sept. 17, 2019) (Pauley, J.). ECF 253 at 11.  Class Counsel acted in the best interests of the Class by adding highly qualified trial counsel to the trial team, Steven F. Molo, Esq. and MoloLamken LLP.

Plaintiffs' counsel and counsel for Gilbertson also negotiated in good faith, and were fully informed as to Gilbertson's financial condition.  ¶¶2, 57.  Gilbertson and his counsel satisfied Plaintiffs' Counsel that he had no money left to satisfy a judgment.  ¶¶2, 57. Nonetheless, counsel determined that the cooperation provisions of the Gilbertson Settlement, which were fulfilled, provided significant value to the Class.  And the result of the trial has confirmed this.  This Court itself relied on Gilbertson's trial testimony in denying Reger's Rule 50(a) motion.  *See* Trial Tr. 949:3-15.  Moreover, courts afford counsel's opinion considerable weight because they are closest to the facts and risks associated with the litigation itself. *Lexmark Int'l, Inc.*, 2021 WL 76328, at *1 ("'"great weight'" is accorded the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.'") (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd,* 117 F.3d 721 (2d Cir. 1997) (per curiam)).  *See also In re Veeco Instruments, Inc. Sec. Litig.*, 2007 WL 4115809, at *12 (S.D.N.Y. Nov. 7, 2007) (in negotiation context, "courts consider the opinion of experienced counsel with respect to the value of the settlement") (citation omitted). In counsel's opinion, Gilbertson's cooperation provided value to the Class, and his settlement should be finally approved.

**B.**      **The Settlements Are Substantively Fair Under Rule 23(e)(2)(C)-(D) and the *Grinnell* Factors**

To determine whether a settlement is substantively fair, a court considers the factors set forth in Rule 23(e)(2)(C).  The Court also evaluates whether "the proposal treats class members equitably relative to each other."  Rule 23(e)(2)(D).  Further, the Court analyzes substantive sufficiency under the nine *Grinnell* factors.  *See Christine Asia Co., Ltd. v. Yun Ma,* 2019 WL 5257534, at *9 (S.D.N.Y. Oct. 16, 2019) ("The factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's *Grinne[ll]* factors").  *See also In re Payment Card*

*Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) ("The Court understands the new Rule 23(e) factors to add to, rather than displace, the *Grinnell* factors."). Each of these factors supports final approval of the settlements.

The Settlements are substantively fair, reasonable, and adequate under Rule 23(e)(2)(C)-(D).  The Settlements must also pass muster based on application of each of the *Grinnell* factors. *Jander*, 2021 WL 3115709, at *2 (quoting *City of Detroit v. Grinnell*, 495 F. 2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)).  However, "not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'" *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (citation omitted).

### 1.      Complexity, Expense, and Likely Duration of the Litigation

The first *Grinnell* factor ("the complexity, expense and likely duration of the litigation") overlaps with Rule 23(e)(2)(C)(i) ("the costs, risks, and delay of trial and appeal").  The complexity of this securities fraud case, involving multiple parties and intricate factual and legal issues concerning, among others, loss causation, materialization of risk, and scienter, is self-evident.  The Action has been complex, expensive, and pending for a lengthy period of time.  *See City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 954 F. Supp. 2d 276, 279 (S.D.N.Y. 2013) (Rakoff, J.) (court grants final approval as "there is no doubt that this litigation has been complex, and its remaining phases would likely be both hard-fought and expensive").  One can compare the expense and likely duration of the litigation with the settling defendants had they gone to trial, with what transpired with respect to the remaining defendant who elected to proceed to trial.  As the Court is well aware from the efforts made by the Court and parties at the trial against Reger, it was a daunting, complex, and expensive process.  If the other nine (9)

defendants had gone to trial, the process would have been even more complex and expensive by orders of magnitude.

With respect to Rule 23(e)(2)(C)(i), a recovery from the Officer and Director Defendants at trial was greatly uncertain. Such a recovery would depend on the Class prevailing on complex liability and damages issues as to each of these eight (8) individually named defendants. For example, with respect to scienter and disclosure requirements, the Officer and Director Defendants have argued that they had no concrete information about the scheme that would trigger a disclosure obligation. *See* ECF 378 at 14-18. Moreover, they contended that the disclosure obligation as to over-5%-shareholders rests with those individual shareholders, not the issuing entity. *See id.* at 14-15. Thus, the jury could have laid blame for the wrongdoing exclusively on Reger and Gilbertson. Also, the Officer and Director Defendants would have argued that Dakota Plains' stock price collapse was due to factors other than fraudulent omissions. *See Park v. The Thomson Corp.*, 2008 WL 4684232, at *4 (S.D.N.Y. Oct. 22, 2008) ("The complexity of Plaintiff's claims *ipso facto* creates uncertainty"). And there was a serious risk that a finding of intentional fraud by one or more of the Officer and Director Defendants could have vitiated any insurance pursuant to a "fraud exception" in the policies.

In contrast to the above-described uncertainties and litigation risks, the Class has obtained the $13,950,000 settlement. "In assessing the Settlement, the Court should balance the benefits afforded the Class, including the ***immediacy*** and ***certainty*** of a recovery, against the continuing risks of litigation." *In re Top Tankers, Inc. Sec. Litig.*, 2008 WL 2944620, at *4 (S.D.N.Y. Jul. 31, 2008) (emphases in original). *See also Charron v. Pinnacle Grp. N.Y. LLC*, 874 F.Supp.2d 179, 201 (S.D.N.Y. 2012) (settlement is reasonable when it "assures immediate payment of substantial amounts to Class Members, 'even if it means sacrificing speculative

payment of a hypothetically larger amount years down the road'") (citation omitted).  In addition, the Class benefitted at trial from the Officer and Director Defendants' cooperation, which included three defendants sitting for pretrial interviews and two providing important trial testimony.

Similarly, the Class benefitted from the Gilbertson Settlement, which required cooperation and testimony at trial.  *See In re GSE Bonds Antitrust Litig.*, 2020 WL 3250593, at *2 (defendant's "material cooperation supports the adequacy of [that] settlement, favoring final approval.").  Gilbertson's testimony likely assisted the jury in reaching its verdict against Reger.

### 2.    Reaction of the Class

"'The reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.'"  *Jander*, 2021 WL 3115709, at *3 (quoting *In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (summary order) (quotation marks omitted)).  No members of the Class chose to opt out following dissemination of the Notice of Pendency in September 2021.  ECF 403.  To date, there have been no objections to the settlements, which "strongly favors approval."  *Jander*, 2021 WL 3115709, at *3; *see also In re GSE Bonds Antitrust Litig.*, 2020 WL 3250593, at *2 (small number of received objections "'can be viewed as indicative of the adequacy of the settlement'") (quoting *Wal-Mart Stores, Inc.*, 396 F.3d at 118); *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 431 (S.D.N.Y. 2016) ("the absence of objections by the class is extraordinarily positive and weighs in favor of settlement") (citations and internal quotation marks omitted).  The Class's reaction to date supports final approval.[13]

---

[13]   As noted, any objections submitted by the September 13, 2022 deadline will be separately responded to.

### 3.     Stage of Proceedings and Amount of Discovery

The third *Grinnell* factor considers a settlement in light of the matter's stage of proceedings, as well as the amount of investigation, discovery, and motion practice conducted at the time of settlement.  With both settlement agreements reached near the eve of trial and after the completion of all fact discovery, expert discovery, and pre-trial motion practice, the proposed Settlements were clearly entered into after Plaintiffs had "'sufficient information to make an informed judgment on the reasonableness of the settlement proposal.'"  *In re Excess Value Ins. Coverage Litig.*, 2004 WL 1724980, at *12 (S.D.N.Y. July 30, 2004) (citation omitted).  *See also City of Pontiac*, 954 F. Supp. 2d at 279 (final approval granted as "the proposed settlement was negotiated after extensive discovery, motion practice, and several hearings before the Court"); *In re Pfizer Inc. S'holder Deriv. Litig.*, 780 F. Supp. 2d 336, 340 (S.D.N.Y. April 29, 2011) (Rakoff, J.) (Court grants final approval of settlement as negotiations occurred "[o]nly after the motion practice and discovery had revealed the parties' relative strengths and weaknesses").  Thus, *Grinnell* factor three supports final approval.

### 4.     Risk of Establishing Liability and Damages

When evaluating the fourth and fifth *Grinnell* factors (the risk of establishing liability and damages), "the Court should balance the benefits afforded to the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation."  *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *7 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (summary order).  Plaintiffs recognize that there was a real risk of obtaining no recovery if the case proceeded to trial against the Officer and Director Defendants.  With respect to liability, the Officer and Director Defendants argued that they were not aware of Reger's and Gilbertson's scheme; that they conducted serious investigations in

good faith to ferret out who manipulated the Company's stock, but that they could never conclusively determine who was involved. *See* ECF 378 at 14-18. The settling defendants would also likely challenge Plaintiffs' proof of loss causation. The Court in *Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *5 (S.D.N.Y. Sept. 4, 2013) "f[ou]nd[] this factor satisfied because '[p]roving damages in [securities] actions can also be complicated and uncertain, particularly in cases such as this that require proof of loss causation.'" *Jander*, 2021 WL 3115709, at *3. Also, reliance on experts for proving damages places Plaintiff and the Class at "real risk" of an adverse determination: "'As with any complicated securities action, the class faced the very real risk 'that a jury could be swayed by experts . . . .'" *Jander*, 2021 WL 3115709, at *3 (quoting *Pennsylvania Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 318 F.R.D. 19, 24 (S.D.N.Y. 2016) (citation omitted)). Here, defendants' expert at trial opined there were essentially zero damages. *See also City of Pontiac*, 954 F. Supp. 2d at 279 (granting final approval as "the reasons for the decline in the price of Lockheed shares, on which plaintiff's damages calculation is based, are controversial and controverted, presenting a substantial risk that plaintiffs' damages calculation would not prevail"); *City of Providence*, 2014 WL 1883494, at *8 ("Once causation is established, damages remain 'a complicated and uncertain process, typically involving conflicting expert opinion about the difference between the purchase price and [the shares'] true value absent the alleged fraud.'") (citation omitted). Of course, "[t]here [remains] a further risk that any finding of liability . . . could be overturned on appeal." *In re American Int'l Grp., Inc. Sec. Litig.*, 2010 WL 5060697, at *3 (S.D.N.Y. Dec. 2, 2010). *Grinnell* factors four and five clearly weigh in favor of final approval.

### 5.      Risk of Maintaining the Class

The sixth *Grinnell* factor assesses the risks of maintaining the class through trial. Defendants have repeatedly challenged class certification, having unsuccessfully petitioned the Second Circuit under Rule 23(f) for immediate review of the certification order (ECF 285 at 1), and, more recently, having unsuccessfully moved for decertification.  ECF 387 at 33. Nonetheless, the Court has the discretion to decertify through trial, reflecting that there would continue to be some risk of decertification absent settlement.  Rule 23(c)(1)(C).  Thus, "it is not unlikely that, if the case continued, the defendants would continue to try to find infirmities with the class." *City of Pontiac*, 954 F. Supp. 2d at 279.  Further, decertification remains in play based on developing law.  *See City of Providence,* 2014 WL 1883494, at *9 ("[T]he law of class actions is developing at a rapid clip, and it is always possible that some new Supreme Court decision would counsel in favor of decertification").  And the risk remains that "class certification [could] be reversed on appeal." *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998).  Based on the risk of yet another effort to decertify, the sixth *Grinnell* factor weighs in favor of final approval.

### 6.      Ability of Defendant to Withstand Greater Judgment

The seventh *Grinnell* factor, the ability of defendants to withstand a greater judgment, is particularly germane, given that Dakota Plains went bankrupt and all of the settling defendants are individuals. ¶1.  As to the Officer and Director Defendants, to proceed through a trial and possible appeals would have dramatically diminished the available insurance proceeds, which are based on a tower of "wasting" policies.  ¶56.  Moreover, a fraud verdict could potentially invalidate **all** available insurance coverage.  Further, in the event of a liability finding, the

Officers and Directors Defendants might have limited, if any, ability to satisfy a judgment in their individual capacities.  In this light, a $13,950,000 settlement is an excellent result.

Gilbertson provided a sworn personal financial statement showing that he has no significant remaining personal assets, strongly suggesting that he could not "withstand a greater judgment."  Having already paid over $15 million to the government and still owing more, plus attorneys' fee obligations related to his criminal trial, this case, and possibly another (*see Apex Fin. Options, LLC v. Gilbertson, et al.*, No. 19-0046-WCB (D. Del.)), his ability to pay anything to satisfy a substantial judgment would have been remote or non-existent.  Moreover, even if the settling individual defendants could do so, "'the ability of defendants to withstand greater judgment does not alone suggest the settlement is unfair or unreasonable.'"  *Jander*, 2021 WL 3115709, at *4 (quoting *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *5) (citations omitted).  *Grinnell* factor seven also supports final approval.

### 7.   Reasonableness of the Settlements in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The Settlements' reasonableness in light of the best possible recovery and attendant risks of litigation (*Grinnell* factors eight and nine) likewise support final approval.  "'[T]here is a range of reasonableness . . . which recognizes the uncertainties of law and fact . . . and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . . .'"  *Wal-Mart Stores, Inc.*, 396 F.3d at 119 (quoting *Newman v. Stein*,  464 F.2d 689, 693 (2d Cir. 1972)).  "'[T]he judge will not be reversed if the appellate court concludes that the settlement lies within that range.'"  *Id*.

In obtaining final approval, there is no requirement that plaintiffs have succeeded in achieving the best possible recovery, though the recovery reflected in the D&O Settlement is substantial considering all of the circumstances.  *See Jander,* 2021 WL 3115709, at *4 ("'[T]he

19

issue for the Court is not whether the Settlement represents the "best possible recovery," but how the Settlement relates to the strengths and weaknesses of the case.'") (citation omitted).  The Class's damages expert estimated recoverable damages as approximately $66 million before pre-judgment interest.  ¶69.  The $13,950,000 cash settlement from the Officer and Director Defendants is approximately 20.9% of these estimated damages.  This easily merits final approval.  *See Christine Asia Co., Ltd.* 2019 WL 5257534, at *14 (holding that a 17% recovery of "maximum recoverable damages" falls "squarely within the range of reasonableness") (emphasis added).  *See also City of Pontiac*, 954 F. Supp. 2d at 280 (approving approximately 10% of estimated best possible recovery); *Diamond v. Fogelman,* 1992 WL 167271, at *5 (E.D.N.Y. June 26, 1992) (approving approximately 9.5% of estimated best possible recovery); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (approving approximately 6.25% of estimated best possible recovery); *Cagan v. Anchor Sav. Bank FSB*, 1990 WL 73423, at *12-*13, *16 (E.D.N.Y. May 22, 1990) (approving what calculates to approximately 1.9% of best possible recovery).  Of course, "it is unlikely that, if the case were to go to trial, plaintiff[s] would recover [their] best-case model." *City of Pontiac*, 954 F. Supp. 2d at 280.

At the trial that was conducted against Reger, the jury found a 57% artificial inflation in the price of Dakota Plains stock.  If that percentage is applied to the amount of total estimated damages before prejudgment interest ($66 million x .57), Plaintiffs' best case scenario would be roughly a $38 million recovery.  The D&O Settlement is approximately 36% of that amount, an excellent result when viewed from this perspective.

With respect to *Grinnell's* "attendant risks of litigation," issues with respect to proof of loss causation, materialization of risk, and scienter, for example, would place any recovery at

trial from the Officer and Director Defendants at risk, suggesting that the result here is a robust

recovery. *See In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *12 (E.D.N.Y. Sept. 18,

2007) ("Given the risks involved in proving liability and damages, were this case to proceed to

trial there is a significant possibility that the Class would recover much less or even nothing,

while incurring additional costs in the process."). *See also In re Interpublic Sec. Litig.*, 2004 WL

2397190, at *8 (S.D.N.Y. Oct. 26, 2004) (approving settlement as "even if the class could

successfully prove liability, both parties believe that assessing the amount of damages at trial

would be a complex, expensive, and unpredictable endeavor").

    Critically, the Gilbertson Settlement served to limit risk as it led to trial testimony that

assisted the jury in reaching its verdict against Reger. *See Precision Assocs. v. Panalpina World

Transport (Holding Ltd.*, 2013 WL 4525323, at *8 (E.D.N.Y. Aug. 27, 2013) (settlement

approved as "several of the settling defendants' obligations under the settlements to cooperate

may assist plaintiffs to resolve the action as against the non-settling defendants"). *See also In re

Air Cargo Shipping Servs. Antitrust Litig.*, 2009 WL 3077396, at *8 (E.D.N.Y. Sept. 25, 2009)

(same). *Grinnell* factors eight and nine support final approval.

## C.    The Notice Satisfies Rule 23 and Due Process

    As previously determined at the preliminary approval stage, the determination that the

Settlement Notice satisfied Rule 23(c)(2)(B)'s requirements, as well as those of the PSLRA and

the U.S. Constitution, is applicable at this final approval stage as well. *See* ECF 474; ECF 503 at

1-2. *See In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.*, 2011 WL 13071020, at

*7 (S.D.N.Y. Aug. 5, 2011) (Rakoff, J.) (approving settlement notice distribution plan that was

"implemented in accordance with the Court's . . . Preliminary Approval Order"). The notice

procedures were previously approved by the Court and have now been implemented. *See*

Cudworth Decl.  This fully satisfies Rule 23 and due process.  Final approval is therefore appropriate.

## VI.     THE PLAN OF ALLOCATION SHOULD RECEIVE FINAL APPROVAL

The Plan of Allocation for the D&O Settlement proceeds should be finally approved. Approval will issue if a plan of allocation is "'fair and adequate.'" *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *7 (citation omitted).  *See also In re Top Tankers, Inc. Sec. Litig.*, 2008 WL 2944620, at *11 (S.D.N.Y. July 31, 2008) (same).  "'An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.'"  *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *7 (citation omitted); *Jander*, 2021 WL 3115709, at *6 (same).

The proposed Plan of Allocation, as offered by experienced and competent class counsel, and initially approved by the Preliminary Approval Order (ECF 474, 503), provides appropriate relief to those injured by the alleged fraud on a *pro rata* basis based on claim forms to be submitted documenting Class members transactions in Dakota Plains stock.

"A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable."  *In re Merrill Lynch Tyco Research Sec. Litig.,* 249 F.R.D. 124, 135 (S.D.N.Y. 2008).  *See also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 462 (a "[p]ro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach").  Further, a plan that distributes relief *pro rata* is "effective." *Rosi v. Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at *4 (S.D.N.Y. Dec. 9, 2021).  *Christine Asia Co., Ltd.*, 2019 WL 5257534, at *14 ("This type of claims processing and method for distributing settlement proceeds is standard in securities and other class actions and is effective.").  *See also In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *13 (E.D.N.Y. Jan.

21, 2022) (outlining a similar *pro rata*-based allocation plan, which it determined to be "appropriate and consistent with many other securities class action settlements' plans of allocation, and treats class members equitably relative to each other"). The Plan of Allocation is *pro rata*-based, and has a rational basis. It should be finally approved as it fully complies with Rule 23(e)(2)(C)(ii).[14]

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court (i) finally approve both the D&O Settlement and the Gilbertson Settlement; (ii) finally approve the Plan of Allocation associated with the D&O Settlement; and (iii) enter the proposed Final Judgments.

Dated: September 6, 2022

Respectfully submitted,

**CERA LLP**

By:*/s/Solomon B. Cera*
Solomon B. Cera
Pamela A. Markert
Kenneth A. Frost
595 Market Street, Suite 1350
San Francisco, CA 94105
Telephone: (415) 777-2230
Email: scera@cerallp.com
Email: pmarkert@cerallp.com
Email: kfrost@cerallp.com

*Class Counsel*

---

[14] Under the Plan of Allocation's *pro rata* approach to fund distribution, consistent with Rule 23(e)(2)(D), the Class Representative will be treated in the same manner as all other Class members insofar as his claim is concerned, and Class members will be similarly treated relative to one another. With respect to the $20.00 minimum payment threshold, "claims-processing costs money, which comes out of the settlement fund," and including such a "*de minimis* threshold in the allocation plan, in order to preserve the settlement fund from excessive and unnecessary expenses in the overall interests of the class as a whole" is reasonable and supports final approval of the Plan of Allocation. *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 463. A $20.00 minimum payment threshold is appropriate when compared to the $50.00 minimum threshold that did not thwart final approval in *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 2007 WL 4526593, at *4, *12 (S.D.N.Y. Dec. 20, 2007) or the $100.00 minimum payment threshold in *In re Advanced Battery Techs, Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014).

**MOLOLAMKEN LLP**
Steven F. Molo
Robert K. Kry
Sara E. Margolis
Mark W. Kelley
Alex C. Eynon
430 Park Avenue, 6th Floor
New York, NY 10022
Telephone: (212) 607-8170
Email: smolo@mololamken.com
Email: rkry@mololamken.com
Email: smargolis@mololamken.com
Email: mkelley@mololamken.com
Email: aeynon@mololamken.com

**ABRAHAM, FRUCHTER & TWERSKY, LLP**
Jeffrey S. Abraham
Lawrence D. Levit
450 Seventh Avenue, 38th Floor
New York, NY 10123
Tel: (212) 279-5050
Email: jabraham@aftlaw.com
Email: llevit@aftlaw.com

*Attorneys for Plaintiff and on Behalf*
*of All Others Similarly Situated*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2022, I caused a true and correct copy of the foregoing instrument to be served via the Electronic Case Filing (ECF) system in the United States District Court for the Southern District of New York, on all parties registered for CM/ECF in the above captioned matter.

_/s/Solomon B. Cera_
Solomon B. Cera
