UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JON D. GRUBER, Individually And On    :   No. 16-cv-09727-JSR
Behalf Of All Others Similarly Situated,   :
                         :
          Plaintiff,       :   Hon. Jed S. Rakoff
                         :
      v.                   :
                         :
RYAN R. GILBERTSON, et al.,       :
                         :
          Defendants.   :
                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' COUNSEL'S MOTION
FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

**<u>TABLE OF CONTENTS</u>**

<u>Page(s)</u>

I.  INTRODUCTION ................................................................................... 1

II.  SUMMARY OF RELEVANT BACKGROUND ................................................. 3

III.  PLAINTIFFS' COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS
REASONABLE AND SHOULD BE APPROVED .......................................... 5

    A.  The Common Fund Doctrine Applies Here ........................................... 5

    B.  The Requested Fees are Fair and  Reasonable as a Percentage of the
Settlement Fund ............................................................................ 7

    C.  Application of the Lodestar "Crosscheck" Also Supports the Reasonableness
of the Fee Request ........................................................................ 8

    D.  The *Goldberger* Factors Confirm that the Requested Fee Should Be Awarded.... 10

        1.  Time and Labor Expended by Plaintiffs' Counsel
(*Goldberger* Factor 1) .............................................. 11

        2.  Magnitude and Complexities of the Litigation (*Goldberger* Factor 2)..... 13

        3.  Risks of the Litigation (*Goldberger* Factor 3) .......................... 14

        4.  Quality of Representation (*Goldberger* Factor 4).................... 16

        5.  Requested Fee in Relation to the Settlement (*Goldberger* Factor 5) ........ 17

        6.  Public Policy Considerations (*Goldberger* Factor 6) ............... 17

    E.  Plaintiffs' Counsel's Expenses Are Reasonable and Were Necessarily
Incurred to Achieve the Result Obtained and Should Be Reimbursed ................. 19

IV.  CONCLUSION.................................................................................... 21

i

## TABLE OF AUTHORITIES

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
    406 U.S. 128 (1972).................................................................................. 14

*Anwar v. Fairfield Greenwich Ltd.*,
    2012 WL 1981505 (S.D.N.Y. June 1, 2012) ........................................... *passim*

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
    522 F.3d 182 (2d Cir. 2008) ..................................................................... 9

*Arbuthnot v. Pierson*,
    607 F. App'x 73 (2d Cir. 2015) ................................................................ 9

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)................................................................................... 5

*City of Providence v. Aeropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014) ....................................... 9, 18, 20

*Dial Corp. v. News Corp.*,
    317 F.R.D. 426 (S.D.N.Y. 2016) ............................................................. 6

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ................................................................................ 18

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)................................................................. *passim*

*Grice v. Pepsi Beverages Co.*,
    363 F. Supp. 3d 401, 406 (S.D.N.Y. 2019).............................................. 8

*In re Bisys Sec. Litig.*,
    2007 WL 2049726 (S.D.N.Y. July 16, 2007) ......................................... 8

*In re Bristol-Myers Squibb Sec. Litig.*,
    361 F. Supp. 2d 229 (S.D.N.Y. 2005)..................................................... 15

*In re China MediaExpress Holdings, Inc. S'holder Litig.*,
    2015 WL 13639423 (S.D.N.Y. Sept. 18, 2015)................................... 8, 17

*In re DDAVP Direct Purchaser Antitrust Litig.*,
    2011 WL 12627961 (S.D.N.Y. Nov. 28, 2011)....................................... 10

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
    2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)........................................... 8

*In re Facebook, Inc.*,
    674 F. App'x 37 (2d Cir. 2016) .......................................................... 8, 17

## TABLE OF AUTHORITIES

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ................................................... 6

*In re Giant Interactive Group, Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) .................................................................. 20

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................. 20

*In re GSE Bonds Antitrust Litig.*,
    2020 WL 3250593 (S.D.N.Y. June 16, 2020) .................................................. 6

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ........................................... 18, 20

*In re Initial Pub. Offering Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009) ...................................................... 17, 18

*In re Lloyd's Am. Trust Fund Litig.*,
    2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ............................................... 6

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................................... 15, 16

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................... 8, 17

*In re Parking Heaters Antitrust Litig.*,
    2019 WL 8137325 (E.D.N.Y. Aug. 15, 2019) ............................................... 13

*In re Petrobras Sec. Litig.*,
    317 F. Supp. 3d 858 (S.D.N.Y. 2018), *aff'd*, 784 F. App'x 10 (2d Cir. 2019) .................. 6

*In re PPDAI Grp. Inc. Sec. Litig.*,
    2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) .................................................. 13

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ......................................................... 14

*In re Visa Check/Mastermoney Antitrust Litig.*,
    297 F. Supp. 2d 503 (E.D.N.Y. 2003) ........................................................... 6

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ......................................................... 11

*Khait v. Whirlpool Corp.*,
    2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ............................................... 19

*Lea v. Tal Educ. Grp.*,
    2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ........................................... 6, 14

## TABLE OF AUTHORITIES

*LeBlanc-Sternberg v. Fletcher*,
143 F.3d 748 (2d Cir. 1998)..................................................................... 9

*Luciano v. Olsten Corp.*,
109 F.3d 111 (2d Cir. 1997)..................................................................... 9

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002).......................................... 8, 19

*Maywalt v. Parker & Parsley Petrol. Co.*,
963 F. Supp. 310 (S.D.N.Y. 1997) .......................................................... 8

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) .................................... 8

*Odom v. Hazen Transp., Inc.*,
275 F.R.D. 400 (W.D.N.Y. 2011)............................................................ 7

*Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
2021 WL 76328 (S.D.N.Y. Jan. 7, 2021) ............................................. 7

*Olick v. Parker & Parsley Petroleum Co.*,
145 F.3d 513 (2d Cir. 1998)..................................................................... 8

*Seijas v. Republic of Argentina*,
2017 WL 1511352 (S.D.N.Y. Apr. 27, 2017)................................... 10

*Springer v. Code Rebel Corp.*,
2018 WL 1773137 (S.D.N.Y. Apr. 10, 2018) .................................. 10

*Steiner v. Williams*,
2001 WL 604035 (S.D.N.Y. May 31, 2001) ..................................... 15

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
2004 WL 1087261 (S.D.N.Y. May 14, 2004) ................................. 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)..................................................................................... 6

*Velez v. Novartis Pharms. Corp.*,
2010 WL 4877852 (S.D.N.Y. Sep. 4, 2014)....................................... 9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)................................................................. 6, 7

### Statutes

15 U.S.C. §78u-4 ..................................................................................... 11

# TABLE OF AUTHORITIES

**Other Authorities**

*Gormley v. MagicJack VocalTec Ltd.*,
 No. 1:16-cv-01869 (VM), slip op. at 1 (S.D.N.Y. Jan. 19, 2018) ..................................... 8

*In re U.S. Foodservice, Inc. Pricing Litig.,*
 No. 3:07-md-1894 (AWT), slip op. at 6 (D. Conn. Dec. 9, 2014)............................ 10, 18

**Rules**

Federal Rules of Civil Procedure
 Rule 23(g) ................................................................................................................. 16

 Rule 23(h) ................................................................................................................... 1

Pursuant to Rule 23(h) of the Federal Rules of Civil Procedure,[1] Plaintiffs' Counsel[2] respectfully submits this memorandum of law in support of their motion for: (1) an award of attorneys' fees of one-third of the $13,950,000 Settlement Fund (i.e. $4,649,535);[3] and (2) reimbursement of $1,062,373.62 for the expenses reasonably and necessarily incurred by Plaintiffs' Counsel in prosecuting the Action through May 31, 2022.

## I.   INTRODUCTION

For more than five years, Plaintiffs' Counsel has invested substantial professional time and out-of-pocket expenditures investigating and prosecuting, on a fully contingent basis, this complex securities fraud class action.  It arose out of circumstances whereby Defendants turned a small oil transloading operation, Dakota Plains Holdings, Inc. ("Dakota Plains" or the "Company"), into a publicly traded company via a reverse merger.  Once public, the stock price of the Company was manipulated to trigger a bonus provision that within a month resulted in an insurmountable debt burden on the Company.  Defendants Michael L. Reger and Ryan R. Gilbertson, the founders, concealed their ownership and control of Dakota Plains from the investing public and installed friends and acquaintances whom they could control as company officers.  Dakota Plains was crippled by the fraudulently created debt and went bankrupt a few years later.  Public investors in the Company lost tens of millions of dollars.

---

[1]   All references hereafter to "Rule __" are to the Federal Rules of Civil Procedure.

[2]   "Plaintiffs' Counsel" collectively refers to Class Counsel, Cera LLP, together with MoloLamken LLP and Abraham, Fruchter & Twersky, LLP.

[3]   Capitalized terms that are defined herein have the same meanings as set forth in the Declaration of Solomon B. Cera in Support of Plaintiffs' Motion for Final Approval of Class Action Settlements with the Officer and Director Defendants and Defendant Ryan R. Gilbertson; and in Support of Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Cera Decl.").

Class Representative Jon D. Gruber, and Cera LLP, Class Counsel, were appointed to oversee the litigation in early 2017.  Now, after years of dedicated and hard work and as a result of the considerable skill and tenacity of Plaintiffs' Counsel, a $13,950,000 cash settlement with the Officer and Director Defendants has been achieved and the funds are on deposit earning interest.  The monetary portion of the settlement represents a recovery of nearly all of the available insurance and more than 20% of the damages estimated by Plaintiffs' expert before pre-judgment interest.  This is an excellent result for the Class.  Plaintiffs' Counsel also obtained a settlement with defendant Gilbertson for his cooperation and testimony at the trial of defendant Reger, which resulted in a jury verdict in favor of the Class.

Over the course of their investigation and litigation of this matter, Plaintiffs' Counsel have collectively expended 23,079.53 hours of professional and para-professional time, representing a current lodestar of $13,675,262.20.[4]  As compensation for their years long commitment to bringing the Action against the Officer and Director Defendants and defendant Gilbertson to a successful conclusion, Plaintiffs' Counsel now request a fee of one-third of the Settlement Fund or $4,649,535.00, plus interest thereon since deposit.

Unlike many cases in which plaintiff's counsel seek a fee which exceeds their lodestar by virtue of application of a multiplier, the fee requested here is substantially less than the lodestar value of the time Plaintiffs' Counsel have devoted to the prosecution of the Action through May 31, 2022. ¶¶71, 88.[5]  In fact, the fee sought here would result in a multiplier of approximately 0.33 of the total lodestar of Plaintiffs' Counsel, meaning that the fee requested is roughly one-

---

[4]   See Exhibits A, B and C to the Cera Decl., which sets forth the lodestar and expenses of the three (3) firms which have litigated on behalf of Plaintiffs.

[5]   Unless otherwise stated, references herein to "¶_" and "Ex. _" are to paragraphs within, and exhibits to, the Cera Declaration.

third of the full monetary value of the time and effort devoted to the prosecution of this Action through May 31, 2022.  Plaintiffs' Counsel also request reimbursement from the Settlement Fund of $1,062,373.62 in out-of-pocket costs and expenses which were necessarily incurred for the prosecution of the Action.

The reaction of the Class to date supports these requests.  Pursuant to the Court's Preliminary Approval Order (ECF 474), Class members have been notified of the Settlements. *See* Declaration of Brittany M. Cudworth re: (A) Mailing of Notice of Proposed Partial Settlements, Settlement Fairness Hearing, and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses, and (B) Publication of Summary Notice ("Cudworth Decl."), filed herewith.  The Class members were advised that Class Counsel would seek fees in an amount not to exceed one-third of the Settlement Fund, plus reimbursement of expenses in an amount not to exceed $1,500,000.  While the September 13, 2022 deadline for Class Members to object has not yet passed, to date no objections to the requested fees and expenses have been received.

As demonstrated below and in the Cera Declaration, the requested fee and expense award is commensurate with the time and effort spent, the risks undertaken, and the excellent result achieved in this unusual and difficult securities fraud class action.  The requested fees and expenses are supported by applicable law and should be ordered by the Court.

## II.    SUMMARY OF RELEVANT BACKGROUND

Class Counsel initiated its investigation of this complex securities fraud class action more than five years ago.  ¶16.  During the course of prosecuting the Class's claims, Plaintiffs' Counsel successfully opposed every one of the myriad pretrial challenges raised by the Defendants.  ¶¶22, 25-34.  Plaintiffs' claims have withstood Defendants' motions directed to the

sufficiency of Plaintiffs' amended complaints, three challenges to certification of the Class, as well as *Daubert* and summary judgment motions.  ¶¶26, 29, 31, 34.

Furthermore, prior to the Settlements, full fact and expert discovery was conducted and completed despite some unusual obstacles present here.  ¶¶19-22, 37-39, 41-53.  In a typical securities fraud class action the primary defendant is a publicly-traded company with ongoing operations.  This allows for relatively easy access to basic discovery through written discovery requests to the issuer and access to electronically stored information ("ESI") to be produced in conformance with a format set forth in a court order.  Here, Dakota Plains had filed for bankruptcy protection and could not be sued.  ¶19.  Class Counsel had to apply to the Bankruptcy Court to ensure access to Company records and ESI.  ¶¶20, 21.  Indeed, a large portion of the documents Class Counsel obtained through their discovery efforts came from the bankruptcy trustee and other third parties. ¶¶21, 38, 45-47.  And many of these were close friends or family members of, or persons who had longstanding or ongoing business ties to, defendants Reger and Gilbertson.  ¶38.  More than two dozen document subpoenas were necessary, in addition to documents obtained from multiple government agencies via subpoena and FOIA requests.  ¶¶38, 45.  Plaintiffs' Counsel also successfully obtained a court order in the United States District Court for the District of Minnesota compelling a key brokerage firm, Agency Trading Group, to produce critical documents that could not be obtained from defendants or other third parties.  ¶47.  Agency Trading Group was the firm that held investment accounts in the names of various family and friends of Reger and Gilbertson (and Reger himself) through which Dakota Plains stock was traded.  ¶47.  In total, more than one million pages of documents were produced and analyzed and many were used by Plaintiffs' Counsel in preparing and amending the complaints, taking or defending eighteen (18) fact depositions, preparing the

motion to certify the class and defending the multiple challenges to it, conducting expert discovery, and opposing defendants' summary judgment and *Daubert* motions.  ¶¶41, 43.

The Settlements with the Officer and Director Defendants and defendant Gilbertson were reached mere weeks before trial, which was more than 5 years after the initial complaint was filed on December 16, 2016.  ¶¶56, 57; ECF 1.  Indeed, because the settlements were obtained close to the start of trial, Class Counsel and MoloLamken fully prepared for trial of the case on more than one occasion.  ¶55.  Additional details of Plaintiffs' Counsel's vigorous pursuit of this litigation, including a summary of the risks undertaken, the obstacles overcome, and the results achieved, are described in detail in the Cera Declaration, which is incorporated herein by reference.

## III.   PLAINTIFFS' COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE AND SHOULD BE APPROVED

### A.   The Common Fund Doctrine Applies Here

The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The Second Circuit similarly recognized the "salient exception" to the "American Rule" where "an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury inflicted on the class." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).  "[T]he attorneys whose efforts created the fund are entitled to a reasonable fee – set by the court – to be taken from the fund." *Id.*  Fee awards from a common fund "also 'serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons,' and therefore 'to discourage future misconduct of a similar nature.'" *In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 874 (S.D.N.Y. 2018)

(Rakoff, J.), *aff'd,* 784 F. App'x 10 (2d Cir. 2019) (*citing In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 2010 WL 4537550, at *23 (S.D.N.Y. Nov. 8, 2010); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.* 551 U.S. 308, 313 (2007) (private securities actions "are an essential supplement to criminal prosecutions and civil enforcement actions" brought by the DOJ and the SEC). Significantly, no actions whatsoever were taken against the Officer and Director Defendants by any regulatory authority, either civil or criminal.  ¶86.  Gilbertson was convicted at a criminal trial, but that related to only the initial 20 days of trading in Dakota Plains, and not the more than four year Class Period of March 23, 2012 through August 16, 2016.  ¶3 n.4.

Since *Goldberger*, the trend in the Second Circuit is to assess a fee application applying the percentage of the fund approach.  *See e.g.*, *Dial Corp. v. News Corp.,* 317 F.R.D. 426, 433 (S.D.N.Y. 2016); *Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *11 (S.D.N.Y. Nov. 30, 2021); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 520 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) (the percentage-of-the-fund approach "spares the court and the parties the 'cumbersome, enervating, and often surrealistic process' of lodestar computation" (quoting *Goldberger*, 209 F.3d at 50)).  The percentage approach also "most closely approximates the manner in which private litigants compensate their attorneys in the marketplace contingency fee model."  *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *25-26 (S.D.N.Y. Nov. 26, 2002).  Additionally, the size of the settlement is also a factor when considering what percentage to award.  *See In re GSE Bonds Antitrust Litig.*, 2020 WL 3250593, at *5 (S.D.N.Y. June 16, 2020) (Rakoff, J.) ("fee percentages generally 'bear an inverse relation to the amount of the settlement'" to "avoid[] windfalls for attorneys in large settlements") (quoting *Dial Corp.,* 317 F.R.D. at 435).

The lodestar approach "remains useful as a baseline even if the percentage method is eventually chosen." *Goldberger*, 209 F.3d at 50; *see also Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at \*3 (S.D.N.Y. June 1, 2012) (noting use of "lodestar/multiplier approach" as a "'cross-check'") (quoting *Wal-Mart*, 396 F.3d at 123).  For the lodestar method, "the court must multiply the number of hours reasonably billed by the reasonable hourly rate," and then "exercise its discretion to adjust the figure (and apply a multiplier to the lodestar) after considering such factors as the quality of counsel's work, the probability of success of the litigation and the complexity of the issues." *Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 412 (W.D.N.Y. 2011).  "[R]egardless of which method is used, courts rely on the factors set forth in *Goldberger* to determine whether fees are reasonable." *Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.,* 2021 WL 76328, at \*4 (S.D.N.Y. Jan. 7, 2021) (citing *Wal-Mart*, 396 F.3d at 121).  As demonstrated below in Section III.D., application of the *Goldberger* factors in this case supports the requested fee.

**B.**     **The Requested Fees are Fair and Reasonable as a Percentage of the Settlement Fund**

As set forth in the Settlement Notice sent to the members of the Class, Plaintiffs' Counsel request attorneys' fees in the amount of one-third of the $13,950,000 million Settlement Fund, or $4,649,535.00.  Courts within this District have very often awarded attorneys' fees of one-third of a common fund created by counsel.  *See, e.g.*, *Tal Educ. Grp., Inc*., 2021 WL 5578665 at \*12 ("The percentage of the fund requests – one-third – is a percent that has been approved as reasonable in this Circuit."); *Anwar*, 2012 WL 1981505, at \*3 (33% fee request of the approximately $7.7 million settlement fund "is well within the percentage range that courts within the Second Circuit have awarded in other complex litigations"); *In re China MediaExpress Holdings, Inc. S'holder Litig.*, 2015 WL 13639423, at \*1 (S.D.N.Y. Sept. 18,

2015) (awarding 33.33% of $12 million settlement fund); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *1, *9 (S.D.N.Y. Nov. 9, 2015), *aff'd sub nom. In re Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016) (33% fee of $26.5 million settlement); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (33% fee of $3.265 million settlement); *Gormley v. MagicJack VocalTec Ltd.*, No. 1:16-cv-01869 (VM), slip op. at 1 (S.D.N.Y. Jan. 19, 2018) (awarding 33% of $3,650,000 settlement amount); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 367–69 (S.D.N.Y. 2002) (33 1/3% of $11.5 million settlement fund); *Newman v. Caribiner Int'l Inc.*, No. 99 Civ. 2271 (S.D.N.Y. Oct. 19, 2001) (33-1/3% awarded from $15 million settlement, as cited in *Maley*, 186 F. Supp. 2d at 368); *Maywalt v. Parker & Parsley Petrol. Co.*, 963 F. Supp. 310, 313 (S.D.N.Y. 1997), *aff'd sub nom. Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513 (2d Cir. 1998) (33.4% fee on approximately $8.5 million settlement); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 135, 146–47 (S.D.N.Y. 2010) (33.33% fee of $35 million settlement).

As shown, ample precedent supports a one-third fee.  A one-third fee award is particularly warranted here given the excellent recovery obtained from the Officer and Director Defendants in a highly unusual and complex securities fraud class action which involved very substantial risks for Plaintiffs' Counsel from the inception of the case and over the past five years, as described further in Section III. D., *infra*, and the Cera Declaration.

## C. Application of the Lodestar "Crosscheck" Also Supports the Reasonableness of the Fee Request

Even when not used as the primary means to determine an appropriate fee, "[t]he lodestar method remains highly useful . . . as a 'cross-check' to further ensure reasonableness."  *In re Bisys Sec. Litig.*, 2007 WL 2049726, at *2 (S.D.N.Y. July 16, 2007) (Rakoff, J.); *Grice v. Pepsi Beverages Co.*, 363 F. Supp. 3d 401, 406 (S.D.N.Y. 2019) ("the Second Circuit 'encourage[s]

the practice of requiring documentation of hours as a cross check on the reasonableness of the requested percentage'") (internal citation omitted); *Velez v. Novartis Pharms. Corp.*, 2010 WL 4877852, at \*22 (S.D.N.Y. Nov. 30, 2010) ("if a percentage of fund figure compares favorably with a lodestar that uses reasonable hourly rates and a reasonable multiplier, it tends to validate the percentage of funds figure").  The lodestar comprises the number of hours devoted by counsel to the litigation multiplied by the current hourly billing rates of counsel.  As described by the Second Circuit, the lodestar "is the product of hours worked and an hourly rate." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008).  "[W]here the lodestar is used as a mere cross-check, the hours document[ed] by counsel need not be exhaustively scrutinized by the district court." *Id.* (internal quotations and citations omitted).  *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at \*13 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (internal quotation marks and citations omitted).

When calculating a lodestar, the use of current market rates is appropriate. *See Goldberger*, 209 F.3d at 56 (submitted rates are to be based on "prevailing market rates 'for comparable attorneys of comparable skill and standing in the pertinent legal community.'") (citation omitted); *see also LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("current rates, rather than historical rates, should be applied in order to compensate for the delay in payment"); *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) ("[t]he 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation'") (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).

As noted, the lodestar cross-check applied here shows that a one-third fee is entirely reasonable.  If such an award is made, Plaintiffs' Counsel will be receiving far less than their lodestar.  ¶¶71, 88.  The requested fee is therefore supported by the lodestar cross-check.  In any event, the work undertaken by Plaintiffs' Counsel wholly supports the requested fee.  As detailed in the Cera Declaration and the exhibits attached thereto, Plaintiffs' Counsel vigorously litigated against not only highly skilled defense attorneys, but also numerous third parties (and their counsel).  ¶¶20, 21, 47.  Further, should the Court approve the Settlements, Plaintiffs' Counsel will continue to perform work on behalf of the Class assisting with claims administration and working with the Claims Administrator, Angeion Group, to ensure claims are processed and the Net Settlement Fund is distributed in a timely manner.[6]

### D.       The *Goldberger* Factors Confirm that the Requested Fee Should Be Awarded

Irrespective of the method used for determining fees, the awarded fees must be found to be "'reasonable' under the circumstances." *Goldberger*, 209 F.3d at 47 (citation omitted).  Of course, "[w]hat constitutes a reasonable fee is properly committed to the sound discretion of the district court, [subject to] an abuse of discretion" standard.  *Id.*; *see also Seijas v. Republic of Argentina*, 2017 WL 1511352, at *9 (S.D.N.Y. Apr. 27, 2017) (reasonableness of fee "is within the discretion of the court"); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355

---

[6]    The 0.33 multiplier here falls well below the range of previously approved fee requests seeking one-third of the recovery.  *See, e.g., In re U.S. Foodservice, Inc. Pricing Litig.*, No. 3:07-md-01894-AWT, slip op. at 7 (D. Conn. Dec. 9, 2014), (33-1/3% fee award approved as supported by 2.23 lodestar multiplier); *Springer v. Code Rebel Corp.,* 2018 WL 1773137, at *5 (S.D.N.Y. Apr. 10, 2018) (33.3% fee request approved as supported by 2.02 lodestar-multiplier); *In re DDAVP Direct Purchaser Antitrust Litig.*, 2011 WL 12627961, at *4-5 (S.D.N.Y. Nov. 28, 2011) (33-1/3% fee request approved as supported by 1.9 lodestar multiplier and described by the Court as "modest" and "well within the applicable range of reasonable percentage fund awards").  As there is no multiplier here whatsoever, the requested fee is fully supported under the law.

(S.D.N.Y. 2005) (same).  The Second Circuit has instructed that, in the exercise of such

discretion:

> [D]istrict courts should continue to be guided by the traditional
> criteria in determining a reasonable common fund fee, including:
> "(1) the time and labor expended by counsel; (2) the magnitude and
> complexities of the litigation; (3) the risk of the litigation . . . ; (4)
> the quality of representation; (5) the requested fee in relation to the
> settlement; and (6) public policy considerations."

*Goldberger*, 209 F.3d at 50 (citation omitted); *see also Anwar*, 2012 WL 1981505, at *1-3

(enumerating and applying the *Goldberger* factors in determining whether the "requested fee . . .

is fair under the percentage-of-recovery method").

### 1. Time and Labor Expended by Plaintiffs' Counsel (*Goldberger* Factor 1)

As detailed in the Cera Declaration, Class Counsel began to investigate the claims at

issue here more than five years ago, and filed the motion for lead plaintiff status pursuant to the

Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4 *et seq.*, on

February 14, 2017.  ECF 18.  On April 7, 2017, the Court appointed Mr. Gruber as Lead Plaintiff

and his attorneys, the law firm of Cera LLP, as Lead Counsel.  ECF 35.

As set forth in greater detail in the Cera Declaration, since those appointments, Plaintiffs'

Counsel have spent thousands of hours on the litigation through May 31, 2022.  This has

included work on, *inter alia*, the following tasks:

- Conducting extensive research, investigating and drafting detailed First and Second Amended Complaints in excess of 100 pages (¶18);

- Filing necessary pleadings to protect Plaintiffs' interests in Dakota Plains' bankruptcy proceeding and obtaining a court order lifting the PSLRA discovery stay to serve preservation subpoenas on Dakota Plains and the company that acquired its assets, BioUrja, when informal efforts to ensure crucial documents were preserved were ignored by the bankruptcy trustee and general counsel (¶¶19-21);

11

- Preparing opposition papers to defendants' motion to dismiss the Second Amended Complaint and preparing and presenting oral argument (¶22);

- Preparing and negotiating with defense counsel a Stipulation and Order for the Protection and Exchange of Confidential Information and a Stipulation and Order for the Protocol Regarding the Production Format for Hard Copy Documents and Electronically Stored Information (¶37);

- Conducting interviews of numerous witness, some of whom provided useful documents to prosecute the case (¶44);

- Preparing and serving 71 document requests to each of the ten (10) defendants that required repeated meet and confers regarding responses and documents produced (¶41);

- Carefully analyzing each defendant's answer and preparing thirty-one contention interrogatories tailored to defendants' respective affirmative defenses which were responded to by defendants and were the subject of several follow up meet and confers (¶42);

- Drafting more than two dozen document subpoenas served to individuals and entities, resulting in more than 95% of the documents obtained in discovery (¶45);

- Engaging in meet and confer efforts with numerous third parties to negotiate scope of documents and payments for searching and producing documents (¶¶46-47);

- Working both in house and with an outside discovery vendor to extract third party documents embedded within software programs and not provided in a usable format for an electronic document review platform (¶46);

- Preparing and arguing a motion to quash a subpoena issued to a crucial third party brokerage firm, in the United States District Court for the District of Minnesota (¶47);

- Preparing for and taking deposition of eighteen (18) fact witnesses in seven states (¶43);

- Working with and identifying and providing relevant documents to Plaintiffs' retained experts who opined on relevant securities law matters in the unique context of this case, and on damages and loss causation (¶¶48-49);

- Preparing for and deposing defendants' four retained experts and appearing at the depositions of Plaintiffs' experts during the height of the COVID-19 pandemic (¶¶50-53);

- Drafting and filing a Third Amended Complaint to add facts and claims and successfully opposing, in part, new motions to dismiss (¶¶24-26);

- Preparing a motion for class certification pursuant to Rules 23(a) and (b)(3) and reply papers to defendants' opposition, (2) opposing defendants' Rule 23(f) petition, and (3) opposing defendants' motion to decertify the class (¶¶27-31);

- Opposing defendants' joint motion for summary judgment and motion to exclude Plaintiffs' experts, where the parties' submissions on summary judgment alone exceed 5,200 pages (¶¶32-34);

- Preparing a Notice of Pendency of Class Action, identifying class members to receive the Notice and working with the administrator to disseminate the notice including publication in local and national newspapers (¶¶35-36);

- Preparing a detailed mediation statement and supporting documents for an all-day mediation with all defendants and with the assistance of a retired federal district court judge in November 2018 (¶54);

- Engaging in informal settlement negotiations with defendants in fall of 2021 which were unsuccessful, leading Class Counsel in November 2021 to retain the firm of MoloLamken LLP to jointly represent the Class at trial which was first set for January 31, 2022 (¶55);

- Preparing a mediation statement and participating in a mediation with the Officer and Director Defendants in April 2022 conducted by the retired former Chief Magistrate Judge of the Northern District of California, the Hon. Edward A. Infante (Ret.) acting as mediator, resulting in a $13,950,000 cash settlement and cooperation with Plaintiffs' Counsel and testimony at the trial of defendant Reger (¶56);

- Participating in settlement negotiations with defendant Gilbertson to establish relevant facts and confirmation of his inability to pay any monetary amount, resulting in a settlement for his cooperation and his testimony at the trial of defendant Reger (¶57);

- Documenting the Settlement and the Plan of Allocation and preparing an appropriate Settlement Notice (¶¶56, 57, 70);

- Preparing for trials based on multiple trial dates (¶55); and

- Responding to class member inquiries (¶9).

Given the complex and time consuming nature of the work performed as set forth above, Plaintiffs' Counsel's expenditure of time was reasonable. This factor supports the requested fee award.

## 2. Magnitude and Complexities of the Litigation (*Goldberger* Factor 2)

Class action cases such as this are well known to be complex and vigorously contested, and this case was no exception. *See, e.g.*, *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *15 (E.D.N.Y. Jan. 21, 2022) (citing *In re Parking Heaters Antitrust Litig.*, 2019 WL 8137325, at *7 (E.D.N.Y. Aug. 15, 2019) ("class actions like these are complex, expensive, and lengthy")).

If anything, litigating this case, an omissions case under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972) involving a bankrupt company which traded in an inefficient market, was an especially complex, costly, and challenging endeavor.

### 3.   Risks of the Litigation (*Goldberger* Factor 3)

The risks faced by Plaintiffs' Counsel in pursuing relief for a class also support the reasonableness of the requested fee.  As discussed by the Second Circuit:  "We have historically labeled the risk of success as 'perhaps the foremost' factor to be considered in determining" the reasonableness of a fee request.  *Goldberger*, 209 F.3d at 54 (citations omitted); *Tal Educ. Grp.*, 2021 WL 5578665, at *12  ("Class counsel undertook this litigation on a contingent basis and have received no payment for their work during the roughly three years that the case has remained pending . . . .");  *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008) (risk is "pivotal factor" in assessing reasonableness of fee awards).  "It is well-established that litigation risk must be measured as of when the case is filed," not when the fee application is adjudicated.  *Goldberger*, 209 F.3d at 52, 55.

Although the Second Circuit has expressed an "overarching concern for moderation" and was reluctant to overemphasize "contingency risk" in *Goldberger*, in this Action, there was significant and real "contingency risk" from the outset.  *Goldberger*, 209 F.3d at 53.  From the date of filing Plaintiffs' first complaint (¶17), success at trial or the recovery of a significant settlement that could actually be collected from the Officer and Director Defendants and defendant Gilbertson was far from assured.  Indeed, the five year litigation effort that was required to reach this point speaks volumes as to the risks undertaken.

Contingency risk has been used in part to justify attorney fee requests in the thirty percent range when Class Counsel adopted a "novel and risky" litigation theory.  *Steiner v. Williams*,

2001 WL 604035, at *7 (S.D.N.Y. May 31, 2001) (awarding 30% fee as "counsel took a tremendous risk that, in the end, nothing would be recovered").  This case was highly risky.  This was not a traditional securities fraud class action involving a well-defined drop in stock price caused by a new disclosure impacting an efficient market.  Rather, Dakota Plains traded in an inefficient market as its stock price gradually declined over several years.  Moreover, even if Plaintiffs succeeded at trial, there was also the potential risk of a jury apportioning little to no liability to the Officer and Director Defendants.  ¶63.  Even if liability was found, the available insurance would continue to be depleted based on payment of defendants' attorneys' fees and costs through the inevitable appeals.  ¶60.  The contingency risk at play in this case certainly falls at the high end of the spectrum.  *See Anwar*, 2012 WL 1981505, at *2 (justifying 33% fee partly because the "Action posed significant risks, making the prospect of a favorable verdict for the Settling Class far from certain").

Risk of the litigation is often cited as the "first, and most important, *Goldberger* factor." *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005); *see also Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk free, and class actions confront even more substantial risks than other forms of litigation.").  "In numerous class actions, including complex securities cases, plaintiffs' counsel have expended thousands of hours and advanced significant out-of-pocket expenses and received no remuneration whatsoever." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *18 (S.D.N.Y. Dec. 23, 2009).  The fee request here is appropriate and reasonable in light of the tremendous risk undertaken by Plaintiffs' Counsel in prosecuting this case.

### 4. Quality of Representation (*Goldberger* Factor 4)

As recognized in *Anwar,* "[t]he result achieved and the quality of the services provided are also important factors to be considered" when determining the reasonableness of requested attorney fees. *Anwar*, 2012 WL 1981505, at *2. Based on these important factors, the $13,950,000 recovery here for the benefit of the Class demonstrates the high quality of the work of Plaintiffs' Counsel.

Plaintiffs' Counsel have very significant experience in complex federal civil litigation, including in securities fraud and other class actions. ECF 181, Ex. 3. They brought this expertise to bear in this unusual and complex case. As a result of their expertise, Plaintiffs' Counsel adeptly and efficiently analyzed the facts, legal claims, and defenses in this litigation, employing various strategies to prosecute this matter and, ultimately, to settle this litigation with the Officer and Director Defendants and defendant Gilbertson in the most effective manner possible. ¶82. Plaintiffs' Counsel made certain that the settlement was negotiated at arm's length on the sole basis of an informed and realistic weighing of the merits of the claims and the risks of trial. ¶83. Further, in determining that Cera LLP satisfied the requirements of Rule 23(g), the Court (per Judge Pauley) previously found that Class Counsel had the requisite qualifications and experience to lead this litigation on behalf the proposed Class. ECF 253. That conclusion has been vindicated by the excellent result achieved as reflected in the Settlements.

In addition, courts in the Second Circuit "consider[] the quality and vigor of opposing counsel" when determining the quality of representation under *Goldberger*. *Anwar*, 2012 WL 1981505 at *2; *see also Marsh & McLennan*, 2009 WL 5178546 at *19 (reasonableness of Lead Counsel's fee request supported by fact that defendants "were represented by first-rate attorneys who vigorously contested Lead Plaintiffs' claims and allegations"); *In re Marsh ERISA Litig*.,

265 F.R.D. at 148 ("[t]he high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement").

Here, Plaintiffs' Counsel's fee request is supported by the fact that formidable defense counsel vigorously contested Plaintiffs' claims and allegations at every step in the litigation over many years.  ¶79.  There was nothing easy about litigating this Action, and defendants' counsel ensured that was the case.  The ten defendants were represented by five different law firms skilled in securities fraud, class action and complex litigation.

### 5.    Requested Fee in Relation to the Settlement (*Goldberger* Factor 5)

Courts within the Second Circuit have approved one-third attorney fee requests in many securities class action matters.  *See, e.g.*, *Tal Educ. Grp.*, 2021 WL 5578665 at *12 ("The percentage of the fund requests – one-third – is a percent that has been approved as reasonable in this Circuit."); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 513, 516 (S.D.N.Y. 2009) (one-third fee awarded in megafund case); *In re China MediaExpress Holdings,* 2015 WL 13639423, at *1 (awarding 33.33% of $12 million settlement fund); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *1, *9 (33% fee of $26.5 million settlement).

With respect to securities matters litigated in the Second Circuit, the requested one-third fee award is well within the range of attorney fees approved by courts in cases with comparable recoveries.

### 6.    Public Policy Considerations (*Goldberger* Factor 6)

In *Anwar,* the court found the requested one-third fee to be supported by public policy considerations, noting that "[t]he Supreme Court has recognized that absent a class action, small claimants individually may lack the economic resources to vigorously litigate their rights." *Anwar*, 2012 WL 1981505, at *3 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161

(1974)).  In addition, "[a]ttorneys who take on class action matters on a contingent fee basis, enabling litigants to pool their claims, provide a service to the judicial process." *Id.*  These principles are especially apt here.  This was not a particularly desirable case from the perspective of the plaintiffs' securities bar.  ¶80.  Dakota Plains was bankrupt; it did not trade on an efficient market; and there was no discrete public disclosure of wrongdoing causing a stock price drop. These facts all presented daunting challenges for Plaintiffs' Counsel.  Nevertheless, they devoted maximum effort to achieve success for the Class. Plaintiffs' Counsel have provided a service to both Class members and the judicial process by bringing the instant private class action claim.  It is appropriate for the Court to recognize the public benefit that has resulted and to compensate counsel appropriately.

Courts in this Circuit have repeatedly recognized the importance of awarding fees at a level sufficient to encourage plaintiffs' counsel to bring class action cases that supplement the efforts of government regulators.  *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d at 515 ("class actions serve as private enforcement tools when . . . regulatory entities fail to adequately protect investors from securities fraud"); *City of Providence*, 2014 WL 1883494 at *11 ("awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage alleged misconduct of a similar nature"); *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *17 (S.D.N.Y. Dec. 19, 2014) ("This Court also recently recognized the importance of 'private enforcement actions and the corresponding need to incentivize attorneys to pursue such actions on a contingency fee basis.'" (citations and footnote omitted)); *In re U.S. Foodservice, Inc. Pricing Litig.,* No. 3:07-md-1894 (AWT), slip op. at 6 (D. Conn. Dec. 9, 2014) ("Public policy considerations support awarding Class Counsel its requested [one

third] fee award"); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010)
("[a]ttorneys who fill the private attorney general role must be adequately compensated for their
efforts"); *Maley*, 186 F. Supp. 2d at 374 ("It is . . . imperative that the filing of such contingent
lawsuits not be chilled by the imposition of fee awards which fail to adequately compensate
counsel for the risks of pursuing such litigation and the benefits which would not otherwise have
been achieved but for their persistent and diligent efforts.").

Here, it is noteworthy that not a single other plaintiff or law firm pursued the motion for
lead plaintiff at the inception of the case.  ¶80.  There were no government regulatory efforts to
create a fund for defrauded purchasers of Dakota Plains stock.  ¶86.  The only avenue to seek
damages for aggrieved investors in Dakota Plains was through a private class action.  ¶16.  The
$13,950,000 settlement with the Officer and Director Defendants in this novel and complex
securities fraud case could not have been achieved absent Plaintiffs' Counsel's investment of
more than 23,000 hours of time and $1,062,373.62 in out-of-pocket expenses.  ¶71.  The judicial
process has been well served here.  Approval of the requested fees and expenses herein will
further the public policy of encouraging private lawsuits to deter conduct that improperly and
illegally manipulates and damages the integrity of the capital markets.

*      *      *

Upon application of the *Goldberger* factors and the lodestar/multiplier "cross-check,"
Plaintiffs' Counsel respectfully submit that the requested one-third fee is fair, reasonable,
appropriate and justified under Second Circuit jurisprudence.

### E.    Plaintiffs' Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Result Obtained and Should Be Reimbursed

Plaintiffs' Counsel also request payment of their unreimbursed litigation costs and
expenses incurred during this litigation, which total $1,062,373.62 and are described in the Cera

Declaration filed in support of this application.  *See* Cera Decl. ¶¶72, 73 and Exhibits A, B, and

C thereto.  The costs that counsel incurred in prosecuting this Action are precisely the kind that

are typically reimbursed in cases such as this.  They are also the type of expenses typically billed

by attorneys to paying clients in the marketplace.  The costs involved here including fees paid to

experts, notice costs, computer research, document processing and copying, travel, and

mediation fees, all of which are both typical and necessary to the prosecution of a case such as

this.  *See Anwar*, 2012 WL 1981505, at *3 (ordering reimbursement of "expenses such as

mediation fees, expert witness fees, electronic legal research, photocopying, postage, and travel

expenses, each of which is the type 'the paying, arms' length market' reimburses attorneys"

(quoting *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 468 (S.D.N.Y. 2004))); *see*

*also In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) ("It is

well established that counsel who create a common fund are entitled to the reimbursement of

expenses that they advance to a class.").

   Plaintiffs' Counsel's willingness to put at risk their own resources of more than a million

dollars where reimbursement was entirely contingent on the success of the litigation also

supports a determination that the expenditures made by counsel here were reasonable and

necessary.[7]  *See In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *19 ("Because

the expenses here were incurred with no guarantee of recovery, Lead Counsel had a strong

incentive to keep them at a reasonable level, and did so."); *City of Providence*, 2014 WL

1883494, at *19 ("Lead Counsel is entitled to payment for these expenses, plus interest earned

on such amounts at the same rate as that earned by the Settlement Fund").  The expenses

---

[7]   No third party funders were involved in this matter.

advanced and incurred by Plaintiffs' Counsel are reasonable, appropriate, and should be ordered to be reimbursed from the Settlement Fund.

## IV.     CONCLUSION

For the reasons set forth herein and in the Cera Declaration, Class Counsel respectfully request that this Court award attorneys' fees in the amount of $4,649,535 and expenses in the amount of $1,062,373.62 plus interest thereon at the same rate as earned by the Settlement Fund since deposit.

Dated:  September 6, 2022             Respectfully submitted,

**CERA LLP**

By:/s/Solomon B. Cera_____
Solomon B. Cera
Pamela A. Markert
Kenneth A. Frost
595 Market Street, Suite 1350
San Francisco, CA 94105
Telephone: (415) 777-2230
Email: scera@cerallp.com
Email: pmarkert@cerallp.com
Email: kfrost@cerallp.com

*Class Counsel*

**MOLOLAMKEN LLP**
Steven F. Molo
Robert K. Kry
Sara E. Margolis
Mark W. Kelley
Alex C. Eynon
430 Park Avenue, 6th Floor
New York, NY 10022
Telephone: (212) 607-8170
Email: smolo@mololamken.com
Email: rkry@mololamken.com
Email: smargolis@mololamken.com
Email: mkelley@mololamken.com
Email: aeynon@mololamken.com

**ABRAHAM, FRUCHTER & TWERSKY, LLP**
Jeffrey S. Abraham
Lawrence D. Levit
450 Seventh Avenue, 38th Floor
New York, NY 10123
Tel: (212) 279-5050
Email: jabraham@aftlaw.com
Email: llevit@aftlaw.com

*Attorneys for Plaintiff and on Behalf*
*of All Others Similarly Situated*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2022, I caused a true and correct copy of the

foregoing instrument to be served via the Electronic Case Filing (ECF) system in the United

States District Court for the Southern District of New York, on all parties registered for CM/ECF

in the above captioned matter.

*/s/Solomon B. Cera*
Solomon B. Cera
